1   Kristina S. Azlin (SBN 235238)
    John A. Canale (SBN 287287)
2   HOLLAND & KNIGHT LLP
    400 South Hope Street, 8th Floor
3   Los Angeles, California  90071
    Telephone 213.896.2400
4   Facsimile  213.896.2450
    E-mail:  kristina.azlin@hklaw.com,
5   john.canale@hklaw.com

6   Michael Starr (*Pro Hac Vice*)
    Katherine H. Marques (*Pro Hac Vice*)
7   HOLLAND & KNIGHT LLP
    31 West 52nd Street
8   New York, New York 10019
    Telephone: 212.513.3200
9   Facsimile: 212.385.9100
    E-mail: michael.starr@hklaw.com,
10  katherine.marques@hklaw.com

11  Attorneys for Plaintiffs
    American Hotel & Lodging Association and
12  Asian American Hotel Owners Association

13

14              **UNITED STATES DISTRICT COURT**

15       **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

16  AMERICAN HOTEL & LODGING          ) CASE NO. 2:14-cv-09603-AB-SS
    ASSOCIATION and                   ) Assigned to Hon. Andre Birotte Jr.
17  ASIAN AMERICAN HOTEL              )
    OWNERS ASSOCIATION,               ) **PLAINTIFFS' NOTICE OF**
18                                    ) **MOTION AND MOTION FOR**
                 Plaintiffs,          ) **PRELIMINARY INJUNCTION;**
19                                    ) **MEMORANDUM OF POINTS**
           vs.                        ) **AND AUTHORITIES IN**
20                                    ) **SUPPORT THEREOF**
    CITY OF LOS ANGELES,              )
21                                    )
                 Defendant.           ) Date:   March 23, 2015
22                                    ) Time:   10:00 am
                                      ) Dept.:  790, Roybal
23                                    )
                                      ) Complaint Filed: December 16, 2014
24                                    )
                                      )
25                                    )
                                      )
26                                    )
    _____  )
27

28

*(left margin, rotated)* Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

**TO DEFENDANT AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 23, 2015, at 10:00 am, or as soon thereafter as the matter may be heard, in Department 790 of the United States District Court for the Central District of California, Western Division, Edward R. Roybal Federal Building and Courthouse, located at 255 East Temple Street Los Angeles, CA 90012, Plaintiffs the American Hotel & Lodging Association and the Asian American Hotel Owners Association will and hereby do move this Court for an order staying the effective date of, and enjoining the Defendant City of Los Angeles (the "*City*") from implementing or enforcing, Los Angeles City Ordinance No. 183241, entitled "Citywide Hotel Worker Minimum Wage Ordinance," as codified in Article 6, Chapter XVIII of the Los Angeles Municipal Code (hereinafter the "*Hotel Workers Act*" or the "*Act*").[1]

This Motion For Preliminary Injunction is made pursuant to Rule 65 of the Federal Rules of Civil Procedure upon the following grounds:

- Federal labor law preempts municipal ordinances that intrude, even unintentionally, on areas of labor-management relations that Congress intended to be unregulated or that interfere, in any way, with the implementation of federal labor policy;

- The Hotel Workers Act is preempted by federal labor law and is, therefore, void and unenforceable under the Supremacy Clause of the United States Constitution because it interferes with collective bargaining, union organizing, and labor relations at every single one of the larger hotels within the City's jurisdiction and, whether, by design or consequence, insidiously aids the Hotel Workers' Union (as hereinafter defined) to achieve its goal of organizing all of the City's hotels that have to date resisted unionization; and

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

---

[1] For the Court's ease of reference, a true and correct copy of the Hotel Workers Act is attached as Exhibit "1" to the concurrently filed Declaration of Kristina Azlin.

- Plaintiffs' members will suffer substantial and irreparable harm if the City is permitted to implement the Act because its members within the City's jurisdiction will either (i) be required to bargain at a disadvantage with said Union and be at the legal risk of liability under the Act merely by exercising prerogatives afforded employers under federal labor law, or (ii) be pressured into signing so-called "neutrality" agreements, which have the legal effect of waiving or relinquishing prerogatives afforded employers under federal labor law or, in effect, suffer economic penalties by their principled refusal to do so.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently filed Declarations of Lynn Mohrfeld ("Mohrfeld Decl."), Professor Zev J. Eigen ("Eigen Decl."), Michael Czarcinski ("Czarcinski Decl."), Kevin Gleason ("Gleason Decl."), Robert Hannigan ("Hannigan Decl."), David Hsu ("Hsu Decl."), Raymond Martz ("Martz Decl."), Israel Mora ("Mora Decl."), Mitchell Roberts ("Roberts Decl."), Julie Robey ("Robey Decl."), Robert Rowling ("Rowling Decl."), Linda Stigter ("Stigter Decl."), Michael Wlodkowski ("Wlodkowski Decl."), Peter Zen ("Zen Decl."), and Kristina Azlin ("Azlin Decl."), all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at or before any hearing on this matter.

DATED:  January 26, 2015

Respectfully submitted,

HOLLAND & KNIGHT LLP


By_____//S//_____
        Michael Starr
        Kristina S. Azlin

Attorneys for Plaintiffs
American Hotel & Lodging Association and
Asian American Hotel Owners Association

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

3

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ...................................................................... 1

II.    FACTUAL BACKGROUND ........................................................................ 1

       A.    The Los Angeles Hotel Industry. ................................................... 1

       B.    The Hotel Workers Act. ................................................................. 2

       C.    Local 11's Covert Role in Enactment. ........................................... 3

       D.    Definitions Tailored to Union Organizing. .................................... 4

       E.    The Union Waiver Provision. ........................................................ 4

       F.    Disregard of Tipped Employees' Pay Structure. ........................... 5

       G.    Ancillary Business Provision. ....................................................... 5

       H.    Interference With Labor Relations. ............................................... 6

III.   GOOD CAUSE SUPPORTS THE ISSUANCE OF A
       PRELIMINARY INJUNCTION. ................................................................. 8

       A.    The Hotel Workers Act Is Preempted Because It Upsets
             The Labor-Management Balance Mandated by Congress. .............. 9

             1.    *Machinists* Preemption Bars Legislative Interference
                   With Collective Bargaining and Labor Relations. ............... 10

             2.    *Machinists* Preemption Bars Government Interference
                   With Union Organizing. ..................................................... 12

             3.    The Hotel Workers Act Interferes With
                   Federal Labor Policy. ........................................................ 14

       B.    The Post-Expiration Effects of the Act Are an Independent
             Basis for Preemption. ................................................................. 17

       C.    That the Act Raises the Mandatory Wage-Rate Does Not
             Immunize It From *Machinists* Preemption. ................................ 20

       D.    The Equities Favor Issuance of An Injunction. ........................... 23

             1.    Plaintiffs' Members Will Suffer Irreparable Harm. ............. 23

             2.    The Balance of Hardships and Consideration of the Public
                   Interest Weigh in Favor of Plaintiffs. ................................ 24

IV.    THIS COURT SHOULD NOT IMPOSE AN INJUNCTION BOND. ........ 24

V.     CONCLUSION ......................................................................................... 25

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*520 S. Mich. Ave. Assocs. v. Shannon ("Shannon"),*
    549 F.3d 1119 (7th Cir. 2008)............................................................10, 12, 16, 22

*Aeroground, Inc. v. City and Cty. of San Francisco,*
    170 F. Supp. 2d 950 (N.D. Cal. 2001).....................................................................9

*Alliance for the Wild Rockies v. Cottrell,*
    632 F.3d 1127 (9th Cir. 2011)................................................................................8

*Barnes v. Stone Container Corp.,*
    942 F.2d 689 (9th Cir. 1991)................................................................................19

*Bechtel Constr. Inc. v. United Bhd. of Carpenters,*
    812 F.2d 1220 (9th Cir. 1987)..............................................................................11

*Bill Johnson's Rest. v. NLRB,*
    461 U.S. 731 (1983) ............................................................................................15

*Bldg. & Constr. Trades Council v. Associated Builders & Contrs.,*
    507 U.S. 218 (1993) ..............................................................................................9

*Bliesner v. Comm'n Workers of Am.,*
    464 F.3d 910 (9th Cir. 2006) ...............................................................................24

*Brown v. Pro Football, Inc.,*
    518 U.S. 231 (1996) .........................................................................17, 18, 19, 20

*Cannon v. Edgar,*
    33 F.3d 880 (7th Cir. 1994)......................................................................14, 22, 23

*Carrillo v. Schneider Logistics, Inc.,*
    501 Fed.Appx. 713, 2012 WL 6734672 (9th Cir. 2012)........................................8

*Chamber of Commerce v. Bragdon ("Bragdon"),*
    64 F.3d 497 (9th Cir. 1995)....................................................................11, 16, 22, 23

*Chamber of Commerce v. Brown ("Brown"),*
    554 U.S. 60 (2008) .......................................................................................*passim*

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

*Colin ex rel. Colin v. Orange Unif. Sch. Dist.*,
   83 F. Supp. 2d 1135 (C.D. Cal. 2000) ................................................................. 25

*In re Countrywide Fin. Corp. Derivative Litig.*,
   542 F. Supp. 2d 1160 (C.D. Cal. 2008) ................................................................. 8

*Derrico v. Sheehan Emergency Hosp.*,
   844 F.2d 22 (2d Cir. 1988) ................................................................. 19

*Elliott v. Kiesewetter*,
   98 F.3d 47 (3d Cir. 1996) ................................................................. 25

*Employers Ass'n, Inc. v. United Steelworkers of Am.*,
   32 F.3d 1297 (8th Cir. 1994) ................................................................. 17

*Fort Halifax Packing Co. v. Coyne*,
   482 U.S. 1 (1987) ................................................................. 22

*Garrett v. City of Escondido*,
   465 F. Supp. 2d 1043 (S.D. Cal. 2006) ................................................................. 8, 23

*Golden State Transit Corp. v. City of Los Angeles*,
   475 U.S. 608 (1986) ................................................................. 11, 14, 17, 20

*Graham Automotive, Inc. d/b/a Valley Honda*,
   347 NLRB 615 (2006) ................................................................. 24

*Hotel Employees, Local 2 v. Marriott Corp.*,
   961 F.2d 1464 (9th Cir. 1992) ................................................................. 13, 14, 24

*Jorgensen v. Cassiday*,
   320 F.3d 906 (9th Cir. 2003) ................................................................. 25

*Labor Health & Welfare Trust Fund v. Advanced Lightweight Concr.*,
   484 U.S. 539 (1988) ................................................................. 18

*Lamons Gasket Co*,
   357 NLRB No. 72 (2011) ................................................................. 14

*Levy v. Verizon Info. Servs.*,
   498 F.Supp. 2d 586 (E.D.N.Y. 2007) ................................................................. 19

*Machinists v. Wisconsin Empl. Rels. Comm'n*,
   427 U.S. 132 (1976) ................................................................. *passim*

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

*Metro. Milwaukee Ass'n of Comm v. Milwaukee Cty,*
    431 F.3d 277 (7th Cir. 2005) ................................................................ 16

*Metropolitan Life Ins. v. Mass.,*
    471 U.S. 724 (1985) ...................................................................*passim*

*N.Y. Tel. Co. v. N.Y.S. Dept. of Labor,*
    440 U.S. 519 (1979) ......................................................................... 20

*National Broadcasting Co. v. Bradshaw,*
    70 F.3d 69 (1995) ............................................................................. 20

*NLRB v. Allied Mechanical Servs.,*
    734 F.3d 486 (6th Cir. 2013) ............................................................ 15

*NLRB v. Gissel Packing Co.,*
    395 U.S. 575 (1969) ......................................................................... 13

*NLRB v. Katz,*
    369 U.S. 736 (1962) ......................................................................... 19

*NLRB v. McClatchy Newspapers,*
    964 F.2d 1153 (D.C. Cir. 1992) ....................................................... 19

*Rayner v. NLRB,*
    665 F.2d 970 (9th Cir. 1982) ............................................................ 15

*Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*
    944 F.2d 597 (1991) ......................................................................... 24

*Sierra On-Line, Inc. v. Phx. Software,*
    739 F.2d 1415 (9th Cir. 1984) ............................................................ 8

*St. Louis Police Retirem. Sys. v. Severson,*
    2012 WL 5270125 (N.D. Cal. 2012) ................................................. 25

*Textile Unlimited, Inc. v. A.. BMH & Co.,*
    240 F.3d 781 (9th Cir. 2001) .............................................................. 8

*United Steel Workers of Am. v. NLRB,*
    482 F.3d 1112 (9th Cir. 2007) .......................................................... 13

*Winter v. Natural Res. Def. Council,*
    555 U.S. 7 (2008) ............................................................................... 8

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

iv

*Wisconsin Dept. of Industry v. Gould Inc.*,
   475 U.S. 282 (1986) ................................................................................9

**Federal Statutes**

29 U.S.C.
   § 141 ..........................................................................................................9
   § 151 ..........................................................................................................9
   § 167 ..........................................................................................................9

42 U.S.C.
   § 1983 ......................................................................................................25

**Other State Statutes**

Los Angeles Municipal Code
   § 11.00(l) ...................................................................................................2

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs American Hotel & Lodging Association ("*AH&LA*") and Asian American Hotel Owners Association ("*AAHOA*") (collectively, the "*Associations*") respectfully submit this Memorandum of Points and Authorities in support of their application for an order staying the effective date and enjoining the implementation or enforcement of the Hotel Workers Act.

## I.   PRELIMINARY STATEMENT

Plaintiffs seek to enjoin the Defendant City of Los Angeles (the "*City*") from implementing or enforcing the Hotel Workers Act on the basis that this local ordinance interferes with collective bargaining, union organizing and labor relations at every single one of the larger hotels in Los Angeles.  Under the guise of requiring that a "fair wage" be paid to hotel workers, the City has constructed, whether by design or consequence, an insidious mechanism that improperly aids the local hotel workers' union in its efforts to organize employees at all of the City's non-union hotels.  Because Congress, in adopting federal labor law, intended to have zones of unregulated activity between labor and management, to leave the resolution of labor-management disputes to the free play of economic forces, and to prevent municipalities from disrupting the balance of economic power between labor and management that Congress established, the City's purported hotel workers minimum wage ordinance is preempted by federal law.

## II.   FACTUAL BACKGROUND

### A.   The Los Angeles Hotel Industry.

Of the many hotels within the City of Los Angeles, about 80 have more than 150 rooms.  (Mohrfeld Decl. ¶5.)  Of those larger hotels, about 40 are organized by UNITE HERE Local 11 ("*Local 11*" or the "*Union*"), and about 40 are non-Union. (*Id.* at ¶6.)  In downtown Los Angeles, only two large hotels – the Omni and the Doubletree – are not organized by Local 11.  (*Id.*)

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

1

Local 11 is the only union that organizes hotel workers (other than engineers) in Los Angeles.  (Wlodkowski Decl. ¶16.)  And, as a practical matter, Local 11 organizes hotels only when the employer consents to a card-check recognition or "neutrality" agreement.  (Gleason Decl. ¶26.)  In recent years, Local 11 has been largely unable to induce the remaining non-Union hotel employers to consent to card-check recognition agreements through economic leverage.  (*See*, *e.g.*, Hsu Decl. ¶¶10, 13; Stigter Decl. ¶18; *see also,* Eigen Decl. ¶45.)  It has, apparently, decided to use political influence to achieve the same end.[2]

## B.    The Hotel Workers Act.

On October 10, 2014, the Los Angeles City Council enacted the Hotel Workers Act, which requires, *inter alia*, hotels operating in the City that have more than 150 guest rooms or suites to pay their employees a wage rate of at least $15.37 an hour, with the provision that this mandated wage-rate is to be adjusted annually.  *See* Act §186.02(A).  That wage rate takes effect on July 1, 2015, for hotels with 300 or more rooms and on July 1, 2016, for all other covered hotels.  *Id.* §186.04.  The Act is enforceable by the City or the City Attorney, or by private action brought by any covered Hotel Worker claiming a violation.  Los Angeles Municipal Code §11.00(l); Act §186.07.  Workers who prevail in private enforcement actions may be awarded treble damages, attorney's fees, and costs.  Act §186.07.

In the Hotel Workers Act's preamble, the City Council goes into extensive detail as to why – in its opinion – hotels of more than 150 rooms can afford to pay the extraordinarily high purported "minimum" wage of $15.37.  *See* Act §186.00.[3]  City

---

[2] *See generally*, Benjamin I. Sachs, *Despite Preemption:  Making Labor Law in Cities and States*, 124 HARV. L. REV., 1154, 1169-97 (2011) (detailing efforts by unions to use political influence to obtain employer acceptance of so-called "neutrality" agreements); *id.* at 1188 n.137 (describing refusal of an L.A. city council member to allow approval of hotel development project until developer consented to card-check neutrality agreement).

[3] In pertinent part, the Act's statement of "Purpose" states as follows:

"A large hotel [. . .] is in a better position to absorb the cost of paying living wages to its employees and also to absorb costs without layoffs. First, large hotels more often are part of international, national or regional chains. [… and], may more easily relocate or transfer employees to other hotels […]. Second, a large hotel often has sources of income beyond mere room

2

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

hotels with fewer than 150 rooms are excluded from the wage-rate requirement, *see id.* §186.01(D), presumably because it was the City Council's view that they could not afford that rate. This exclusion was contradicted by the Council's own economic analysis, which showed that workers employed at smaller hotels are the hotel workers most likely at risk for substandard wages. (Mohrfeld Decl. ¶43.)

The Act refers to its mandated wage-rate as the "fair wage," *see* Act §186.00, presumably to distinguish it from the "living wage" imposed on hotels located in the "LAX Corridor" by ordinance in 2007. (Mohrfeld Decl. ¶15.) As of 2013, that "living wage" was $11.03 an hour if the employer provided fringe benefits valued at $1.25 an hour or, if not, $12.28. (*Id.*) The City has also previously enacted a "living wage" ordinance for airport workers of employees of certain city contractors (the "Airport Worker Ordinance"). (*Id.* ¶16.) In 2013, the mandated "living wage" for employers subject to the Airport Worker Ordinance was $10.70 an hour if fringe-benefits provided to employees were valued at least $4.67 an hour or, without such benefits, a cash payment of $15.37. (*Id.* ¶16.) The preamble to the Hotel Workers Act does not explain why it fails to provide for any offset at all for fringe benefits for its mandated wage rate.

## C.   Local 11's Covert Role in Enactment.

The Hotel Workers Act was the culmination of a lobbying effort named the "Raise LA" initiative. The architects of the Raise LA campaign were Local 11 and its partner, the Los Angeles Alliance for a New Economy ("*LAANE*"). (Mohrfeld Decl. ¶12.) Although LAANE represents itself as an independent association, it is, as a practical matter, the lobbying and political-action arm of Local 11. (*Id.* ¶7.)[4]

---

rental […] A large hotel is better able than a small hotel to ensure high room occupancy […]. Lastly, a large hotel may more easily absorb the cost of paying employees a higher wage through the economies of scale in operating a large hotel compared to the costs of operating a small hotel."

[4] The Deputy Director of LAANE is James Elmendorf. He was a former Local 11 officer and was actively engaged in the actual drafting of the Act. (Zen Decl. ¶9.) He also joined Union president Tom Walsh in using the Act as leverage to obtain union recognition at currently non-Union businesses. (*See* Zen Decl. ¶12-13; Czarcinski Decl. ¶34-35.)

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

As set forth above, the Act applies to only larger Los Angeles hotels – the same hotels that Local 11 had targeted for organizing.  (Mohrfeld Decl. ¶13; Hsu Decl. ¶10.)  The circumstances suggest that the Union was pursuing this legislation precisely because of its limited success at organizing these hotels.  (Mohrfeld Decl. ¶¶ 11, 18-20.)  Indeed, the legislative process leading to enactment was dominated by the Union and its alter ego, LAANE.  (Czarcinski Decl. ¶32.)  They used their lobbying influence and back-channel access to help craft the actual language of the Act itself, while the hotel-trade association was shunted aside.  (Mohrfeld Decl. ¶¶22-34.)  They also expedited the passage of the ordinance, allowing little time for the City Council to consider the submissions of the public, the hotel industry, or even the economic experts that the City had commissioned to provide input.  (*Id.* ¶¶40-43.)

### D.    **Definitions Tailored to Union Organizing.**

The Act's definition of Hotel Worker excludes from its coverage any workers who are "supervisory, managerial and confidential employees."  *See* Act § 186.01(F).  The categories of "managerial" and, in particular, "confidential" employees, are classifications peculiar to federal labor law that have no analogue in typical minimum wage statutes.  (*See* Eigen Decl. ¶¶20-23.)  As a consequence of its definitional choices, the Act affects the wage-rate of all – but only – the employees that unions, like Local 11, are lawfully permitted to organize.  (*Id.* ¶24.)

### E.    **The Union Waiver Provision.**

The Act contains a provision deceptively labeled "Exemption for Collective Bargaining Agreements", under which a covered hotel may obtain an exemption from any or all of the Act's requirements, but only if such hotel employer is party to a "bona fide" collective bargaining agreement ("CBA") and only if such dispensation is explicitly granted to it by the union party to the CBA by means of a clear and unambiguous waiver written into the agreement.  *See* Act §186.08.

Local 11 is the only labor union that organizes or has collective-bargaining agreements affecting employees (except engineering employees) at Los Angeles

Holland & Knight LLP
400 South Hope Street, 8ᵗʰ Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

4

hotels.  (Wlodkowski Decl. ¶16.)  Hence, it is the only union that can benefit by the dispensation power afforded by this union-waiver provision.  The union-waiver provision also provides that such waivers cannot be unilaterally implemented. Understood in the context of federal labor law, this provision in itself is quite disruptive of collective bargaining and labor relations.  (*See* Eigen Decl. ¶¶25-33.)

### F.    Disregard of Tipped Employees' Pay Structure.

It is common industry practice for hotels to distinguish between tipped and non-tipped employees in setting wages.  (Czarcinski Decl. ¶19.)  Tipped employees are those that receive significant compensation from gratuities or service charges – and therefore need not rely on their base hourly wage for their full cash remuneration. (*Id.*)  At many hotels in Los Angeles, tipped banquet servers, for example, are paid at or slightly above the California state minimum wage but, when gratuities and services charges are included, are among the highest paid hourly workers at the hotel. (*See, e.g.,* Rowling Decl. ¶19; Czarcinski Decl. ¶20.)

Consequently, even at hotels where the wage rate for non-tipped employees is at or above $15.37, the need to raise dramatically the wages paid to tipped employees will significantly increase labor costs.  (*See, e.g.,* Rowling Decl. ¶¶21-22.)  Hotel employers may also need, as a practical matter, to raise wage rates of non-tipped employees, like cooks, to avoid the disaffection that would result from raising the wage only for tipped employees.  (*See* Stigter Decl. ¶¶14-15.)

### G.    Ancillary Business Provision.

The Act defines a "Hotel" as including not only a hotel building of the covered size, but also "any contracted, leased or sublet premises connected to or operated in conjunction with the building's purpose, or providing services at the building" (an "*Ancillary Business*").  *See* Act §186.01(D).  Thus, the Act purports to require any independent businesses that operate within the footprint of a covered hotel, such as a restaurant or convenience store, or even within the same shopping complex, to abide by the Act's economic terms.  In some instances, the Ancillary Business is a

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

relatively small employer, with lower revenues and fewer employees than the smaller hotels (*see* Martz Decl. ¶12; Czarcinski Decl. ¶26), which are exempted from the Act, presumably, because they could not afford the unreasonably high, mandated wage rate.  Local 11 has historically tried to force unionized hotel operators to impose their CBA on non-union Ancillary Businesses (most especially restaurants), but without success.  (*See, e.g.*, Gleason Decl. ¶¶23-25.)

### H.   Interference With Labor Relations.

According to labor law Professor Zev J. Eigen of Yale Law School, the Act will have the effect of interfering with union organizing, collective bargaining, and labor relations for both union and non-union hotels in the City of Los Angeles. (Eigen Decl. ¶¶8-50.)  These conclusions are substantiated by the factual record, which Professor Eigen has analyzed from the perspective of federal labor policy and actual labor-management practice.

At unionized hotels – where, in accordance with industry practice, tipped employees are paid a lower wage-rate than non-tipped employees – the hotel operator must obtain a waiver from Local 11 merely to maintain the wage-rate pattern already in its CBA.  But, the Union has so far refused to grant such a waiver or insisted on unconscionable conditions, such as the operator's agreement not to participate in this lawsuit.  (*See* Czarcinski Decl. ¶¶42, 45.)  At other hotels, the operator may be unable to provide a pay raise that would already have been paid under its CBA – and thus risk disruption of currently harmonious relations with its employees – unless it receives a waiver that the Union has so far refused to give.  (Gleason Decl. ¶50.)  The Union can also use the prospect of highly increased labor costs (unrelated to pay practices already accepted by the Union as legitimate) as a "bargaining chip" to gain work-rule or other concessions it would not otherwise be able to induce the operator to agree to – and, in fact, it has already attempted to do so.  (*Id.* ¶¶34-35.)

In addition to the costs from the wage-rate provisions, the Act will likely disrupt hotel operations by requiring hotels to change the way they run their

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

6

restaurants or other services, or the kind of third-party services that their hotels may offer.  (*See* Martz Decl. ¶¶15-20; Hsu Decl. ¶28; Roberts Decl. ¶13.)  Any adjustment in hotel services could impact the goodwill, customer loyalty, and reputation of affected hotels, further reinforcing the value of obtaining a waiver.

The Act also assists Local 11 in organizing non-union hotels by putting pressure on operators to accept a Union card-check recognition agreement.  As a consequence of its terms – and especially its requirements as to the wage rates of tipped employees – the Act puts non-union hotels at a severe competitive disadvantage as compared to both neighboring hotels that, due to accidents of geography, are not subject to the Act or to nearby unionized hotels that obtain a waiver.  (*See, e.g.,* Mora Decl. ¶¶19-20; Wlodkowski Decl. ¶17; Roberts Decl. ¶13.)

This affects the economic calculus of non-union hotel operators if they are confronted by Local 11 with a demand to accept a card-check recognition agreement.  They are either economically pressured to accept an agreement they otherwise would have rejected (*see* Stigter Decl. ¶21; Roberts Decl. ¶16; Mora Decl. ¶22; Hannigan Decl. ¶29) or they are financially penalized for their principled refusal to waive the rights they have under federal labor law, which are a legal consequence of Local 11 "neutrality" agreements.  (*See* Rowling Decl. 37; Hsu Decl. ¶30.)[5]

Recognizing this economic leverage, Local 11 (with its ally LAANE) has already used the Act's requirements to attempt to induce a non-union hotel owner to accept a neutrality agreement (*see* Zen Decl. ¶11) or to foist Union terms on Ancillary Businesses (*see* Czarcinski Decl. ¶¶33, 35; Gleason Decl. ¶¶23, 35).

Finally, the Act further interferes with labor relations making it a "willful violation" of the statute for a Hotel Employer to even attempt to obtain a waiver without doing so through the Union.  (*See* Eigen Decl. ¶12.)

---

[5] As to the terms of neutrality agreements, generally and with respect to Local 11 in particular, and the legal effect of such agreements on rights afforded by federal labor law to employers and employees, *see* Eigen Decl. ¶¶38-48; Gleason Decl. ¶27; Rowling Decl. ¶¶29-31.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

7

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

### III.   GOOD CAUSE SUPPORTS THE ISSUANCE OF A PRELIMINARY INJUNCTION.

Preliminary injunctions preserve the relative positions of the parties pending a trial and are not meant to constitute "a preliminary adjudication on the merits." *Textile Unlimited, Inc. v. A.. BMH & Co.*, 240 F.3d 781, 786 (9th Cir. 2001); *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1174 (C.D. Cal. 2008). In ruling on a motion for preliminary injunction, the court has "broad powers and wide discretion to frame the scope of appropriate equitable relief." *See, e.g., Carrillo v. Schneider Logistics, Inc.*, 501 Fed.Appx. 713, 716, 2012 WL 6734672, at *2 (9th Cir. 2012) (internal citation omitted). This includes the power to delay or stay the implementation and enforcement of a law preempted by federal law. *See, e.g., Garrett v. City of Escondido*, 465 F. Supp. 2d 1043, 1057, 1059 (S.D. Cal. 2006).

A preliminary injunction should be issued upon a showing of likelihood of success on the merits, likelihood of irreparable harm, the balance of equities in the movant's favor, and that an injunction is in the public interest. *Winter v. Natural Res. Def. Council,* 555 U.S. 7, 20 (2008). Under the Ninth Circuit's sliding scale approach, there is also sufficient basis for a preliminary injunction where there is "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff [...], so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). A plaintiff may also be entitled to injunctive relief upon a showing of a "fair chance" of success on the merits. *Sierra On-Line, Inc. v. Phx. Software,* 739 F.2d 1415, 1421-23 (9th Cir. 1984).

Here, as set forth fully below, Plaintiffs are likely to succeed on the merits of their claim of federal labor-law preemption because the Hotel Workers Act, whether by design or consequence, upsets the balance of power between labor and

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

management and interferes with "zones of activity" that Congress intend to be left to the "free play of economic forces." *Bldg. & Constr. Trades Council v. Associated Builders & Contrs.* ("*Boston Harbor*"), 507 U.S. 218, 226 (1993).

### A. The Hotel Workers Act Is Preempted Because It Upsets The Labor-Management Balance Mandated by Congress.

In 1935, Congress began regulating the processes of union organizing and collective bargaining when it passed the National Labor Relations Act ("*NLRA*"), 29 U.S.C. §151 *et seq.*[6] For the last 30 years, it has been "commonplace that in passing the NLRA Congress largely displaced state regulation of industrial relations," *Wisconsin Dept. of Industry v. Gould Inc.*, 475 U.S. 282, 286 (1986) – a displacement that applies with equal force to municipalities. *See, e.g., Aeroground, Inc. v. City and Cty. of San Francisco*, 170 F. Supp. 2d 950, 955 (N.D. Cal. 2001).

The legal principles controlling this case were clearly and recently stated by the Supreme Court in *Chamber of Commerce v. Brown ("Brown")*, 554 U.S. 60 (2008):

> Although the NLRA itself contains no express pre-emption provision, we have held that Congress implicitly mandated two types of pre-emption as necessary to implement federal labor policy. [ . . . ] The second [type], known as *Machinists* preemption, forbids both the National Labor Relations Board (NLRB) and States to regulate conduct that Congress intended "be unregulated because left 'to be controlled by the free play of economics forces." [ . . .] *Machinists* preemption is based on the premise that "'Congress struck a balance of protection, prohibition, and laissez-faire in respect to union organization, collective bargaining, and labor disputes.'"

---

[6] The original NLRA was amended and reenacted as Title II of the Labor Management Relations Act, 1947 ("LMRA"), 29 U.S.C. §141, *et seq.* The current statute, incorporating all prior amendments, is still properly called the "NLRA." *See* 29 U.S.C. §167.

9

*Id.* at 65 (citing *Machinists v. Wisconsin Empl. Rels. Comm'n*, 427 U.S. 132, 140 (1976)); *see also Metropolitan Life Ins. v. Mass.* ("*MetLife*"), 471 U.S. 724, 749 (1985) (*Machinists* preemption "protects against state interference with policies implicated by the structure of the [NLRA] itself"); *520 S. Mich. Ave. Assocs. v. Shannon ("Shannon")*, 549 F.3d 1119, 1125 (7th Cir. 2008) (state law preempted by implication "if it conflicts with the underlying goals and policies of the NLRA").

In applying *Machinists* preemption, the *effect* of local law on federal labor policy is paramount: "Pre-emption analysis . . . turns on the actual content of [the ordinance] *and its real effect on federal rights*." *Brown,* 554 U.S. at 69 (internal citations omitted)(emphasis added); *see also MetLife*, 471 U.S. at 753 (under *Machinists*, courts "'must construe the [NLRA] and determine its impact on state law in light of the wider contours of federal labor policy'")(internal citation omitted).

These precepts derive from "the understanding that in providing in the NLRA a framework for self-organization and collective bargaining, Congress determined both how much of the conduct of unions and employers should be regulated, and how much it should be left unregulated." *MetLife,* 471 U.S. at 751. Moreover, because "[w]hat Congress left unregulated is as important as the regulations that it imposed," *Brown,* 554 U.S. at 68 (internal citations omitted), states and municipalities have "no [. . .] authority [. . .] to upset the balance that Congress has struck between labor and management." *See MetLife,* 471 U.S. at 751.

Because the Hotel Workers Act upsets, in innumerable ways, the balance that Congress struck between labor and management with respect to collective bargaining, union organizing, and labor relations, it is preempted by federal law and cannot be enforced.

### 1.   *Machinists* Preemption Bars Legislative Interference With Collective Bargaining and Labor Relations.

While no one denies that cities may, in the exercise of their police power, enact ordinances promoting their perception of the public good, they cannot do so in a way

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

that intrudes on "a zone of activity" in the area of labor-management relations that Congress "inten[ded] to shield [. . .] from regulation," *Brown* 554 U.S. at 68, or that interferes with the "implement[ation of] federal labor policy." *See id.* at 65.

For example, in *Golden State Transit Corp. v. City of Los Angeles*, 475 U.S. 608, 618 (1986), the Supreme Court held that the City of Los Angeles was preempted from conditioning the renewal of a taxicab company's franchise on its settling a then-pending strike of its unionized employees. While acknowledging that the City was "exercising a traditional municipal function in issuing taxicab franchises," the Court still held that "a city cannot condition a franchise renewal *in a way that intrudes into the collective bargaining process." Id.* at 618, 619 (emphasis added); *see id.* at 615 ("bargaining process was thwarted" by City's action). *Golden State* teaches that the City goes too far when its use of municipal authority creates economic pressure on an employer's exercise of its prerogatives under federal labor law.

Similarly, the Ninth Circuit held preempted a local ordinance requiring all employers to pay "prevailing wages" to their employees on certain private-sector construction projects. *Chamber of Commerce v. Bragdon ("Bragdon")*, 64 F.3d 497 (9th Cir. 1995). The ordinance specified a certain breakdown between wages and benefit-fund contributions, which the court found would have the impermissible effect of requiring even those employers already offering comparable compensation packages to renegotiate with their unions. *Id.* at 502. Further, the court found that the ordinance would not have actually advanced its stated public purpose, suggesting that its passage was the work of interest-group lobbying – thus "substitut[ing] the free-play of political forces for the free-play of economic forces that was intended by the NLRA." *Id.* at 503-04; *see also Bechtel Constr. Inc. v. United Bhd. of Carpenters*, 812 F.2d 1220, 1226 (9th Cir. 1987) (apprentice wage rate preempted because by effectively raising journeyman wage scale, it interfered with collective bargaining).

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

Especially instructive here is *520 S. Mich. Ave. Assocs. v. Shannon*, *supra*.  In *Shannon*, a Chicago hotel was resisting union bargaining demands by continuing to operate under the terms of its expired CBA.  544 F.3d. at 1121.  The state then amended an existing labor-protection statute to increase meal and rest periods – but only for hotel room attendants working in the City of Chicago.  *Id*. at 1122.  Agreeing with the hotel's assertion that the statute imposed economic pressure to settle its dispute on terms favorable to the union, the court ruled that law was preempted by *Machinists* because it "serve[d] as a disincentive to collective bargaining," and contrary to the purpose of the NLRA, "encourage[d] […]employers or unions to focus on lobbying at the state capital instead of negotiating at the bargaining table."  *Id.* at 1132-33.[7]

### 2.  *Machinists* Preemption Bars Government Interference With Union Organizing.

The principles of *Machinists* preemption apply with equal force in the context of union organizing.  In *Chamber of Commerce v. Brown, supra,* the Court ruled preempted a statute prohibiting recipients of state funds from "using those funds to 'assist, promote, or deter union-organizing'" because it constituted an improper attempt to regulate non-coercive speech about labor-management relations, an area left unregulated by Congress.  554 U.S. at 77.

Federal labor law "encourge[s] free debate on issues dividing labor and management," and a policy judgment "favoring uninhibited, robust, and wide-open debate" in labor disputes "suffuses the NLRA as a whole."  *Id.* at 68.  Consequently, even where, as in *Brown*, the state set conditions for the use of its own funds, *Machinists* preemption applied.  *Id.* at 69.

---

[7] The statute in *Shannon* has uncanny similarities to the Hotel Workers Act: it was the result of UNITE HERE lobbying, *id.* at 1133 n. 10; it applied only to hotels and only in one locale, *id.* at 1130; it set a substantive standard "exponentially higher" than the existing statewide minimum, *id.* at 1136; it provided treble damages for underpayments, *id.* at 1135, and it ignored the "pay and work structure" that was standard in the industry, *id.* at 1137.

12

Many activities related to union organizing are protected by federal labor law. Absent an agreement to the contrary, management has a right not only to express views to employees concerning union representation, but also to insist on a Board-supervised secret-ballot election, *see NLRB v. Gissel Packing Co.*, 395 U.S. 575, 617 (1969), and to limit union organizers' access to its premises. *See Lechmere, Inc. v. NLRB*, 502 U.S. 527 (1992). Indeed, it is settled law that NLRB-supervised elections "are the preferred method for ascertaining employee sentiment" about bargaining representatives. *United Steel Workers of Am. v. NLRB*, 482 F.3d 1112, 1117 (9th Cir. 2007); *see also Gissel Packing*, 395 U.S. at 603 (prohibiting NLRB certification of union without election even where the election process had been tainted by employer's unfair labor practices); *cf.* Eigen Decl. ¶¶46-47 (detailing outcome differences between NLRB elections and card-check recognition).

In the "zone" of union organizing, it is simply not "permissib[le]" for state or local governments to enact legislation that, "put[s] considerable pressure on an employer [to …] refrain[] from conduct protected by federal law." *Brown*, 554 U.S. at 73 (emphasis added) (internal citation omitted). Any municipal ordinance that, in purpose or effect, deters or disincentivizes conduct that Congress allowed – let alone what it encouraged – is preempted.

Yet, that is precisely what Local 11's "neutrality" agreements do. By definition, "neutrality" inhibits "robust and wide-open debate" on the pros and cons of unionization, which is "favored" by the NLRA. By operation of law, consent to card-check recognition constitutes a waiver of the employer's right to demand an NLRB secret-ballot election. *See Hotel Employees, Local 2 v. Marriott Corp.*, 961 F.2d 1464, 1468 (9th Cir. 1992). Just as critically, if a union is recognized by an employer pursuant to authorization cards, the affected employees lose for one year their right to obtain an NLRB-supervised election to determine the union's majority status. *See Lamons Gasket Co*, 357 NLRB No. 72 (2011). And, the terms of "neutrality" agreements – whether they extinguish an employer's protected right to

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

13

present its view of unionization, to deny access to union organizers, or to demand NLRB-supervised election – are binding obligations that the courts will enforce.  *See Hotel Employees*, 961, F.2d at 1468, 1469 n. 8, 1470.

### 3. The Hotel Workers Act Interferes With Federal Labor Policy.

The Hotel Workers Act establishes a hotel-specific minimum wage that is a 70% increase over the current state minimum wage.  It then requires that this wage-rate be paid to all Hotel Workers, irrespective of their receipt of gratuities and service charges.  This creates exceedingly costly compensation schemes inconsistent with hotel economics.  (*See, e.g.,* Hannigan Decl. ¶¶16-22; Rowling Decl. ¶¶21-22.)  By giving hotel worker unions in Los Angeles – which, in reality, means Local 11 – the power to grant dispensation from the Act's provisions, the ordinance disrupts the "balance of power" between labor and management, *see Golden State*, 475 U.S. at 619, and interferes with federal labor policy as Congress intended it to be (*see* Eigen Decl. ¶12, 45).

For example, the Act's waiver provision gives a bargaining advantage to the Union by requiring hotels to obtain from it dispensation from the Act's requirements. The Union thus has an economic weapon that it would not otherwise have had and can use to obtain concessions from hotel employers that were unattainable under the pre-existing "balance of [economic] power."  *See Golden State*, 475 U.S. at 619. And, because the Act does not simply exempt hotel employers with an existing CBA, but rather requires them to obtain from Local 11 its consent to a new contract term "waiv[ing]" the Act's provisions, existing collective bargaining relationships are disrupted.  This constitutes impermissible government "meddling" in the parties' collective bargaining.  *See, e.g., Cannon v. Edgar*, 33 F.3d 880 (7th Cir. 1994).

The effect is just as pronounced for non-union hotels.  In order to obtain a waiver, such hotel employers have to have a "bona fide" collective bargaining

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

agreement with (as a practical matter) Local 11.[8]  But, it is unlawful for an employer to enter into a collective bargaining agreement with a union – which is the statutory predicate for a "waiver" under the Act – unless the union is duly authorized (by election or voluntary recognition) to serve as its employees' collective-bargaining representative.  *See, e.g., Rayner v. NLRB*, 665 F.2d 970, 974 (9th Cir. 1982).

Since, as a practical matter, Local 11 organizes only through card-check recognition agreements, non-union hotels are effectively required to acquiesce in Local 11's demand for "neutrality" merely to be eligible for a waiver.  Consequently, non-union hotel employers are being economically pressured either to enter into agreements that forfeit federal rights or be penalized for refusing to do so.  By establishing an onerous "minimum" labor standard, but then allowing those who hew to the Union's agenda to avoid its consequences and obtain a competitive advantage, the City has doubly rejiggered the economic calculus as to whether or not to acquiesce to the Union's demand for card-check recognition – and all that entails. Such "considerable pressure on an employer" to yield its lawful prerogatives with respect to union organizing compels *Machinists* preemption.  *See Brown*, 554 U.S. at 73.

Perhaps most insidious is that Local 11 is now conditioning its grant of a waiver on the hotel's consent not to participate in lawsuits challenging the Act.  (*See* Czarcinski Decl. ¶42.)  Even the NLRB cannot interfere with reasonably-based civil suits brought by employers against unions by deeming them to be unlawful unfair labor practices.  *See NLRB v. Allied Mechanical Servs.*, 734 F.3d 486 (6th Cir. 2013) (applying *Bill Johnson's Rest. v. NLRB*, 461 U.S. 731 (1983)).  If the NLRB is not permitted to impinge on an employer's right to bring lawsuits adverse to union interests, how is it possible that the City of Los Angeles can give Local 11 the economic leverage to do the same thing?

---

[8] The specification of a "bona fide" CBA is independently inconsistent with federal labor policy.  (*See* Eigen Decl. ¶15.)

15

1    Preemption is further indicated where, as here, key provisions of an ordinance

2    are inconsistent with its stated purposes.  *See Bragdon*, 64 F.3d at 503; *Metro.*

3    *Milwaukee Ass'n of Comm v. Milwaukee Cty*, 431 F.3d 277, 281 (7th Cir. 2005)

4    (mismatch between the purported purpose and actual consequences suggests real

5    motive to influence bargaining process).  Here, the Act applies to employees in larger

6    hotels in Los Angeles who already receive a "living wage" but exempts the small

7    hotels whose employees are most in need of a higher wage rate.  As a practical

8    matter, this means that the Act requires wage increases for employees who are

9    already among the highest paid hourly workers at hotels while providing no benefit to

10   the workers whose actual hourly compensation is lower than those who are most

11   certain to benefit.

12   The Act also excludes from its protections employees classified as

13   "confidential" under federal labor law, even though that exclusion has no connection

14   to the reasons for a minimum wage and everything to do with union organizing.  The

15   Act further requires all Ancillary Businesses to pay the full $15.37 an hour wage rate,

16   even though they often are no better able to afford such a high "minimum" wage than

17   are the smaller Los Angeles hotels, which are exempted.  And, while other City

18   minimum-wage ordinances allow employers to offset a portion of the cash wage with

19   the value of fringe benefits, that is not allowed under the Hotel Workers Act.  Such a

20   colossal mismatch of purpose to effect belies the Act's stated intent and suggests that

21   its real purpose is to give Local 11 a cudgel to use against hotels.

22   Lastly, that a statute has a "formidable enforcement scheme" that "impose[s]

23   punitive sanctions for noncompliance [. . .] and deterrent litigation risks" is an

24   additional basis for *Machinists* preemption.  *See Brown*, 554 U.S. at 263, 71-72;

25   *Shannon*, 549 F.3d at 1135.  That the Hotel Workers Act provides for treble damages

26   for "willful" underpayment, allows lawsuits by individual workers (with the right to

27   recover attorney's fees), and creates doubt as to whether a CBA is "bona fide" and

28   how the "[u]nilateral implementation" ban applies at the expiration of a CBA – surely

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

16

Holland & Knight LLP
400 South Hope Street, 8ᵗʰ Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

constitutes the kind of "formidable enforcement scheme" that renders the Act preempted. *Id.*

There are academics who believe that the current system of labor-management relations – and in particular, union organizing – is unfairly skewed toward employers.[9]  Perhaps LAANE and certain members of the City Council share that view.  But, the City of Los Angeles has no authority to use its police power, under the guise of setting a "fair wage," to redistribute economic power in an effort to alter the parties' bargaining power as it deems best.  *See Golden State,* 475 U.S. at 619 ("[a] local government [. . .] lacks the authority to introduce some standard of properly balanced bargaining power") (internal quotations omitted).  Rather, "[i]f there is an imbalance in economic weaponry, it is not a regional problem to be addressed in whatever manner, or not at all, as each state [or municipality] sees fit; it is a national problem which requires uniform treatment by Congress."  *Employers Ass'n, Inc. v. United Steelworkers of Am.,* 32 F.3d 1297, 1301 (8th Cir. 1994) (internal citation omitted).  Because the Act, whether by design or consequence, significantly affects the balance of economic power between Los Angeles hotel employers and Local 11, it is preempted by federal law.

**B.**   **The Post-Expiration Effects of the Act Are an Independent Basis for Preemption.**

Permitting its provisions to be waived by a union as part of collective bargaining, the Act also states that the "[u]nilateral implementation" of terms and conditions of employment "shall not constitute or be permitted" as such a waiver.  But, "[u]nilateral implementation" by an employer – or the prospect of doing so – is "an integral part of the bargaining process" in labor management relations.  *See Brown v. Pro Football, Inc.* ("*Pro Football*"), 518 U.S. 231, 239 (1996).  By prohibiting "[u]nilateral implementation" of waivers, the Act interferes with

---

[9] *See, e.g., Sachs, supra,* note 1, at 1162-64 (summarizing academic literature).

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

collective bargaining as typically occurs at the expiration of a CBA. (*See* Eigen Decl. ¶¶ 28-33.)

The ban on "[u]nilateral implementation" is, in effect, a "snap back" provision that some might say requires employers who have previously received union waivers to implement the mandatory minimum wage (and other requirements of the Act) immediately upon expiration of an existing CBA. If, for example, a hotel, pursuant to a previously granted waiver, is paying banquet servers a wage-rate that is less than $15.37 and taking a portion of the service charge and, then, the CBA expires – the continuation of that wage-rate and service-charge practice could be deemed "[u]nilateral implementation" of a term of employment, which is explicitly "not . . . permitted" as a waiver. To avoid the possibility of violating the Act, the hotel might have to immediately increase its banquet-server wage-rates and turn over the entirety of the service charge. Failure to do so could risk significant financial liability, as the Act creates a private right of action for employees to seek treble damages for willful noncompliance. Hotels therefore face formidable legal risk at the expiration of a CBA, even if the Union has already granted a clear and unambiguous waiver.[10]

That, however, creates an intolerable "double bind," as changing wage rates when a CBA expires violates the hotel's duty under Section 8(d) of the NLRA to engage in good-faith collective bargaining. This is so because employers are prohibited from making *any change* in the terms of employment during the interim period when a new contract is being negotiated, even if the change is favorable toward their employees. *See Labor Health & Welfare Trust Fund v. Advanced Lightweight Concr.*, 484 U.S. 539, 544 (1988) (expanding *NLRB v. Katz*, 369 U.S. 736 (1962)).[11]

---

[10] It interferes with bargaining to have to negotiate under threat of civil liability for treble damages. *See Pro Football*, 518 U.S. at 246.

[11] An employer's unilateral action, even one that benefits employees, is unlawful because it effectively communicates to the workforce that they do not need the union to protect their interests. S*ee NLRB v. McClatchy Newspapers*, 964 F.2d 1153, 1162 (D.C. Cir. 1992).

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

18

Moreover, the doctrine of *Machinists* preemption precludes enforcement of state law inconsistent with the terms of a labor agreement, even after it has expired. *See Barnes v. Stone Container Corp.*, 942 F.2d 689, 693 (9th Cir. 1991) ("the incidental effect of allowing [the plaintiff] to pursue his [wrongful discharge] action after contract expiration, but prior to a bargaining impasse, is precisely the sort of entanglement the Supreme Court sought to avoid in *Machinists*"); *Derrico v. Sheehan Emergency Hosp.*, 844 F.2d 22, 28 (2d Cir. 1988) ("the Supreme Court has broadly construed this '*Machinists* preemption' doctrine to bar 'state interference with policies implicated by the structure of the [NLRA] itself" so as to avoid "substantial potential for friction between the delicate machinery of the NLRA" and the enforcement of state employment-law following expiration of a CBA); *Levy v. Verizon Info. Servs.*, 498 F.Supp. 2d 586 (E.D.N.Y. 2007).

This principle was clearly established by the Supreme Court in *Brown v. Pro Football, supra*, where, after the CBA between the National Football League and the NFL Players Association expired, the parties reached impasse concerning developmental squad players. The club owners implemented the League's proposal of paying a fixed weekly salary to all developmental squad players, which was their lawful prerogative (*see* Eigen Decl. ¶ 28). Some players challenged this, arguing that the employers' collective implementation violated federal antitrust laws (as it was, obviously, a concerted act in restraint of trade) and that the labor exemption to federal antitrust law ceased to apply once the CBA expired (or, if not then, at impasse).[12]

The Supreme Court held, however, that post-impasse unilateral actions of employers were still immunized from federal antitrust law, even though it would otherwise be a conspiracy in restraint of trade, because the policies imbedded in the

---

[12] A "bargaining impasse" is a term of art under the NLRA that has been carefully defined. *See Pro Football*, 518 U.S. at 239; *see also* Eigen Decl. ¶¶28, 30. Significantly, unilateral implementation, which is permitted at the point of impasse, has the effect of breaking the impasse and requiring further good-faith bargaining. *See* 1 THE DEVELOPING LABOR LAW 899 (John E. Higgins, Jr., ed., 6th ed. 2012). That is one reason why impasse and unilateral implementation are, as the Supreme Court put it, "an integral part of the bargaining process." *Pro Football*, 518 U.S. at 239.

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

1  NLRA and the needs of collective bargaining so required.  If federal labor law

2  precludes the enforcement of federal antitrust law following the expiration of a CBA,

3  it certainly precludes an ordinance of the City of Los Angeles.  Therefore, that

4  provision of the Act which disallows "[u]nilateral implementation" from

5  "constitut[ing]" a permissible union waiver is, in and of itself, grounds for the Act's

6  preemption.[13]

7  ### C.   That the Act Raises the Mandatory Wage-Rate Does Not

8  ### Immunize It From *Machinists* Preemption.

9  As the Supreme Court has made quite clear in *MetLife, supra,* while federal,

10  state or local law setting "minimal substantive requirements on contract terms

11  negotiated between parties to labor agreements" are not ordinarily preempted by

12  *Machinists* preemption, this is so only "so long as the purpose of the [federal, state, or

13  local] legislation is not incompatible with the[ ] general goals of the NLRA."  471

14  U.S. at 754-55.  And, a city ordinance that upsets the "balance of power" between

15  labor and management is assuredly "incompatible" with the "general goals of the

16  NLRA."  *See Golden State*, 475 U.S. at 619.  The facts show that assisting Local 11

17  to organize larger non-Union hotels in Los Angeles was at the heart of the Hotel

18  Workers Act, concealed though that purpose may have been.  (*See* §II.C., *supra*; *see*

19  *generally* Eigen Decl. ¶45).  This alone is a basis for the Act's its preemption.

20  But, a purpose to disrupt labor relations is not essential for preemption.

21  Rather, if local legislation interferes with labor relations in a "zone of activity"

22  shielded by Congress, then preemption should be presumed. *See N.Y. Tel. Co. v.*

23  *N.Y.S. Dept. of Labor*, 440 U.S. 519, 549 (1979) (Blackmun and Marshall, JJ.,

24  concurring). The touchstone is congressional intent: the court must assess "whether

25  Congress in fact intended the conduct to be unregulated." *MetLife*, 471 U.S. at 749, n.

26  27. The court's determination of Congress' intent derives from an "analysis of the

27

28  _____
[13] To the extent that *National Broadcasting Co. v. Bradshaw*, 70 F.3d 69, 73 (1995)
suggested otherwise, it has been overruled by *Pro Football*.

20

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

structure of the federal labor law to determine whether certain conduct was meant to be unregulated," not a balancing between local and federal interests. *Id.* (internal citations omitted).

Laws that purport to set "minimal labor standards" are also preempted under *Machinists* if they "have any but the most indirect effect[s] on labor-management relations." *See MetLife*, 471 U.S. at 755. The City will undoubtedly cite, out of context, a sentence from *MetLife*, which states as follows:

> No incompatibility exists, therefore, between federal rules designed to restore the equality of bargaining power, and state or federal legislation that imposes minimal substantive requirements on contract terms negotiated between parties to labor agreements […].

*Id.* at 754. This Court, however, cannot ignore the case's full teaching:

> Minimum state labor standards *affect union and nonunion employees equally, and neither encourage nor discourage the collective-bargaining processes that are the subject of the NLRA.* Nor do they have *any but the most indirect effect on the right of self-organization* established in the Act. Unlike the NLRA, mandated-benefit laws are not laws designed to encourage or discourage employees in the promotion of their interests collectively […]. Nor do these laws *even inadvertently affect the interests implicated in the NLRA.*

*Id.* at 755 (emphasis added); *see also id.* at 756 (Congress did not intend to disturb state laws that set minimum law standards "but were unrelated *in any way* to the process of bargaining or self-organization") (emphasis added).

For reasons already explained, it cannot be said that the Hotel Workers Act is "unrelated in any way" and has none "but the most indirect effect" on union organizing, collective bargaining, and labor relations. It, therefore, does not enjoy the shelter from *Machinists* preemption that minimum labor standards are sometimes – but not always – afforded. *See Chamber of Commerce v. Bragdon*, 64 F.3d 497, 502

21

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

(9th Cir. 1995) (law "affects the bargaining process in a much more invasive and detailed fashion than the isolated statutory provisions of general application approved in *Metropolitan Life* and *Fort Halifax*"); *Cannon v. Edgar*, 33 F.3d 880, 885 (7th Cir. 1994) (state law "intrudes on the collective bargaining process" by, *inter alia*, "order[ing] the parties to negotiate as to a specific substantive condition" of their labor agreement).

Moreover, the statutes approved by the Supreme Court in *Fort Halifax* and *MetLife* were not preempted because, by setting a "minimal" employment standard, they "conflict[ed] with none of the purposes of the [NLRA]," but, rather, merely "form[ed] a 'backdrop' for [the parties'] negotiations."  *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21 (1987) (internal citation omitted); *see also Shannon*, 549 F. 3d at 1134 (as used by Supreme Court, "[m]inimum […] implies a low threshold"); *Bragdon*, 64 F. 3d at 500 (noting that a "minimal employment standard" is not inconsistent with NLRA goals).  There is, however, nothing the least bit "minimal" about the wage-rate mandated by the Hotel Workers Act.[14]

The problem is not just that the Act sets a wage-rate 70% higher than the current California minimum wage law.  *See Shannon*, 549 F.3d at 1136 (the more "stringent" a substantive labor standard, the more likely it "interferes with the bargaining process").  It is also that the City Council adopted that wage-rate based on its perception of what the larger hotels could afford to pay.  The Council also acted to address the "pressing" issue of "[i]ncome inequality."  *See* Act § 186.00.  But, in enacting the NLRA, Congress, too, addressed "'the widening gap between wages and profits,' [which were] thought to be the cause of economic decline and depression."  *MetLife* 471 U.S. at 752 (quoting remarks of Sen. Wagner).  Congress' way of doing

---

[14] *See* Merriam-Webster Online Dictionary. 2015. http://www.merriam-webster.com (15 Jan. 2015)  (defining "minimal" as "the least possible <a victory won with *minimal* loss of life> [. . .] barely adequate <a *minimal* standard of living> [. . .] very small or slight <a *minimal* interest in art").  The Supreme Court in *MetLife* clearly understood the standard there to be both "minimum" and "minimal." *See* 471 U.S. at 756.  The law challenged by Plaintiffs here is clearly not the latter.

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

that was by "'restoring equality of bargaining power' among other ways, 'by encouraging the practice and procedure of collective bargaining [. . .].'" *Id.* at 753-54.  The NLRB, states, and cities are "without authority to attempt to 'introduce some standard or properly 'balanced' bargaining power' or to define [. . .] an 'ideal' or 'balanced' state of collective bargaining." *Machinists*, 427 U.S. at 149-50 (internal citation omitted).  The "balance of power" between labor and management was how Congress chose to correct the problem now called "[i]ncome inequality."  The City has no authority to augment Congress' handiwork.

For all of these reasons, the Hotel Workers Act is decidedly not a mere "backdrop" for negotiations, but rather "invasive[ly]" affects collective bargaining and union organizing, *see Bragdon* at 502, and, in numerous ways, "intrude[s]" on labor relations, disrupting "Congress' intentional balance between the power of management and labor to further their respective interests by use of their respective economic weapons." *Cannon*, 33 F.3d at 885.  Therefore, that the Act sets the lowest wage rate that covered hotels are permitted to pay is actually immaterial to its being preempted under *Machinists*.

### D.   The Equities Favor Issuance of An Injunction.

#### 1.   Plaintiffs' Members Will Suffer Irreparable Harm.

Plaintiffs here have "established a threatened and imminent irreparable harm that cannot be adequately compensated at a later time," *Garrett v. City of Escondido*, 465 F.Supp.2d at 1052, so as to warrant injunctive relief.

Specifically, certain affected hotels are in the process of negotiating labor agreements, or will be within the coming months.  Whether the hotel employers have to comply with the Act will dictate their bargaining positions and the deals that they agree to (or refuse).  Employers negotiating for a waiver are faced with the decision of whether to grant the Union's demands to obtain one.  Once agreement is reached, the employers are legally required to sign documents expressing the agreed-upon terms, *e.g.*, *Graham Automotive, Inc. d/b/a Valley Honda*, 347 NLRB 615 (2006),

23

and the obligations accepted are legally enforceable in federal court, *see, e.g.,* *Bliesner v. Comm'n Workers of Am.*, 464 F.3d 910, 913 (9th Cir. 2006). These decisions affect the ongoing labor relations at covered hotels and cannot be summarily undone.

Moreover, card-check neutrality agreements, which change the legal rights of employers and employees, are legally binding and enforceable once entered into. *See Hotel Employees,* 961 F.2d at 1469-70. There is no established legal basis for unringing that bell.

Hotels are already beginning to make adjustments to their operations to manage their costs of compliance. Such modifications could cause intangible injuries, such as loss of goodwill and market share, which in itself justifies preliminary relief. *See, e.g., Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.* 944 F.2d 597, 603 (1991).

## 2.   The Balance of Hardships and Consideration of the Public Interest Weigh in Favor of Plaintiffs.

While the Associations' members and the other affected hotels and businesses will be irreparably harmed by its enforcement, the City of Los Angeles can claim no prejudice or hardship resulting from delay. The City has already postponed until 2016 compliance with the new minimum wage for hotels with between 150 and 300 rooms. Its interests will not be harmed by allowing this matter to be fully adjudicated prior to implementation of all of the Act's requirements. Moreover, the public interest is advanced where courts preserve the status quo to ensure that important rights are not improperly taken away. *See St. Louis Police Retirem. Sys. v. Severson,* 2012 WL 5270125, *6 (N.D. Cal. 2012). That is exactly what is at issue here.

## IV.   THIS COURT SHOULD NOT IMPOSE AN INJUNCTION BOND.

In ruling on motions for a preliminary injunction, courts have substantial discretion to set the "amount of security required, *if any.*" *See Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (emphasis in original). Where, as here, there is a

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

24

1 strong likelihood of success on the merits and the balance of equities tips strongly in

2 Plaintiffs' favor, no bond at all is required. *See, e.g., Elliott v. Kiesewetter,* 98 F.3d

3 47, 60 (3d Cir. 1996). Likewise, a bond has been waived when "there is no realistic

4 likelihood of harm to the defendant," *Jorgensen*, 320 F.3d at 919, or where the

5 plaintiff's claim for injunctive relief, as here, arises under 42 U.S.C. § 1983, *see, e.g.,*

6 *Colin ex rel. Colin v. Orange Unif. Sch. Dist.*, 83 F. Supp. 2d 1135, 1140, 1151 (C.D.

7 Cal. 2000).

## V.   **CONCLUSION**

For all of the foregoing reasons, this Court should grant Plaintiffs' motion for a preliminary injunction in all respects.


DATED:  January 26, 2015              Respectfully submitted,

HOLLAND & KNIGHT LLP


By _____//S//_____

Michael Starr
Kristina S. Azlin

Attorneys for Plaintiffs

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 400 S. Hope St., 8th Floor, Los Angeles, California 90071.

On January 26, 2015, I served the document described as **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on the interested parties in this action as follows:

**[X]** (**BY Electronic Transfer to the CM/ECF System**) In accordance with Federal Rules of Civil Procedure 5(d) (3), Local Rule 5-4, and the U.S. District Court of the Central District's General Order governing electronic filing, I uploaded via electronic transfer a true and correct copy scanned into an electronic file in Adobe "pdf" format of the above-listed documents to the United States District Court Central District of California' Case Management and Electronic Case Filing (CM/ECF) system on this date.  It is my understanding that by transmitting these documents to the CM/ECF system, they will be served on all parties of record according to the preferences chosen by those parties within the CM/ECF system. The transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.  Dated: January 26, 2015, Los Angeles, California.

By:  _____//S// Kristina S. Azlin_____
                          Kristina S. Azlin

#34522541_v3

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450