9/25/2014                                      City of Los Angeles Mail - Draft Hotel LWO Motion



Justin Wesson <justin.wesson@lacity.org>

# Draft Hotel LWO Motion

1 message

**Chad Molnar** <chad.molnar@lacity.org>                              Mon, Jan 13, 2014 at 3:40 PM
To: Justin Wesson <justin.wesson@lacity.org>

Here it is.

--
Chad Molnar
*Chief of Staff*
Councilmember Mike Bonin
City of Los Angeles
█████████ | www.11thdistrict.com

Download the City of Los Angeles MyLA311 app for smartphones!



MyLA311 links Angelenos with the services and information they need to enjoy their city, beautify their community and stay connected with their local government. With MyLA311, City of Los Angeles information and services are just a few taps away.

 **RaiseLA.doc**
75K

# MOTION

Tourism is one of the most vital industries in Los Angeles, responsible for more employment than any other industry in the region. The City of Los Angeles has invested an estimated $1.3 billion over the last decade to grow this industry. Examples include partnerships with the Los Angeles Tourism and Convention Board to market the City-owned assets like the airports and Convention Center, along with the region's one of a kind attractions. In just the last couple of years, the Mayor and City Council have also provided significant financial incentives to support several new hotel projects, along with upgrades to the Convention Center, and the construction of Farmers' Field. With the help of this promotion and investment, tourism has been among the most successful industries to rebound in the wake of the recent recession. In just the last two years this industry has experienced record room occupancy rates, and the experts predict that these trends will continue. In fact, according to the Los Angeles Convention & Visitor's Bureau, hotels are expected to achieve record revenue in 2013.

While one of the most successful industries, tourism is also one of the lowest · paying. 43% of L.A.'s hotel workers earn wages below the poverty level, according to the Economic Development Department. On average, hotel workers take home just over $1,500 a month. These low wages not only hurt workers, but they also hurt the economy of Los Angeles and the surrounding region. Increasing wages for hotel workers could could generate over $70 million in economic activity for Los Angeles and nearly $5 million per council district, according to an analysis by the Los Angeles Alliance for a New Economy (LAANE).

Many surrounding localities have already undertaken efforts to raise wages for hotel workers. The cities of Santa Monica and West Hollywood have both required new hotels to pay a living wage, while voters in the City of Long Beach just last year adopted a living wage for hotel workers by a nearly 2-1 margin.

In 2007, the Los Angeles City Council passed a living wage ordinance for workers employed in hotels near LAX, and in 2009 passed an ordinance that raised the wages for airport employees. The living wage for airport employees is now $15.67 an hour, resulting in higher pay and real benefits for poor and low-income families, even as LAX continues to grow and attract world-class restaurants, services, and amenities for the traveling public.

**I THEREFORE MOVE** that the City Council instruct the City Attorney to prepare and present an ordinance requiring a minimum wage for hotel workers at hotels with more than 100 rooms, that is consistent with and comparable to the current living wage for airport employees.

PRESENTED BY: _____   _____
                     MIKE BONIN                      NURY MARTINEZ
                     Councilmember, 11th District   Councilmember, 6th District


SECONDED BY:   _____



# LAANE Launches New Minimum Wage Campaign

**LAANE** <laanenews@laane.org>                                    Wed, Jan 15, 2014 at 12:38 PM
Reply-To: laanenews@laane.org
To: edw.johnson@lacity.org



January 15, 2014

Citywide Pay Hike for Hotel Workers Would Lift Local
Business, L.A. Economy



Higher wages may be coming to thousands of L.A. hotel workers — and that's good news for everyone.

As the *L.A. Times*, *The New Republic* and the *Huffington Post* report

10/7/2014                    City of Los Angeles Mail - LAANE Launches New Minimum Wage Campaign

$75 million into the local economy. This means more consumer spending at local businesses, which translates into more jobs. No wonder hundreds of small businesses have already endorsed the proposal.

Now it's your turn -- please take a moment to __sign the Raise LA petition__

Let's set an example for the country that the best way to rebuild the middle class is to make sure hard-working people earn a living wage.

## About LAANE

LAANE is a leading advocacy organization dedicated to building a new economy for all. Combining dynamic research, innovative public policy and the organizing of broad alliances, LAANE promotes a new economic approach based on good jobs, thriving communities and a healthy environment.





**Forward email**



**SafeUnsubscribe**

This email was sent to edw.johnson@lacity.org by laanenews@laane.org |
Update Profile/Email Address | Instant removal with SafeUnsubscribe™ | Privacy Policy.

LAANE | 464 Lucas Ave. Suite 202 | Los Angeles | CA | 90017



Justin Wesson <justin.wesson@lacity.org>

# Fwd: Following up from the RLA meeting

1 message

**Andrew Westall** <andrew.westall@lacity.org>    Tue, Jan 21, 2014 at 4:42 PM
To: Justin Wesson <justin.wesson@lacity.org>

Please follow up with the boss and then Derek on this. Thanks!

---------- Forwarded message ----------
From: "Derek Smith" <dsmith@unitehere11.org>
Date: Jan 17, 2014 12:26 PM
Subject: Following up from the RLA meeting
To: "Andrew Westall" <andrew.westall@lacity.org>
Cc: "James Elmendorf" <jelmendorf@laane.org>

Andrew
Thanks for your help in pulling the group together this morning.  We are very appreciative of the Council President's leadership and willingness to engage in ensuring a successful resolution to the minimum wage issue.

I wanted to make sure that we had a common understanding of the next steps that were laid out.  I believe that Herb agreed to reach out to:
1) Councilmember Labonge
2) Councilmember Buscaino (after an approach by the Mayor)
3) Councilmember Krekorian (after an approach by Maria Elena)
4) Councilmember Cedillo

Assuming I have this right, can you please keep me in the loop on any progress?

Thanks,
Derek Smith
Political Director UNITE HERE Local 11
(310) 801-1410



LA
GEECS

andrew.westall • andrew.westall@lacity.org

# Invitation: Raise LA Follow Up Meeting @ Fri Jan 24, 2014 12pm - 1pm (andrew.westall@lacity.org)

1 message

Chad Molnar <chad.molnar@lacity.org>                                            Fri, Jan 17, 2014 at 12:51 PM
Reply-To: Chad Molnar <chad.molnar@lacity.org>
To: "andrew.westall@lacity.org" <andrew.westall@lacity.org>, Jim Dantona <jim.dantona@lacity.org>, Curtis Earnest <curtis.earnest@lacity.org>, Justin Wesson <justin.wesson@lacity.org>, "dsmith@unitehere11.org" <dsmith@unitehere11.org>, James Elmendorf <jelmendorf@laane.org>

## Raise LA Follow Up Meeting                                                   more details »

Staff meeting to follow up on Raise LA discussions.

| When | Fri Jan 24, 2014 12pm – 1pm Pacific Time |
| Where | CD-11, Room 475 (map) |
| Calendar | andrew.westall@lacity.org |
| Who | • Chad Molnar - organizer |
|  | • Jim Dantona |
|  | • Curtis Earnest |
|  | • Justin Wesson |
|  | • Andrew Westall |
|  | • dsmith@unitehere11.org |
|  | • James Elmendorf |

Going?   Yes  -  Maybe  -  No    more options »

Invitation from Google Calendar

You are receiving this email at the account andrew.westall@lacity.org because you are subscribed for invitations on calendar andrew.westall@lacity.org.

To stop receiving these notifications, please log in to https://www.google.com/calendar/ and change your notification settings for this calendar.

📄 invite.ics
2K





# RaiseLA motion - edits due today

1 message

**david grahamcaso** <david.grahamcaso@lacity.org>                                    Mon, Feb 3, 2014 at 9:40 AM
To: Jim Dantona <jim.dantona@lacity.org>, Linda Serrato-Ybarra <Linda.SerratoYbarra@lacity.org>, Curtis Earnest <curtis.earnest@lacity.org>, connie llanos <connie.llanos@lacity.org>, Justin Wesson <justin.wesson@lacity.org>, Andrew Westall <andrew.westall@lacity.org>
Cc: Chad Molnar <chad.molnar@lacity.org>

All,

Attached, please find a digital copy of the draft motion Councilmember Bonin gave your bosses when they met last Friday. **Please send me any edits you would like made to the motion by the end of the day today.**

Per our meeting on Friday, Chad is expecting a call from the City Attorney this morning, and we will let you all know as that conversation progresses. In the mean time, please send me your edits to the draft motion as soon as possible.

Thank you all,
David

--
David Graham-Caso
*Communications Director*
Councilmember Mike Bonin
City of Los Angeles
213-473-7011 | www.11thdistrict.com

facebook.com/MikeBoninCD11
@mikebonin

Download the City of Los Angeles MyLA311 app for smartphones!



MyLA311 links Angelenos with the services and information they need to enjoy their city, beautify their community and stay connected with their local government. With MyLA311, City of Los Angeles information and services are just a few taps away.

📄 **RaiseLAMotionDRAFT.doc**
   26K

## MOTION

By maintaining free public tourist attractions like Hollywood Boulevard and Venice Beach, modernizing LAX, upgrading the Convention Center and helping to build the public transportation system that will carry visitors around the city, to and from hotels, the City of Los Angeles has made significant financial investments to create a climate that has allowed the hospitality industry to thrive in Los Angeles. Additionally, in recent years, the Mayor and City Council have voted to approve significant financial incentives to support several new hotel projects. Since hotels receive definite benefits from City assets and investments, it is fair and reasonable that these hotels pay their employees a fair wage - especially when doing so would so greatly benefit the people of and the economy in Los Angeles.

According to the Economic Development Department, 43% of the people who work in hotels in Los Angeles earn wages that still put them far below the federal poverty line. Paying poverty wages to employees has a devastating toll on Los Angeles' local economy, as poverty wages prevent hospitality employees from having the purchasing power to shop at local businesses. According to research done by the Economic Policy Institute, increasing wages for hotel workers could generate more than $70 million in economic activity for Los Angeles and nearly $5 million in each council district in Los Angeles.

Not only is raising the minimum wage for employees at large hotels a financial imperative for Los Angeles, it is a moral imperative. Income inequality is one of the most pressing economic, social and civil rights issues facing Los Angeles, and establishing a fair wage for a day's work will help raise thousands of Angelenos out of poverty and into the middle class. Economic studies and anecdotal stories have made the dire circumstances of the lives of the working poor clear, and employees at large hotels should not be forced to work two or three jobs to provide food and shelter for their families - especially when the industry they serve continues to benefit from public investment in bringing tourism to Los Angeles.

LA is falling behind other municipalities in the region and many surrounding localities have already undertaken efforts to raise wages for hotel workers. The cities of Santa Monica and West Hollywood have both required new hotels to pay a living wage, while voters in the City of Long Beach just last year adopted a living wage for hotel workers by a nearly 2-1 margin.

In 2007, the Los Angeles City Council passed a living wage ordinance for workers employed in hotels near LAX, and in 2009 passed an ordinance that raised the wages for airport employees. The living wage for airport employees is now $15.67 an hour, resulting in higher pay and real benefits for working poor and low-income families, even as the hotels around LAX continue to thrive as LAX grows and attracts world-class restaurants, services, and amenities for the traveling public to the area.

**I THEREFORE MOVE** that the City Council instruct the City Attorney to prepare and present an ordinance requiring a minimum wage for hotel workers at hotels with more than 100 rooms, that is consistent with and comparable to the current living wage for airport employees.

PRESENTED BY:

| | | |
|---|---|---|
| MIKE BONIN | NURY MARTINEZ | CURREN PRICE JR. |
| Councilmember, 11th District | Councilmember, 6th District | Councilmember, 9th District |

SECONDED BY: _____



Andrew Westall <andrew.westall@lacity.org>

---

## Follow Up Living Wage Meeting

5 messages

---

**Chad Molnar** <chad.molnar@lacity.org>                                                Wed, Feb 5, 2014 at 9:44 AM
To: Justin Wesson <justin.wesson@lacity.org>, Andrew Westall <andrew.westall@lacity.org>

Good morning Justin and Andrew,

CM Bonin recommends a meeting of the living wage cosponsors (Bonin, Martinez, Price + Wesson) and labor (LAANE, UNITE HERE, Maria Elena Durazo), perhaps for right after Council on Friday, to review the motion as recommended by the City Attorney, get on the same page with some final details, and decide on a date to submit.

Do you agree and, if so, can you help arrange?

Thanks.

--
Chad Molnar
*Chief of Staff*
Councilmember Mike Bonin
City of Los Angeles
████████ | www.11thdistrict.com

Download the City of Los Angeles MyLA311 app for smartphones!



MyLA311 links Angelenos with the services and information they need to enjoy their city, beautify their community and stay connected with their local government. With MyLA311, City of Los Angeles information and services are just a few taps away.

---

**Justin Wesson** <justin.wesson@lacity.org>                                            Wed, Feb 5, 2014 at 9:59 AM
To: Chad Molnar <chad.molnar@lacity.org>
Cc: Andrew Westall <andrew.westall@lacity.org>

Council is in the Valley on Friday.

[Quoted text hidden]

---

**Chad Molnar** <chad.molnar@lacity.org>                                                Wed, Feb 5, 2014 at 10:48 AM
To: Justin Wesson <justin.wesson@lacity.org>
Cc: Andrew Westall <andrew.westall@lacity.org>

Oh yeah, that won't work. We'll need to arrange for some time next week, then.

--
Chad Molnar
Chief of Staff
Councilmember Mike Bonin
City of Los Angeles
████████ | www.11thdistrict.com

Download the City of Los Angeles MyLA311 app for smartphones!

 

MyLA311 links Angelenos with the services and information they need to enjoy their city, beautify their community and stay connected with their local government. With MyLA311, City of Los Angeles information and services are just a few taps away.

[Quoted text hidden]

---

**Chad Molnar** <chad.molnar@lacity.org>                                    Thu, Feb 6, 2014 at 1:32 PM
To: Justin Wesson <justin.wesson@lacity.org>
Cc: Andrew Westall <andrew.westall@lacity.org>

Do you guys want to call around for times that work early next week, or would you like us to do it?

---

Chad Molnar
*Chief of Staff*
Councilmember Mike Bonin
City of Los Angeles
~~[redacted]~~ | www.11thdistrict.com

Download the City of Los Angeles MyLA311 app for smartphones!



MyLA311 links Angelenos with the services and information they need to enjoy their city, beautify their community and stay connected with their local government. With MyLA311, City of Los Angeles information and services are just a few taps away.

[Quoted text hidden]

---

**Justin Wesson** <justin.wesson@lacity.org>                              Thu, Feb 6, 2014 at 8:11 PM
To: Chad Molnar <chad.molnar@lacity.org>
Cc: Andrew Westall <andrew.westall@lacity.org>

We're good. You guys can do it.

[Quoted text hidden]

 LA GEECS

Andrew Westall <andrew.westall@lacity.org>

## Committee

1 message

**James Elmendorf** <jelmendorf@laane.org>                    Wed, Feb 19, 2014 at 5:12 PM
To: Andrew Westall <andrew.westall@lacity.org>

Were you able to talk to herb about the study and appointing bonin to
the committee?

James

Sent from my iPhone



## Re: Meeting to set for Tuesday

**Shawn Wallace** <shawn.wallace@lacity.org>                    Mon, Jun 9, 2014 at 10:56 AM
To: Bertha Mardueno <BMardueno@launionaflcio.org>, Justin Wesson <justin.wesson@lacity.org>
Cc: Daniel Osztreicher <daniel.osztreicher@lacity.org>, Lisa Flores <lisa.flores@lacity.org>, Jackie Martinez
<jackie.martinez@lacity.org>

Bertha, et al, lets set it for 11:30 or as soon as Council ends. We're at bare quorum
tomorrow but should be finished.

Will you alert MED that it may begin later than 11:30? Also, they can meet in the
conference room behind chambers since everyone's downstairs (JW please
reserve).

Let me know any questions/concerns. Thanks everyone! Shawn

On Mon, Jun 9, 2014 at 10:31 AM, Bertha Mardueno <BMardueno@launionaflcio.org> wrote:

Shawn,

MED is confirmed. Will meeting be held in your office? I assume ard 11:30am?

Bertha Mardueno

**Executive Assistant to Maria Elena Durazo**

Los Angeles County Federation of Labor, AFL-CIO

2130 W. James M. Wood Blvd.,

Los Angeles, CA 90006

(p) 213 381 5611 ext: 120

(f) 213 383 0772



e-mail: bmardueno@launionaflcio.org

**From:** Shawn Wallace [mailto:shawn.wallace@lacity.org]
**Sent:** Monday, June 09, 2014 9:54 AM
**To:** Daniel Osztreicher
**Cc:** Lisa Flores; Jackie Martinez; Bertha Mardueno
**Subject:** Re: Meeting to set for Tuesday

# Waiting to hear back from Bertha for confirmation

*Shawn Love Wallace*

*Executive Assistant*

*Council President Herb Wesson's Office*

*200 N. Spring Street, Room 430, LA 90012*

*213-473-7010-phone*

*213-485-9829-fax*

*www.herbwesson.com*

www.facebook.com/HerbWessonJr

https://twitter.com/herbjwesson

http://instagram.com/herbjwesson

On Mon, Jun 9, 2014 at 9:07 AM, Daniel Osztreicher <daniel.osztreicher@lacity.org> wrote:

Can We confirm this?

On Fri, Jun 6, 2014 at 2:16 PM, Lisa Flores <lisa.flores@lacity.org> wrote:

Councilwoman Martinez  is available too, but she also has to leave by 1pm to attend Economic Development Committee.

Thank you.

Lisa

--

Lisa Flores

Executive Assistant/Scheduler

**Councilwoman Nury Martinez**
Sixth Council District
Ph: (213) 473-7006
Fax: (213) 847-0549

On Fri, Jun 6, 2014 at 1:26 PM, Jackie Martinez <jackie.martinez@lacity.org> wrote:

Hello,

CM Price is available. At 1pm he will need to leave and Chair the Economic Development Committee.
Thanks!

Regards,

Jackie Martinez

Office of Councilmember Curren Price

200 North Spring Street, Room 420

Los Angeles, CA 90012

Phone: (213) 473-7009  /  Fax: (213) 473-5946

On Fri, Jun 6, 2014 at 1:12 PM, Shawn Wallace <shawn.wallace@lacity.org> wrote:

Good afternoon everyone. CP wesson would like to hold a meeting tueaday after council re hotel living wage to include:

Martinez
Bonin
Price
ME Durazo

Can your boss make -it. Looking at 1230-1 behind chambers.

Please let me know. Excuse the poor note. Im not in the office

Shawn

----------- Forwarded message -----------



Daniel Oszfreleter
*Scheduler &*
Legislative *Deputy for Education and Healthcare*
Councilmember Mike Monir
City of Los Angeles
213-473-7013 | www.____/@chistoria.com

 

*Sign Up for Mike's Email Updates*

Download the City of Los Angeles MyLA311 app for smartphones!



My_A311 links Angelenos with the services and information they need to enjoy their city, beautify their community and stay connected with their local government. With MyLA311, City of Los Angeles information and services are just a few taps away.

10/8/2014                                    City of Los Angeles Mail - Raise LA

 LA
GEECS

## Raise LA

**Rich McCracken** <rmccracken@dcbsf.com>                                    Wed, Jun 4, 2014 at 5:25 PM
To: "valerie.flores@lacity.org" <valerie.flores@lacity.org>
Cc: "James Elmendorf (jelmendorf@laane.org)" <jelmendorf@laane.org>

Dear Valerie,

It has been a long time since we have been in communication.  I hope you are well and finding exciting things to do.  I have attached the most recent
draft I prepared of a Raise LA ordinance.

Best regards,

Rich

Richard G. McCracken

Davis, Cowell & Bowe

595 Market Street, Suite 1400

San Francisco, CA 94105

415-597-7200

Fax 415-597-7201

McCracken, Stemerman & Holsberry

10/8/2014                                    City of Los Angeles Mail - Raise LA

1630 S. Commerce St.

Las Vegas, NV 89102

702-386-5107

Fax 702-386-9848

---

 **2014-1-7 Raise LA.doc**
34K

**Payment of minimum compensation, service charges and sick days to hotel workers; no reductions.**

(a)     Each hotel employer shall pay hotel workers a wage of not less than the hourly rates set forth in this section. The rate upon enactment shall be fifteen dollars and thirty-seven cents ($15.37) for each hour worked. This rate shall be adjusted by the amount of increases in the federal minimum wage over the amount in effect on December 31, 2013, or, if greater, by the cumulative increase in the cost of living. The cost of living increase shall be the greater of (1) two percent (2%) or (2) the percentage increase as of December 31 in any year over the level as of December 31, 2012 of the Consumer Price Index for Urban Wage Earners and Clerical Workers in Los Angeles-Riverside Counties as published by the Bureau of Labor Statistics, U.S. Department of Labor or the successor index or federal agency. The Bureau of Contract Administration or its successor city agency shall publish a bulletin by May 1 of each year announcing the adjusted rates, which shall take effect the following July 1. Such bulletin will be made available to all hotel employers and to any other person who has filed with the mayor or the designated agency a request to receive such notice but lack of notice shall not excuse noncompliance with this section. An hotel employer shall provide written notification of the rate adjustments to each of its hotel workers and make the necessary payroll adjustments by July 1 following the publication of the bulletin. Tips or gratuities received by hotel workers and service charges or commissions shall not be credited as being any part of or offset against the wage rates required by this section.

(b) No more than twenty-five percent of any service charge shall be retained by an hotel employer and the part of the service charge not retained by the hotel employer shall be paid in the entirety by the hotel employer to the employees performing services for the customers from which the amounts are collected. No part of the amounts of the service charges payable to employees performing services may be paid to supervisory or managerial employees. The amounts shall be paid to the hotel worker(s) equitably and according to the services that are or appear to be related to the description of the amounts given by the hotel employer to the customers. The amounts shall be paid to the hotel worker(s) in the next payroll following collection of an amount from the customer. Without limitation of the foregoing:

(1)     Amounts collected for banquets or catered meetings shall be paid equally to the hotel worker(s) who actually work the banquet or catered meeting; and

(2)     Amounts collected for room service shall be paid to the hotel worker(s) who actually deliver food and beverage associated with the charge.

(3)     Amounts collected for porterage service shall be paid to the hotel worker(s) who actually carry the baggage associated with the charge.

This subsection does not apply to any tip, gratuity, money, or part of any tip, gratuity, or money that has been paid or given to or left for an hotel worker by customers over and above the actual amount due for services rendered or for goods, food, drink, or articles sold or served to the customer.

(c) An hotel employer shall pay every hotel worker sick pay out of the employer's general assets as follows:

(1) at least five compensated days off per calendar year for sick leave at the hotel worker's request. The hotel worker need not present certification of illness to claim compensated time off, provided that such hotel worker has accrued the requested days of compensated time at the time of the request. An hotel worker shall be paid his or her normal daily compensation for each compensated day off;

(2) an hotel worker shall accrue 5/12 of a day of compensated time for each full month in a calendar year that the hotel worker has been employed by the hotel employer. An hotel worker is entitled to use any accrued days of compensated time as soon as those days have accrued.

(d) Each hotel employer shall provide to each hotel worker substantially the same hours and other terms and conditions of employment that were in effect for that employee on January 1, 2014, or to an hotel worker hired after January 1, 2014, the hours and other terms and conditions of employment that were in effect for employees in the same classification or performing the same type of work on January 1, 2014. An hotel employer may change hours or any other term or condition of employment in effect on January 1, 2014, only to make that term or condition of employment more favorable to the affected hotel worker or employees, without regard to any other term or condition of employment. The requirements of this section do not apply to the terms and conditions of employment established by this section.

(e) Each hotel employer shall preserve the employment records of each hotel worker for the three years preceding the effective date of this section, or if the hotel worker has been employed for less than three years, for the entire length of the employee's employment prior to the effective date, and with respect to periods of employment after the effective date, each hotel employer shall preserve the employment records of each hotel worker for three years from the date of the creation of a record or any longer period of time required by other laws. Each hotel employer shall make any or all of the records it is required by this subsection to keep available for inspection and copying by the Bureau of Contract Administration or its successor city agency, upon not less than fifteen (15) days notice.

(f)     The provisions of this section may not be waived by agreement between an individual hotel worker and an hotel employer. All of the provisions of this section, or any part hereof, may be waived in a bona fide collective bargaining agreement, but only if the waiver is explicitly set forth in such agreement in clear and unambiguous terms and only so long as the agreement is in effect contractually. Unilateral implementation of terms and conditions of employment by either party to a collective bargaining relationship shall not constitute, or be permitted, as a waiver of all or any part of the provisions of this section. An hotel employer shall not discharge, reduce the compensation of or otherwise discriminate against any hotel worker for using any civil remedies to enforce this section or otherwise asserting his or her rights under this section.

(g)     An hotel worker claiming violation of this section may bring an individual or class action against his or her employer in Superior Court to enforce the provisions of this section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of this section, including but not limited to lost

compensation, damages, reinstatement or injunctive relief. An hotel worker who prevails in any action to enforce this section shall be awarded his or her reasonable attorney's fees and costs.

(h)    If any provision of this section is declared illegal, invalid or inoperative, in whole or in part, by the final decision of any court of competent jurisdiction, the remaining provisions and all portions not declared illegal, invalid or inoperative shall remain in full force or effect, and no such determination shall invalidate the remaining provisions or portions of the provisions of this section.

(i)    Definitions:

"*Compensation*" includes any wages, tips, bonuses, and other payments reported as taxable income paid by the hotel employer to the hotel worker.

"*Employment records*" means all employment records stating, applying, or reflecting terms and conditions of employment, including but not limited to payroll records, schedules, attendance records, handbooks, memoranda and other documents about terms and conditions of employment, and personnel action forms showing such things as hiring, promotion, demotion, compensation changes, leaves of absence, or termination.

"*Hotel*" means a residential building that is designated or used for lodging and other related services for the public, and containing 100 or more guest rooms, or suites of rooms. "Hotel" also includes any contracted, leased, or sublet premises connected to or operated in conjunction with the building's purpose, or providing services at the building.

"*Hotel employer*" means a person who owns, controls, and/or operates a hotel in the City of Los Angeles, or a person who owns, controls, and/or operates any contracted, leased, or sublet premises connected to or operated in conjunction with the hotel's purpose, or a person, other than a hotel worker, who provides services at the hotel pursuant to a contract or subcontract.

"*Hotel worker*" means any individual (1) whose place of employment is at a one or more hotels and (2) who is employed directly by the hotel employer or by a person who has contracted with the hotel employer to provide services at the hotel.

"*Person*" means an individual, corporation, partnership, limited partnership, limited liability partnership, limited liability company, business trust, estate, trust, association, joint venture, agency, instrumentality, or any other legal or commercial entity, whether domestic or foreign.

"*Service charge*" means all separately-designated amounts, regardless of name or label, that are added to the base charge for food or beverages, banquets, porterage, valet, parking or other services and collected by a hotel employer from customers, except taxes and fees levied by federal, state or local government.

(j)  This section is controlling to the extent it conflicts with other ordinances or policies of the city or any of its agencies, including without limitation Article 11 of Division 10 of the Los Angeles Administrative Code, Article 4 of Chapter X of the Los Angeles Municipal Code and Article 4 of Chapter XVIII of the Los Angeles Municipal Code.

 LA GEECS

---

## Meet today?

---

**James Elmendorf** <jelmendorf@laane.org>                                   Mon, Jun 9, 2014 at 8:12 AM
To: Valerie Flores <valerie.flores@lacity.org>

We should check in today. When is good for you?

James

Sent from my iPhone

 **LA GEECS**

## Checking in

**James Elmendorf** <jelmendorf@laane.org>                                              Wed, Jun 11, 2014 at 12:37 PM
To: Valerie Flores <valerie.flores@lacity.org>

I know you guys are crunching as much as possible. Wondering when you think you'll have a draft?

James

Sent from my iPhone



LA
GEECS

---

## Re: Checking in

---

**Basia Jankowski** <basia.jankowski@lacity.org>                        Wed, Jun 11, 2014 at 3:59 PM
To: James Elmendorf <jelmendorf@laane.org>
Cc: Valerie Flores <valerie.flores@lacity.org>

Good Afternoon James:

Can you review the Purpose Section I drafted concerning the Citywide Hotel Minimum Wage Ordinance (CF 14-0223) for factual accuracy?  I've taken most of these facts from the Council Motion and want to make sure we court defend them in court if need be.  I'm particularly interested in you verifying the $70 million dollars in economic activity finding. If that is not accurate, please give me a number or language I can use.

Please let me know ASAP.

Thanks. Basia

## SEC. 186.00.  PURPOSE.

By maintaining free public tourist attractions and helping to build the public transportation system that will carry visitors around the City of Los Angeles, to and from hotels, the City has made significant financial investments to create a climate that has allowed the hospitality industry to thrive in Los Angeles.  The City's investments have proven helpful for the hospitality industry, which has enjoyed three consecutive years of growth, and which boasts an occupancy rate of 75.4% (far better than the national average of 62%) and a "revenue per room available" rate of one-hundred ($100.00) dollars – a twelve-year high for Los Angeles.  Since hotels receive definite benefits from City assets and investments, it is fair and reasonable that these hotels pay their employees a fair wage, especially when doing so would greatly benefit the people and economy in Los Angeles.

According to the Economic Development Department, 43% of the people who work in hotels in Los Angeles earn wages that still put them far below the federal poverty line.  Wages paid to hotel employees are economically restrictive and prevent many hospitality employees from having purchasing power at local businesses, which has a devastating toll on Los Angeles' local economy.  According to research done by the Economic Policy Institute, increasing wages for hotel workers could generate more than seventy million ($70,000,000) dollars in economic activity for Los Angeles.  These employees, who live paycheck to paycheck, are frequently forced to work two or three jobs to provide food and shelter for their families.  In many instances, they cannot take time to spend with their children or care for themselves or family when sick.  They also rely on the City as a provider of social support services and, therefore, the City has an interest in promoting an employment environment that protects government resources and engages in responsible employment practices.  In requiring the payment of a higher minimum wage, this Article benefits that interest.

In 2007, the Los Angeles City Council passed a living wage ordinance for workers employed in hotels near Los Angeles International Airport (LAX), and in 2009 passed an ordinance that raised the wages for airport employees.  The living wage for airport employees has resulted in higher pay

and real benefits for low-income families, and the hotels around LAX have continued to thrive. In recent years, LAX passenger traffic has steadily increased (a 4.7% increase in 2013, following a 3% increase in 2012) as the City has invested in infrastructure that draws tourists to Los Angeles. Tourism is one of the largest industries in the City, hosting millions of people per year. Hotel workers frequently are the face of the industry, providing services directly to tourists.

While the City is mindful of some potential negative effects, income equality is one of the most pressing economic, social and civil rights issues facing Los Angeles. By proceeding incrementally and applying a minimum wage to hotel workers at larger hotels, including a hardship waiver for certain affected hotels, and by including the AHEZ hotels which are already paying a higher than state mandated minimum wage, the City seeks to promote the health, safety and welfare of thousands of hotel workers by ensuring they receive decent compensation for the work they perform.


On Wed, Jun 11, 2014 at 3:04 PM, James Elmendorf <jelmendorf@laane.org> wrote:
Ok. Don't want to bug but when does it need to be transmitted? Are we on track?

James

Sent from my iPhone

On Jun 11, 2014, at 2:16 PM, Valerie Flores <valerie.flores@lacity.org> wrote:

Basia and I are working on it. Let's touch base tomorrow re status.


Valerie Flores
Managing Assistant City Attorney
General Counsel Division
Los Angeles City Attorney's Office
200 North Main Street, 7th Floor, MS 140
Los Angeles, California 90012
(213) 978-8149 - Telephone
(213) 978-8222 - Facsimile
Valerie.Flores@lacity.org


On Wed, Jun 11, 2014 at 12:37 PM, James Elmendorf <jelmendorf@laane.org> wrote:
I know you guys are crunching as much as possible. Wondering when you
think you'll have a draft?

James

Sent from my iPhone

****************Confidentiality Notice *************************
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or protected by the attorney-client
privilege and/or the work product doctrine. If you are not the intended recipient, be aware that any disclosure,
copying,
distribution or use of the content of this information is prohibited.  If you have received this communication in
error, please notify us immediately by e-mail and delete the original message and any attachments without reading or
saving in any manner.
********************************************************************

—
Basia Jankowski
Deputy City Attorney
Office of the City Attorney
200 N. Main Street, 7th Floor
Phone (213)978-8136
Fax (213) 978- 8222
Basia.Jankowski@lacity.org

****************Confidentiality Notice *************************
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or protected by the attorney-client privilege
and/or the work product doctrine. If you are not the intended recipient, be aware that any disclosure, copying,
distribution or use of the content of this information is prohibited.  If you have received this communication in error,
please notify us immediately by e-mail and delete the original message and any attachments without reading or saving in
any manner.
********************************************************************



# Fwd: Checking in

**James Elmendorf** <jelmendorf@laane.org>                                    Thu, Jun 12, 2014 at 3:21 PM
To: Basia Jankowski <basia.jankowski@lacity.org>
Cc: Valerie Flores <valerie.flores@lacity.org>

Rich got to it earlier.

James

---------- Forwarded message ----------
From: **Rich McCracken** <rmccracken@dcbsf.com>
Date: Thu, Jun 12, 2014 at 3:17 PM
Subject: RE: Checking in
To: James Elmendorf <jelmendorf@laane.org>


See the discussion at pp. 382-385. And see:


      Courts have been supportive of legislative line-drawing in social and economic legislation, so long as the line does not discriminate against a protected category such as race, sex, etc. Even before the Supreme Court in 1937 reversed its prior hostility to social and economic legislation and adopted the rational basis test, the Court had still upheld laws which drew distinctions based on size, industry or geography. For example, it upheld chain store tax statutes where the owner of a single store was taxed $3 while the owner of over 20 stores was taxed $25 per store. State Bd. of Tax Comm'rs v. Jackson, 283 U.S. 527 (1931); Great A & P Tea Co. v. Grosjean, 301 U.S. 412 (1937). It upheld a local regulation which applied to restaurants and dining places in hotels but not dining houses operated by railroads in Dominion Hotel v. State of Arizona, 249 U.S. 265 (1919)("The equal protection of the laws does not mean that all occupations that are called by the same name must be treated the same way. The power of the state may be determined by degrees of evil, or exercised in cases where detriment is specially experienced."). It upheld a law keyed to size of business in Engel v. O'Malley, 219 U.S. 128, 138 (1911).


      Many times since the Court has emphasized that "reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." Williamson v. Lee Optical, 348 U.S. 483, 489, 75 S. Ct. 461 (1955). Indeed, the Court upheld a regulation which required all firms issuing money orders except American Express to be licensed. "Distinctions in the treatment of business entities engaged in the same business activity may be justified by genuinely different characteristics of the business involved. This is so even where the discrimination is by name." Morey v. Doud, 354 U.S. 457 (1957). "It is no requirement of equal protection that all evils of the same genus be eradicated or none at all." Railway Express Agency v. New York, 336 U.S. 106, 69 S. Ct. 463 (1949)(rejecting equal protection attack on local regulation which banned advertising on trucks due to their distracting nature but did not regulate other sources of distraction such as "the vivid displays on Times Square").     In Viceroy Gold v. Aubry, 75 F.3d 482, 490-91(9th Cir. 1996), the court rejected an equal protection attack on state law treating mining employees different from other industries, and treating union and non-union employees differently.


      The California Supreme Court follows the U.S. Supreme Court in holding that an evidentiary record is not required before a rational basis will be found for distinctions drawn by economic legislation. For example, the

California Supreme Court recently rejected an equal protection challenge to state continuing education requirements for lawyers which exempted large categories of lawyers, despite evidence this resulted simply from political expediency:

> [T]he governing authorities establish that under the rational relationship standard, a court may not strike down a classification simply because the classification may be imperfect [cite] or because it may be 'to some extent both underinclusive and overinclusive." [cite]. * * * In relying, as the basis for its constitutional ruling, upon the absence of evidence in either the legislative history or the court record to indicate that the proferred justifications for the exemptions were the actual motivation for the adoption of the exemptions, and upon its view that other, less lofty considerations constituted the actual motivation for the enactment of the exemptions, the Court of Appeal failed to adhere to several fundamental tenets of the rational relationship standard of review. As the United States Supreme Court has explained: "The absence of 'legislative facts' explaining the distinction 'on the record' has no significance in rational-basis analysis. In other words, a legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data. [cites] Thus, in instances where the rational relationship standard is applicable, a classification that, in fact, is rationally related to a reasonably conceivable legitimate public purpose may not be set aside as denying the equal protection of the laws on the ground that the Legislature or other policy maker that fashioned the classification may have acted out of what is perceived as self-interest or may have had some other asserted "political motivation" for supporting the measure. [cites]

> Warden v. State Bar, 21 Cal.4th 628, 649-50 (1999).

In sum, the courts will almost certainly find no constitutional problem with a living wage ordinance that has a rational classification based on any one, or a combination, of line of business, size, or geography.

**From:** James Elmendorf [mailto:jelmendorf@laane.org]
**Sent:** Thursday, June 12, 2014 1:07 PM
**To:** Rich McCracken
**Subject:** Fwd: Checking in

Can you do the rational basis thing they request by 3:30?

---------- Forwarded message ----------
From: **Basia Jankowski** <basia.jankowski@lacity.org>
Date: Thu, Jun 12, 2014 at 1:03 PM
Subject: Re: Checking in
To: James Elmendorf <jelmendorf@laane.org>

James- can you give me the document which contains these numbers? Also, I cannot determine where this 70,000,000 economic activity is written, so I'm going to take it out.

Also, can you please send us any case law which would defend against an Equal Protection challenge re:

1. Rational basis for treating a single industry differently from other industries; and

2. Rational basis for treating large scale operators in an industry different from small scale operators.


We need this information before 3:30.


Thanks so much. Basia


On Thu, Jun 12, 2014 at 8:28 AM, James Elmendorf <jelmendorf@laane.org> wrote:

I was able to review this more thoroughly at my computer, and to get Rich's input. Both of us would suggest cutting a few things, in addition to the facts I provided last night. We feel this will strengthen the city's legal position. I have attached a suggested redline. Please let me know if you have questions. I can be reached at 213-841-0881.


On Wed, Jun 11, 2014 at 3:59 PM, Basia Jankowski <basia.jankowski@lacity.org> wrote:

Good Afternoon James:


Can you review the Purpose Section I drafted concerning the Citywide Hotel Minimum Wage Ordinance (CF 14-0223) for factual accuracy?  I've taken most of these facts from the Council Motion and want to make sure we court defend them in court if need be.  I'm particularly interested in you verifying the $70 million dollars in economic activity finding. If that is not accurate, please give me a number or language I can use.


Please let me know ASAP.


Thanks. Basia


SEC. 186.00.  PURPOSE.

By maintaining free public tourist attractions and helping to build the public transportation system that will carry visitors around the City of Los Angeles, to and from hotels, the City has made significant financial investments to create a climate that has allowed the hospitality industry to thrive in Los Angeles. The City's investments have proven helpful for the hospitality industry, which has enjoyed three consecutive years of growth, and which boasts an occupancy rate of 75.4% (far better than the national average of 62%) and a "revenue per room available" rate of one-hundred ($100.00) dollars – a twelve-year high for Los Angeles.  Since hotels receive definite benefits from City assets and investments, it is fair and reasonable that these hotels pay their employees a fair wage, especially when doing so would greatly benefit the people and economy in Los Angeles.

According to the Economic Development Department, 43% of the people who work in hotels in Los Angeles earn wages that still put them far below the federal poverty line.  Wages paid to hotel employees are economically restrictive and prevent many hospitality employees from having purchasing power at local businesses, which has a devastating toll on Los Angeles' local economy.  According to research done by the Economic Policy Institute, increasing wages for hotel workers could generate more than seventy million

($70,000,000) dollars in economic activity for Los Angeles. These employees, who live paycheck to paycheck, are frequently forced to work two or three jobs to provide food and shelter for their families. In many instances, they cannot take time to spend with their children or care for themselves or family when sick. They also rely on the City as a provider of social support services and, therefore, the City has an interest in promoting an employment environment that protects government resources and engages in responsible employment practices. In requiring the payment of a higher minimum wage, this Article benefits that interest.

In 2007, the Los Angeles City Council passed a living wage ordinance for workers employed in hotels near Los Angeles International Airport (LAX), and in 2009 passed an ordinance that raised the wages for airport employees. The living wage for airport employees has resulted in higher pay and real benefits for low-income families, and the hotels around LAX have continued to thrive. In recent years, LAX passenger traffic has steadily increased (a 4.7% increase in 2013, following a 3% increase in 2012) as the City has invested in infrastructure that draws tourists to Los Angeles. Tourism is one of the largest industries in the City, hosting millions of people per year. Hotel workers frequently are the face of the industry, providing services directly to tourists.

While the City is mindful of some potential negative effects, income equality is one of the most pressing economic, social and civil rights issues facing Los Angeles. By proceeding incrementally and applying a minimum wage to hotel workers at larger hotels, including a hardship waiver for certain affected hotels, and by including the AHEZ hotels which are already paying a higher than state mandated minimum wage, the City seeks to promote the health, safety and welfare of thousands of hotel workers by ensuring they receive decent compensation for the work they perform.

On Wed, Jun 11, 2014 at 3:04 PM, James Elmendorf <jelmendorf@laane.org> wrote:

Ok. Don't want to bug but when does it need to be transmitted? Are we on track?


James

Sent from my iPhone

On Jun 11, 2014, at 2:16 PM, Valerie Flores <valerie.flores@lacity.org> wrote:

Basia and I are working on it. Let's touch base tomorrow re status.



Valerie Flores

Managing Assistant City Attorney

General Counsel Division

Los Angeles City Attorney's Office

200 North Main Street, 7th Floor, MS 140

Los Angeles, California 90012

(213) 978-8149 - Telephone

(213) 978-8222 - Facsimile

Valerie.Flores@lacity.org

On Wed, Jun 11, 2014 at 12:37 PM, James Elmendorf <jelmendorf@laane.org> wrote:

I know you guys are crunching as much as possible. Wondering when you
think you'll have a draft?

James

Sent from my iPhone


****************Confidentiality Notice *************************

This electronic message transmission contains information

from the Office of the Los Angeles City Attorney, which may be confidential or
protected by the attorney-client privilege and/or the work product doctrine. If you
are not the intended recipient, be aware that any disclosure, copying,

distribution or use of the content of this information is prohibited.  If you have
received this communication in error, please notify us immediately by e-mail and
delete the original message and any attachments without reading or saving in any
manner.

**************************************************************


--

Basia Jankowski
Deputy City Attorney
Office of the City Attorney
200 N. Main Street, 7th Floor

Phone (213)978-8136

Fax (213) 978- 8222
Basia.Jankowski@lacity.org


****************Confidentiality Notice *************************

This electronic message transmission contains information

from the Office of the Los Angeles City Attorney, which may be confidential or protected by the
attorney-client privilege and/or the work product doctrine. If you are not the intended recipient,
be aware that any disclosure, copying,

distribution or use of the content of this information is prohibited.  If you have received this
communication in error, please notify us immediately by e-mail and delete the original message and
any attachments without reading or saving in any manner.

**************************************************************

--

Basia Jankowski
Deputy City Attorney
Office of the City Attorney
200 N. Main Street, 7th Floor

Phone (213)978-8136

Fax (213) 978- 8222
Basia.Jankowski@lacity.org


****************Confidentiality Notice *************************

This electronic message transmission contains information

from the Office of the Los Angeles City Attorney, which may be confidential or protected by the
attorney-client privilege and/or the work product doctrine. If you are not the intended recipient,
be aware that any disclosure, copying,

distribution or use of the content of this information is prohibited.  If you have received this
communication in error, please notify us immediately by e-mail and delete the original message and
any attachments without reading or saving in any manner.

*****************************************************************


188 Cal.App. 4th 364.docx
49K

## SEC. 186.00. PURPOSE.

~~By maintaining free public tourist attractions and helping to build the public transportation system that will carry visitors around the City of Los Angeles, to and from hotels,~~ the City has made significant financial investments to create a climate that has allowed the hospitality industry to thrive in Los Angeles. The ~~City's~~ investments ~~have proven helpful for the~~ hospitality industry, ~~which~~ has enjoyed three consecutive years of growth, and which boasts an occupancy rate of 78~~5~~.4% (far better than the national average of 62%) and a "revenue per room available" rate of one-hundred-~~eleven~~ ($11~~100~~.00) dollars – a fourteen~~twelve~~-year high for Los Angeles. ~~Since hotels receive definite benefits from City assets and investments, it is fair and reasonable that these hotels pay their employees a fair wage, especially when doing so would greatly benefit the people and economy in Los Angeles.~~

According to the Economic Development Department, 43% of the people who work in hotels in Los Angeles earn wages that still put them far below the federal poverty line. Wages paid to hotel employees are economically restrictive and prevent many hospitality employees from having purchasing power at local businesses, which has a devastating toll on Los Angeles' local economy. According to research based on modeling by the Economic Roundtable~~done by the Economic Policy Institute~~, increasing wages for hotel workers could generate more than seventy million ($70,000,000) dollars in economic activity for Los Angeles. These employees, who live paycheck to paycheck, are frequently forced to work two or three jobs to provide food and shelter for their families. In many instances, they cannot take time to spend with their children or care for themselves or family when sick. They also rely on the ~~City~~public sector as a provider of social support services and, therefore, the City has an interest in promoting an employment environment that protects government resources and engages in responsible employment practices. In requiring the payment of a higher minimum wage, this Article benefits that interest.

In 2007, the Los Angeles City Council passed a living wage ordinance for workers employed in hotels near Los Angeles International Airport (LAX), and in 2009 passed an ordinance that raised the wages for airport employees. The living wage for airport employees has resulted in higher pay and real benefits for low-income families, and the hotels around LAX have continued to thrive. In recent years, LAX passenger traffic has steadily increased (a 4.7% increase in 2013, following a 3% increase in 2012) as the City has invested in infrastructure that draws tourists to Los Angeles. Tourism is one of the largest industries in the City, hosting millions of people per year. Hotel workers frequently are the face of the industry, providing services directly to tourists.

~~While the City is mindful of some potential negative effects, I~~income equality is one of the most pressing economic, social and civil rights issues facing Los Angeles. By proceeding incrementally and applying a minimum wage to hotel workers at larger hotels, by including a hardship waiver for ~~certain affected~~ hotels, and by including the AHEZ hotels which are already paying a higher than state mandated minimum wage, the City seeks to promote the health, safety and welfare of thousands of hotel workers by ensuring they receive decent compensation for the work they perform.

ORDINANCE NO. _____

An ordinance adding Article 6 to Chapter XVIII of the Los Angeles Municipal Code requiring a minimum wage for hotel workers and repealing Article 4 of Chapter X of the Los Angeles Municipal Code.

## THE PEOPLE OF THE CITY OF LOS ANGELES
## DO ORDAIN AS FOLLOWS:

Section 1.  A new Article 6 is added to Chapter XVIII of the Los Angeles Municipal Code to read as follows:

## ARTICLE 6

### CITYWIDE HOTEL WORKER MINIMUM WAGE ORDINANCE

**SEC. 186.00.  PURPOSE.**

The City has made significant financial investments to create a climate that has allowed the hospitality industry to thrive in Los Angeles.  For example, the City assists in providing and maintaining free public tourist attractions and in helping to build and maintain the public transportation system that carries visitors around the City, including to and from hotels.  The City's investments have helped the hospitality industry, which has enjoyed three consecutive years of growth, an occupancy rate of 78% (far better than the national average of 62%) and a "revenue per room available" rate of $111 – a fourteen-year high for Los Angeles.  Because hotels receive benefits from City assets and investments and because the City and its tourist industry benefit from hotels with experienced and content workers with low turnover, it is fair and reasonable that hotels pay their employees a fair wage.  It will benefit the local economy and benefit City visitors, residents and businesses.

According to the Economic Development Department, 43% of the people who work in hotels in Los Angeles earn wages that put them below the federal poverty line.  Wages paid to hotel employees are economically restrictive and prevent many hospitality employees from exercising purchasing power at local businesses, which takes a toll on the local economy.  According to research based on modeling by the Economic Policy Roundtable, increasing wages for hotel workers could generate more than $70 million in economic activity for Los Angeles.  These employees, who live paycheck to paycheck, are frequently forced to work two or three jobs to provide food and shelter for their families.  In many instances, they cannot take time to spend with their children or care for themselves or family when sick.  They also rely on the public sector as a provider of social support services and, therefore, the City has an interest in promoting an employment environment that protects government resources.  In requiring the payment of a higher minimum wage, this Article benefits that interest.

1

In 2007, the Los Angeles City Council passed a living wage ordinance for workers employed in hotels near Los Angeles International Airport (LAX), and in 2009 passed an ordinance that raised the wages for airport employees. The living wage for airport employees has resulted in higher pay and real benefits for low-income families, and the hotels around LAX have thrived. In recent years, LAX passenger traffic has steadily increased (a 4.7% increase in 2013, following a 3% increase in 2012) in part due to City investment in infrastructure that draws tourists to Los Angeles and encourages them to come back and visit the City repeatedly. Tourism is one of the largest industries in the City, hosting millions of people per year. Hotel workers frequently are the face of the industry, providing services directly to tourists.

Income equality is one of the most pressing economic, social and civil rights issues facing Los Angeles. By proceeding incrementally and applying a minimum wage to hotel workers at larger hotels, including a hardship waiver for certain affected hotels, and by including the AHEZ hotels which are already paying a higher than state mandated minimum wage, the City seeks to promote the health, safety and welfare of thousands of hotel workers by ensuring they receive decent compensation for the work they perform.

### SEC. 186.01. DEFINITIONS.

The following definitions shall apply to this Article:

A.    "**AHEZ Hotel**" means any Hotel within the Airport Hospitality Enhancement Zone, which encompasses the boundaries of the Gateway to LA Property Business Improvement District (Gateway to LA PBID), established by Ordinance Number 177,211, containing 50 or more guest rooms, or suites of rooms located within that area. "AHEZ Hotel" also includes any contracted, leased, or sublet premises connected to or operated in conjunction with the building's purpose, or providing services at the building. If the Gateway to LA PBID ceases to exist, the boundaries at the time of dissolution shall remain in effect for purposes of this Article.

B.    "**City**" means the City of Los Angeles.

C.    "**Designated Administrative Agency (DAA)**" means the Department of Public Works, Bureau of Contract Administration, which shall publish any annual wage rate adjustment pursuant to Section 186.02 A.

D.    "**Hotel**" means a residential building that is designated or used for lodging and other related services for the public, and containing 125 or more guest rooms, or suites of rooms. "Hotel" also includes any contracted, leased or sublet premises connected to or operated in conjunction with the building's purpose, or providing services at the building. The number of guest rooms, or suites of rooms, shall be calculated based on the room count on December 31, 2012. "Hotel" also includes all AHEZ Hotels.

2

E.     **"Hotel Employer"** means a Person who owns, controls and/or operates a Hotel in the City, or a Person who owns, controls and/or operates any contracted, leased or sublet premises connected to or operated in conjunction with the Hotel's purpose, or a Person who provides services at the Hotel.

F.     **"Hotel Worker"** means any individual whose primary place of employment is at one or more Hotels and who is employed directly by the Hotel Employer, or by a Person who has contracted with the Hotel Employer to provide services at the Hotel. "Hotel Worker" does not include a managerial, supervisory or confidential employee.

G.     **"Person"** means an individual, corporation, partnership, limited partnership, limited liability partnership, limited liability company, business trust, estate, trust, association, joint venture, agency, instrumentality, or any other legal or commercial entity, whether domestic or foreign.

H.     **"Service Charge"** means all separately-designated amounts collected by a Hotel Employer from a customer for service by Hotel Workers, or are described in such a way that customers might reasonably believe that the amounts are for the service including, but not limited to, those charges designated on receipts under the term "service charge," "delivery charge" or "porterage charge."

I.     **"Willful Violation"** means that the Hotel Employer deliberately failed or refused to comply with the provisions of this Article.

## SEC. 186.02. PAYMENT OF MINIMUM COMPENSATION TO HOTEL WORKERS AND PROVISION OF TIME OFF.

A.     **Wages**. In accordance with Section 186.04 of this Article, Hotel Employers shall pay Hotel Workers a wage of no less than the hourly rates set under the authority of this Article. The minimum wage for each Hotel Worker shall be $15.37 per hour, not including gratuities, Service Charge distributions or bonuses. Starting on July 1, 2017, and continuing thereafter, this rate shall continue to be adjusted as of July 1 of each year consistent with any adjustment pursuant to Section 10.37.2(a) of the Los Angeles Administrative Code. The DAA shall publish a bulletin announcing the adjusted rates, which shall take effect on July 1 of each year.

B.     **Compensated Days Off**. Hotel Employers shall provide Hotel Workers at least twelve (12) accrued compensated days off per year for sick leave, vacation or personal necessity at the Hotel Worker's request. Hotel Employers shall also permit Hotel Workers to take at least an additional ten (10) accrued days a year of uncompensated time to be used for sick leave for the illness of the Hotel Worker or a member of his or her immediate family where the Hotel Worker has exhausted his or her compensated days off for that year.

3

## SEC. 186.03. SERVICE CHARGES.

A. Service Charges shall not be retained by the Hotel Employer but shall be paid in the entirety by the Hotel Employer to the Hotel Worker(s) performing services for the customers from whom the Service Charges are collected. No part of these amounts may be paid to supervisory or managerial employees. The amounts shall be paid to the Hotel Worker(s) equitably and according to the services that are related to the description of the amounts given by the Hotel Employer to the customers. The amounts shall be paid to the Hotel Worker(s) in the next payroll following collection of an amount from the customer. Without limitation of the foregoing:

1. Amounts collected for banquets or catered meetings shall be paid equally to the Hotel Worker(s) who actually work the banquet or catered meeting; and

2. Amounts collected for room service shall be paid to the Hotel Worker(s) who actually deliver food and beverage associated with the charge; and

3. Amounts collected for porterage service shall be paid to the Hotel Worker(s) who actually carry the baggage associated with the charge.

## SEC. 186.04. INCREMENTAL APPLICATION OF MINIMUM WAGE PROVISIONS.

A. **Hotels with 300 or more rooms**. On July 1, 2015, Hotel Employers with Hotels containing 300 or more guest rooms, or suites of rooms shall pay Hotel Workers according to the provisions in Section 186.02.

B. **Hotels with 125 or more rooms**. On July 1, 2016, Hotel Employers with Hotels containing 125 or more guest rooms, or suites of rooms shall pay Hotel Workers according to the provisions in Section 186.02.

C. **AHEZ Hotels**. On July 1, 2015, AHEZ Hotel Employers shall pay Hotel Workers solely according to the provisions in Section 186.02. Prior to July 1, 2015, AHEZ Hotels shall continue to pay their Hotel Workers according to the provisions under former Los Angeles Municipal Code (LAMC) Sections 104.104.A, 104.104.B and 104.105.A the following:

1. **Wages**. Hotel Employers shall pay Hotel Workers a wage of no less than the hourly rates set under the authority of this article (Former Article 4 of Chapter X of the LAMC). The minimum compensation for each Hotel Worker shall be at least $9.39 per hour with health benefits, not including gratuities, Service Charge distributions, or bonuses, or $10.64 per hour without health benefits, not including gratuities, Service Charge distributions, or bonuses. Starting July 1, 2009, and continuing thereafter, these rates shall continue to be adjusted as of July 1 of each year to be the same dollar amounts as the wage

4

rates at such dates adjusted pursuant to Section 10.37.2(a) of the Los Angeles Administrative Code.

2.    **Compensated Days Off**. Hotel Employers shall provide Hotel Workers at least twelve (12) accrued compensated days off per year for sick leave, vacation, or personal necessity at the Hotel Worker's request. Hotel Employers shall also permit Hotel Workers to take at least an additional ten (10) accrued days a year of uncompensated time to be used for sick leave for the illness of the Hotel Worker or a member of his or her immediate family where the Hotel Worker has exhausted his or her compensated days off for that year.

3.    **Rate**. Health benefits under this article shall consist of the payment of at least $1.25 per hour towards the provision of health care benefits for Hotel Workers and their dependents. Proof of the provision of these benefits must be kept on file by the Hotel Employer, if applicable.

## SEC. 186.05. NOTIFYING HOTEL WORKERS OF THEIR POTENTIAL RIGHT TO THE FEDERAL EARNED INCOME CREDIT.

Hotel Employers shall inform Hotel Workers of their possible right to the federal Earned Income Credit (EIC) under Section 32 of the Internal Revenue Code of 1954, 26 U.S.C. Section 32.

## SEC. 186.06. RETALIATORY ACTION PROHIBITED.

No Hotel Employer shall discharge, reduce in compensation or otherwise discriminate against any Hotel Worker for opposing any practice proscribed by this Article, for participating in proceedings related to this Article, for seeking to enforce his or her rights under this Article by any lawful means, or for otherwise asserting rights under this Article.

## SEC. 186.07. ENFORCEMENT.

A.    A Hotel Worker claiming violation of this Article may bring an action in the Superior Court of the State of California against a Hotel Employer and may be awarded:

1.    For failure to pay wages required by this Article – back pay for each day during which the violation continued.

2.    For retaliatory action – reinstatement, back pay and other legal or equitable relief the court may deem appropriate.

3.    For Willful Violations, the amount of monies to be paid under Sections 186.07 A.1 and 2 shall be trebled.

5

B. If a Hotel Worker is the prevailing party in any legal action taken pursuant to this Article, the court shall award reasonable attorney's fees and costs as part of the costs recoverable.

C. Notwithstanding any provision of this Code or any other ordinance to the contrary, no criminal penalties shall attach for violation of this Article.

## SEC. 186.08. EXEMPTION FOR COLLECTIVE BARGAINING AGREEMENT.

All of the provisions of this Article, or any part of the Article, may be waived in a bona fide collective bargaining agreement, but only if the waiver is explicitly set forth in that agreement in clear and unambiguous terms. Unilateral implementation of terms and conditions of employment by either party to a collective bargaining relationship shall not constitute or be permitted as a waiver of all or any part of the provisions of this Article.

## SEC. 186.09. ONE-YEAR WAIVER FOR CERTAIN HOTEL EMPLOYERS.

This Article is not intended to cause reduction in employment or work hours for Hotel Workers. Therefore, a Hotel Employer that demonstrates to the City Controller, by compelling evidence, that compliance with this Article would require the Hotel Employer to reduce its workforce by more than 20% or curtail its Hotel Workers' total work hours by more than 30%, in order to avoid bankruptcy or a shutdown of the Hotel, may receive a waiver, valid for no more than one year, from the requirements in this Article. The Controller shall reach a determination only after reviewing and auditing, if necessary, the Hotel Employer's financial condition, with such review or audit paid for, at rates set by the Controller, by the Hotel Employer. The Controller's determination on a waiver application shall be subject to review and reversal by a two-thirds vote of the City Council within ten (10) business days of the Controller's determination.

## SEC. 186.10. NO WAIVER OF RIGHTS.

Except for bona fide collective bargaining agreements, any waiver by a Hotel Worker of any or all of the provisions of this Article shall be deemed contrary to public policy and shall be void and unenforceable. Any attempt by a Hotel Employer to have a Hotel Worker waive rights given by this Article shall constitute a violation of this Article.

## SEC. 186.11. COEXISTENCE WITH OTHER AVAILABLE RELIEF FOR SPECIFIC DEPRIVATIONS OF PROTECTED RIGHTS.

The provisions of this Article shall not be construed as limiting any Hotel Worker's right to obtain relief to which he or she may be entitled at law or in equity.

## SEC. 186.12. SEVERABILITY.

If any provision of this Article is found invalid by a court of competent jurisdiction, the remaining provisions shall remain in full force and effect.

Sec. 2. Article 4 of Chapter X of the Los Angeles Municipal Code, which established wage rates and benefits for Hotel Workers in the Airport Hospitality Enhancement Zone, is repealed.

Sec. 3.  The City Clerk shall certify to the passage of this ordinance and have it published in accordance with Council policy, either in a daily newspaper circulated in the City of Los Angeles or by posting for ten days in three public places in the City of Los Angeles:  one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall; one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall East; and one copy on the bulletin board located at the Temple Street entrance to the Los Angeles County Hall of Records.

I hereby certify that this ordinance was passed by the Council of the City of Los Angeles, at its meeting of _____.

HOLLY L. WOLCOTT, Interim City Clerk

By _____
                                                            Deputy

Approved _____

_____
                                                            Mayor

Approved as to Form and Legality

MICHAEL N. FEUER, City Attorney

By _____
          BASIA JANKOWSKI
          Deputy City Attorney

Date _____

File No. _____

m:\muni counsel\reports\draft citywide hotel minimum wage ordinance dm versions redlined 6-11-14.docx

8



## Re: draft

**James Elmendorf** <jelmendorf@laane.org>                          Fri, Jun 13, 2014 at 7:50 AM
To: Basia Jankowski <basia.jankowski@lacity.org>

fantastic job on such a short timeline. I've attached a very few suggestions that I hope will be helpful. if you have questions, let me know.

One entirely layman's question—I appreciate the effort to avoid the effort by some hotels to close rooms by defining the room count as of a date certain. Would this pose a problem for either a hotel that is not yet built, or for a hotel that may add rooms? I have no idea, so I'm just flagging the question.

James

On Thu, Jun 12, 2014 at 5:12 PM, Basia Jankowski <basia.jankowski@lacity.org> wrote:
> James-
>
> Here it is:
>
>
> On Thu, Jun 12, 2014 at 4:47 PM, James Elmendorf <jelmendorf@laane.org> wrote:
>> I just spoke to Valerie who said there is a draft (emphasis on draft), She said it was okay to send it to me,
>> and I should email you to that effect. Can you please send it ASAP?
>>
>> Thanks.
>>
>> James
>
>
>
> --
> Basia Jankowski
> Deputy City Attorney
> Office of the City Attorney
> 200 N. Main Street, 7th Floor
> Phone (213)978-8136
> Fax (213) 978- 8222
> Basia.Jankowski@lacity.org
>
>
>
> ****************Confidentiality Notice ************************
> This electronic message transmission contains information
> from the Office of the Los Angeles City Attorney, which may be confidential or protected by the
> attorney-client privilege and/or the work product doctrine. If you are not the intended
> recipient, be aware that any disclosure, copying,
> distribution or use of the content of this information is prohibited. If you have received this
> communication in error, please notify us immediately by e-mail and delete the original message
> and any attachments without reading or saving in any manner.
> ****************************************************************

**Draft Citywide Hotel Minimum Wage Ordinance - comments je.docx**
35K

ORDINANCE NO. _____

An ordinance adding Article 6 to Chapter XVIII of the Los Angeles Municipal Code requiring a minimum wage for hotel workers and repealing Article 4 of Chapter X of the Los Angeles Municipal Code.

### THE PEOPLE OF THE CITY OF LOS ANGELES
### DO ORDAIN AS FOLLOWS:

Section 1. A new Article 6 is added to Chapter XVIII of the Los Angeles Municipal Code to read as follows:

### ARTICLE 6

### CITYWIDE HOTEL WORKER MINIMUM WAGE ORDINANCE

SEC. 186.00. PURPOSE.

The City has made significant financial investments to create a climate that has allowed the hospitality industry to thrive in Los Angeles. For example, the City assists in providing and maintaining free public tourist attractions and in helping to build and maintain the public transportation system that carries visitors around the City, including to and from hotels. The City's investments have helped the hospitality industry, which has enjoyed three consecutive years of growth, an occupancy rate of 78% (far better than the national average of 62%) and a "revenue per room available" rate of $111 – a fourteen-year high for Los Angeles. Because hotels receive benefits from City assets and investments and because the City and its tourist industry benefit from hotels with experienced and content workers with low turnover, it is fair and reasonable that hotels pay their employees a fair wage. It will benefit the local economy and benefit City visitors, residents and businesses.

According to the Economic Development Department, 43% of the people who work in hotels in Los Angeles earn wages that put them below the federal poverty line. Wages paid to hotel employees are economically restrictive and prevent many hospitality employees from exercising purchasing power at local businesses, which takes a toll on the local economy. According to research based on modeling by the Economic Policy Roundtable, increasing wages for hotel workers could generate more than $70 million in economic activity for Los Angeles. These employees, who live paycheck to paycheck, are frequently forced to work two or three jobs to provide food and shelter for their families. In many instances, they cannot take time to spend with their children or care for themselves or family when sick. They also rely on the public sector as a provider of social support services and, therefore, the City has an interest in promoting an employment environment that protects government resources. In requiring the payment of a higher minimum wage, this Article benefits that interest.

1

In 2007, the Los Angeles City Council passed a living wage ordinance for workers employed in hotels near Los Angeles International Airport (LAX), and in 2009 passed an ordinance that raised the wages for airport employees. The living wage for airport employees has resulted in higher pay and real benefits for low-income families, and the hotels around LAX have thrived. In recent years, LAX passenger traffic has steadily increased (a 4.7% increase in 2013, following a 3% increase in 2012) in part due to City investment in infrastructure that draws tourists to Los Angeles and encourages them to come back and visit the City repeatedly. Tourism is one of the largest industries in the City, hosting millions of people per year. Hotel workers frequently are the face of the industry, providing services directly to tourists.

Income equality is one of the most pressing economic, social and civil rights issues facing Los Angeles. By proceeding incrementally and applying a minimum wage to hotel workers at larger hotels, including a hardship waiver for certain affected hotels, and by including the AHEZ hotels which are already paying a higher than state mandated minimum wage, the City seeks to promote the health, safety and welfare of thousands of hotel workers by ensuring they receive decent compensation for the work they perform.

## SEC. 186.01. DEFINITIONS.

The following definitions shall apply to this Article:

A.   "AHEZ Hotel" means any Hotel within the Airport Hospitality Enhancement Zone, which encompasses the boundaries of the Gateway to LA Property Business Improvement District (Gateway to LA PBID), established by Ordinance Number 177,211, containing 50 or more guest rooms, or suites of rooms located within that area. "AHEZ Hotel" also includes any contracted, leased, or sublet premises connected to or operated in conjunction with the building's purpose, or providing services at the building. If the Gateway to LA PBID ceases to exist, the boundaries at the time of dissolution shall remain in effect for purposes of this Article.

B.   "City" means the City of Los Angeles.

C.   "Designated Administrative Agency (DAA)" means the Department of Public Works, Bureau of Contract Administration, which shall publish any annual wage rate adjustment pursuant to Section 186.02 A.

D.   "Hotel" means a residential building that is designated or used for lodging and other related services for the public, and containing 125 or more guest rooms, or suites of rooms. "Hotel" also includes any contracted, leased or sublet premises connected to or operated in conjunction with the building's purpose, or providing services at the building. The number of guest rooms, or suites of rooms, shall be calculated based on the room count on December 31, 2012. "Hotel" also includes all AHEZ Hotels.

Commented [JE1]: Concerned that without definition, suite could allow hotels to count two separate rooms that do have a connecting door as a suite

2

E.     "Hotel Employer" means a Person who owns, controls and/or operates a Hotel in the City, or a Person who owns, controls and/or operates any contracted, leased or sublet premises connected to or operated in conjunction with the Hotel's purpose, or a Person who provides contracted services at the Hotel.

F.     "Hotel Worker" means any individual whose primary place of employment is at one or more Hotels and who is employed directly by the Hotel Employer, or by a Person who has contracted with the Hotel Employer to provide services at the Hotel. "Hotel Worker" does not include a managerial, supervisory or confidential employee.

G.     "Person" means an individual, corporation, partnership, limited partnership, limited liability partnership, limited liability company, business trust, estate, trust, association, joint venture, agency, instrumentality, or any other legal or commercial entity, whether domestic or foreign.

H.     "Service Charge" means all separately-designated amounts, regardless of name or label, collected by a Hotel Employer from a customer for service by Hotel Workers, or are described in such a way that customers might reasonably believe that the amounts are for the service including, but not limited to, those charges designated on receipts under the term "service charge," "delivery charge" or "porterage charge."

I.     "Willful Violation" means that the Hotel Employer deliberately failed or refused to comply with the provisions of this Article.

## SEC. 186.02. PAYMENT OF MINIMUM COMPENSATION TO HOTEL WORKERS AND PROVISION OF TIME OFF.

A.     **Wages.**  In accordance with Section 186.04 of this Article, Hotel Employers shall pay Hotel Workers a wage of no less than the hourly rates set under the authority of this Article. The minimum wage for each Hotel Worker shall be $15.37 per hour, not including gratuities, Service Charge distributions, commissions or bonuses. Starting on July 1, 2017, and continuing thereafter, this rate shall continue to be adjusted as of July 1 of each year consistent with any adjustment pursuant to Section 10.37.2(a) of the Los Angeles Administrative Code. The DAA shall publish a bulletin announcing the adjusted rates, which shall take effect on July 1 of each year.

B.     **Compensated Days Off.**  Hotel Employers shall provide Hotel Workers at least twelve (12) accrued compensated days off per year for sick leave, vacation or personal necessity at the Hotel Worker's request. Hotel Employers shall also permit Hotel Workers to take at least an additional ten (10) accrued days a year of uncompensated time to be used for sick leave for the illness of the Hotel Worker or a member of his or her immediate family where the Hotel Worker has exhausted his or her compensated days off for that year.

Commented [JE2]: How accrued? If include, need formula? If not, recommend deleting accrual

Commented [JE3]: State law pre-empted now?

3

SEC. 186.03. SERVICE CHARGES.

A.    Service Charges shall not be retained by the Hotel Employer but shall be paid in the entirety by the Hotel Employer to the Hotel Worker(s) performing services for the customers from whom the Service Charges are collected. No part of these amounts may be paid to supervisory or managerial employees. The amounts shall be paid to the Hotel Worker(s) equitably and according to the services that are related to the description of the amounts given by the Hotel Employer to the customers. The amounts shall be paid to the Hotel Worker(s) in the next payroll following collection of an amount from the customer. Without limitation of the foregoing:

   1.    Amounts collected for banquets or catered meetings shall be paid equally to the Hotel Worker(s) who actually work the banquet or catered meeting; and

   2.    Amounts collected for room service shall be paid to the Hotel Worker(s) who actually deliver food and beverage associated with the charge; and

   3.    Amounts collected for porterage service shall be paid to the Hotel Worker(s) who actually carry the baggage associated with the charge.

SEC. 186.04. INCREMENTAL APPLICATION OF MINIMUM WAGE PROVISIONS.

A.    **Hotels with 300 or more rooms.** On July 1, 2015, Hotel Employers with Hotels containing 300 or more guest rooms, or suites of rooms shall pay Hotel Workers according to the provisions in Section 186.02.

B.    **Hotels with 125 or more rooms.** On July 1, 2016, Hotel Employers with Hotels containing 125 or more guest rooms, or suites of rooms shall pay Hotel Workers according to the provisions in Section 186.02.

C.    **AHEZ Hotels.** On July 1, 2015, AHEZ Hotel Employers shall pay Hotel Workers solely according to the provisions in Section 186.02. Prior to July 1, 2015, AHEZ Hotels shall continue to pay their Hotel Workers according to the provisions under former Los Angeles Municipal Code (LAMC) Sections 104.104.A, 104.104.B and 104.105.A the following:

   1.    **Wages.** Hotel Employers shall pay Hotel Workers a wage of no less than the hourly rates set under the authority of this article (Former Article 4 of Chapter X of the LAMC). The minimum compensation for each Hotel Worker shall be at least $9.39 per hour with health benefits, not including gratuities, Service Charge distributions, or bonuses, or $10.64 per hour without health benefits, not including gratuities, Service Charge distributions, or bonuses. Starting July 1, 2009, and continuing thereafter, these rates shall continue to be adjusted as of July 1 of each year to be the same dollar amounts as the wage

4

rates at such dates adjusted pursuant to Section 10.37.2(a) of the Los Angeles Administrative Code.

    2.    **Compensated Days Off.**  Hotel Employers shall provide Hotel Workers at least twelve (12) accrued compensated days off per year for sick leave, vacation, or personal necessity at the Hotel Worker's request.  Hotel Employers shall also permit Hotel Workers to take at least an additional ten (10) accrued days a year of uncompensated time to be used for sick leave for the illness of the Hotel Worker or a member of his or her immediate family where the Hotel Worker has exhausted his or her compensated days off for that year.

    3.    **Rate.**  Health benefits under this article shall consist of the payment of at least $1.25 per hour towards the provision of health care benefits for Hotel Workers and their dependents.  Proof of the provision of these benefits must be kept on file by the Hotel Employer, if applicable.

### SEC. 186.05.  NOTIFYING HOTEL WORKERS OF THEIR POTENTIAL RIGHT TO THE FEDERAL EARNED INCOME CREDIT.

Hotel Employers shall inform Hotel Workers of their possible right to the federal Earned Income Credit (EIC) under Section 32 of the Internal Revenue Code of 1954, 26 U.S.C. Section 32.

### SEC. 186.06.  RETALIATORY ACTION PROHIBITED.

No Hotel Employer shall discharge, reduce in compensation or otherwise discriminate against any Hotel Worker for opposing any practice proscribed by this Article, for participating in proceedings related to this Article, for seeking to enforce his or her rights under this Article by any lawful means, or for otherwise asserting rights under this Article.

### SEC. 186.07.  ENFORCEMENT.

    A.    A Hotel Worker claiming violation of this Article may bring an action in the Superior Court of the State of California against a Hotel Employer and may be awarded:

    1.    For failure to pay wages required by this Article – back pay for each day during which the violation continued.

    2.    For retaliatory action – reinstatement, back pay and other legal or equitable relief the court may deem appropriate.

    3.    For Willful Violations, the amount of monies to be paid under Sections 186.07 A.1 and 2 shall be trebled.

5

**Commented [JE4]:** Comments same here as for above

B.    If a Hotel Worker is the prevailing party in any legal action taken pursuant to this Article, the court shall award reasonable attorney's fees and costs as part of the costs recoverable.

C.    Notwithstanding any provision of this Code or any other ordinance to the contrary, no criminal penalties shall attach for violation of this Article.

### SEC. 186.08. EXEMPTION FOR COLLECTIVE BARGAINING AGREEMENT.

All of the provisions of this Article, or any part of the Article, may be waived in a bona fide collective bargaining agreement, but only if the waiver is explicitly set forth in that agreement in clear and unambiguous terms.  Unilateral implementation of terms and conditions of employment by either party to a collective bargaining relationship shall not constitute or be permitted as a waiver of all or any part of the provisions of this Article.

### SEC. 186.09. ONE-YEAR WAIVER FOR CERTAIN HOTEL EMPLOYERS.

This Article is not intended to cause reduction in employment or work hours for Hotel Workers.  Therefore, a Hotel Employer that demonstrates to the City Controller, by compelling evidence, that compliance with this Article would require the Hotel Employer to reduce its workforce by more than 20% or curtail its Hotel Workers' total work hours by more than 30%, in order to avoid bankruptcy or a shutdown of the Hotel, may receive a waiver, valid for no more than one year, from the requirements in this Article.  The Controller shall reach a determination only after reviewing and auditing, if necessary, the Hotel Employer's financial condition, with such review or audit paid for, at rates set by the Controller, by the Hotel Employer.  The Controller's determination on a waiver application shall be subject to review and reversal by a two-thirds vote of the City Council within ten (10) business days of the Controller's determination.

### SEC. 186.10. NO WAIVER OF RIGHTS.

Except for bona fide collective bargaining agreements, any waiver by a Hotel Worker of any or all of the provisions of this Article shall be deemed contrary to public policy and shall be void and unenforceable.  Any attempt by a Hotel Employer to have a Hotel Worker waive rights given by this Article shall constitute a violation of this Article.

### SEC. 186.11. COEXISTENCE WITH OTHER AVAILABLE RELIEF FOR SPECIFIC DEPRIVATIONS OF PROTECTED RIGHTS.

The provisions of this Article shall not be construed as limiting any Hotel Worker's right to obtain relief to which he or she may be entitled at law or in equity.

### SEC. 186.12. SEVERABILITY.

If any provision of this Article is found invalid by a court of competent jurisdiction, the remaining provisions shall remain in full force and effect.

Sec. 2.  Article 4 of Chapter X of the Los Angeles Municipal Code, which established wage rates and benefits for Hotel Workers in the Airport Hospitality Enhancement Zone, is repealed.

Sec. 3. The City Clerk shall certify to the passage of this ordinance and have it published in accordance with Council policy, either in a daily newspaper circulated in the City of Los Angeles or by posting for ten days in three public places in the City of Los Angeles: one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall; one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall East; and one copy on the bulletin board located at the Temple Street entrance to the Los Angeles County Hall of Records.

I hereby certify that this ordinance was passed by the Council of the City of Los Angeles, at its meeting of _____.

HOLLY L. WOLCOTT, Interim City Clerk

By _____
                                                            Deputy

Approved _____

_____
                                                            Mayor

Approved as to Form and Legality

MICHAEL N. FEUER, City Attorney

By _____
        BASIA JANKOWSKI
        Deputy City Attorney

Date _____

File No. _____

m:\muni counsel\reports\draft citywide hotel minimum wage ordinance dm versions redlined 6-11-14.docx

8



# Re: Room count

**Basia Jankowski** <basia.jankowski@lacity.org>                                    Fri, Jun 13, 2014 at 4:40 PM
To: James Elmendorf <jelmendorf@laane.org>

Thank you, James. I appreciate it.

Have a nice weekend. Onward !

Basia

On Jun 13, 2014, at 4:21 PM, James Elmendorf <jelmendorf@laane.org> wrote:

> Basia,
>
> I spoke to valerie but I wanted to thank you for all your hard work on this this past week.
>
> Valerie can explain the hiccup which caused the delay. I expect things to move soon.
>
> I guess the good news is now you all are ahead of the game, though I am sure you'd have preferred not to have crunched so much to get there.
>
> Thanks again.
>
> James
>
> Sent from my iPhone
>
> On Jun 13, 2014, at 9:45 AM, Basia Jankowski <basia.jankowski@lacity.org> wrote:
>
>> James - I haven't spoken to Valerie or Dave yet . . .
>>
>> On Fri, Jun 13, 2014 at 8:30 AM, James Elmendorf <jelmendorf@laane.org> wrote:
>>> I spoke to rich just now about my layman's question. He agreed it
>>> could well be a problem and suggested the room count be something like
>>>
>>> "on the opening of the hotel or dec. 31, 2012, whichever is greater."
>>>
>>> James
>>>
>>>
>>> Sent from my iPhone
>>
>>
>> --
>> Basia Jankowski
>> Deputy City Attorney
>> Office of the City Attorney
>> 200 N. Main Street, 7th Floor

City of Los Angeles Mail - Re: Room count

Phone (213)978-8136
Fax (213) 978- 8222
Basia.Jankowski@lacity.org


*****************Confidentiality Notice ************************
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be
confidential or protected by the attorney-client privilege and/or the work
product doctrine. If you are not the intended recipient, be aware that any
disclosure, copying,
distribution or use of the content of this information is prohibited.  If
you have received this communication in error, please notify us
immediately by e-mail and delete the original message and any attachments
without reading or saving in any manner.
************************************************************