Kristina S. Azlin (SBN 235238)
John A. Canale (SBN 287287)
HOLLAND & KNIGHT LLP
400 South Hope Street, 8th Floor
Los Angeles, California 90071
Telephone 213.896.2400
Facsimile 213.896.2450
E-mail: kristina.azlin@hklaw.com,
john.canale@hklaw.com

Michael Starr (*Pro Hac Vice*)
Katherine H. Marques (*Pro Hac Vice*)
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Telephone: 212.513.3200
Facsimile: 212.385.9100
E-mail: michael.starr@hklaw.com,
Katherine.marques@hklaw.com

Attorneys for Plaintiffs
American Hotel & Lodging Association and
Asian American Hotel Owners Association

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| AMERICAN HOTEL & LODGING ASSOCIATION and ASIAN AMERICAN HOTEL OWNERS ASSOCIATION<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES,<br><br>Defendant. | CASE NO. 2:14-cv-09603-AB-SS<br>Assigned to Hon. Andre Birotte Jr.<br><br>DECLARATION OF ROBERT HANNIGAN<br><br>IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION<br><br>Date: March 23, 2015<br>Time: 10:00 am<br>Dept.: 790, Roybal<br><br>Complaint Filed: December 16, 2014 |

1

DECLARATION OF ROBERT HANNIGAN

# DECLARATION OF ROBERT HANNIGAN

I, Robert Hannigan, hereby declare as follows:

1. I give this declaration in support of the Motion For Preliminary Injunction filed in the above captioned matter by Plaintiffs the American Hotel & Lodging Association and Asian American Hotel Owners Association. I have personal knowledge of the matters stated below except for those stated on information and belief, which I am informed and believe are true. I could testify to each of the facts stated below under penalty of perjury if called upon to do so.

2. I am the Director of Operations of Kimpton Hotels of Los Angeles, which manages The Hotel Palomar Westwood, located at 10740 Wilshire Boulevard, Los Angeles, California, (the "*Palomar*" or the "*Hotel*"). This Hotel is owned by RHCP Hotel Owner LP (the "*Owner*").

3. I have held the position of Director of Operations since January 2014. In this role, I am responsible for the operations and personnel of the Hotel and am familiar with its business practices, business records, pay practices, staffing, and accounting.

4. I have over twenty years of experience in the hospitality industry, including seven years in which I served as either hotel general manager or regional general manager. This experience has afforded me familiarity with hotel industry labor relations practices in union and non-union environments. As specific labor concerns have arisen at the hotels at which I have worked, I have analyzed those issues along with others in Hotel management.

**The Hotel Palomar Westwood**

5. The Palomar is a 264-room luxury hotel, located in the Westwood neighborhood of Los Angeles.

2

6. The Hotel operates a 130 seat restaurant and lounge that serves breakfast and dinner. It also has dedicated space for banquet meetings and events, including a ballroom. These events are served by banquet event staff. Additionally, the Hotel provides room service to its guests during breakfast, dinner and overnight, which is serviced by the room service department.

7. The Hotel is operated by Kimpton Hotel & Restaurant Group. Kimpton has been recognized by Fortune five times as one of the "100 Best Companies to Work For." This recognition, along with many other accolades, demonstrates the value that Kimpton sees in its employees and the company's commitment to their advancement.

**Hotel Workers Act**

8. I have reviewed a new ordinance to be codified at Section 186.00 *et seq.* of the Municipal Code and called the "Citywide Hotel Worker Minimum Wage Ordinance" (the "*Hotel Workers Act*"). I am, accordingly, familiar with its provisions that most directly affect the Palomar.

9. The Hotel Workers Act notably includes a wage-rate provision that becomes effective for the Palomar as of July 1, 2016. That provision requires all Hotel Workers (as defined by the ordinance) at covered hotels to be paid a wage rate of at least $15.37 per hour. That required wage rate must be paid irrespective of gratuities, service charges, or any other payments to employees.

10. Contrary to the established practice in the hospitality industry in Los Angeles – and in other major cities and throughout the United States – this wage rate fails to distinguish between tipped employees (such as, banquet waiters, bartenders, bell persons) and non-tipped employees (such as housekeeping staff, cooks, and kitchen stewards). As I will explain below, this feature of the Hotel Workers Act has dramatic labor-cost consequences for the Palomar.

3

DECLARATION OF ROBERT HANNIGAN

11. The Hotel Workers Act also includes a provision forbidding the Hotel and other covered hotels from keeping any portion of a service charge billed to customers. Instead, the provision requires that the entire service charge be paid to the hotel workers who performed services for the customer who paid the service charge.

12. This feature of the Hotel Workers Act deprives the Hotel of a significant amount of operating revenue and it gives additional cash compensation to individuals at the Hotel who are among its most highly paid Hotel employees. Moreover, the provision does nothing to advance the ordinance's stated purpose of assuring that Hotel Workers are paid a "living" or "fair" wage, since the employees benefited by this provision have hourly equivalent rates of pay, including wages, gratuities and service charges, that already exceed the new requirement of $15.37 an hour.

13. The Hotel Workers Act also includes a provision that allows hotels to obtain a waiver from complying with any (or, in fact, all) of the Act's requirements, but the waiver can only be obtained by means of, what the ordinance calls, "a bona fide collective bargaining agreement." Stated simply, this waiver is available only to unionized hotels who may request the waiver from their employees' union.

**Hotel Employment Practices**

14. The Palomar is a non-union hotel. No union has been certified by federal labor authorities to represent Hotel employees in collective bargaining, nor has any union been recognized by management as the authorized representative of any group of Hotel employees. As far as I know, there has never been a union-representation election at the Hotel, nor has any group of Hotel workers ever presented to management a petition requesting union representation.

15. Full-time employees at the Hotel are eligible for health insurance benefits and participation in a 401(k) plan, in addition to other fringe benefits, such as employee discounts.

4

DECLARATION OF ROBERT HANNIGAN

16. The Hotel currently pays tipped waitstaff between $9.00 and $12.00 per hour. (That amount will be raised on January 1, 2016 to at least $10.00 per hour in compliance with the minimum wage requirements of the State of California.) With tips or service charges, waitstaff and bartenders employed at the Palomar average earnings of about $21.00. This is 35% higher than the $15.37 per hour rate that will be imposed by the Hotel Workers Act.

17. The Hotel matches the market in paying its non-tipped categories of employees. For instance, the Hotel room attendants' average pay and benefits package is higher than $15.37 per hour, without any collective bargaining agreement or city ordinance requiring it.

18. To my knowledge that wage rate paid by the Hotel to its room attendants and the value of this benefit package is comparable to what is paid to employees at comparable hotels in this area of Los Angeles, whether or not they are represented by the hotel workers union.

**Effects of Compliance With The Act**

19. The Hotel finance manager has calculated what the expected cost of compliance with the Hotel Workers Act will be for its first year of implementation at the Hotel.

20. If the Hotel is forced to comply with the terms of the Hotel Workers Act because it is unable to secure a waiver through a collective bargaining agreement, the primary beneficiaries will be employees who are already earning far in excess of the $15.37 hourly wage. Specifically, accounting projections show that if all employees must be paid $15.37 per hour and restaurant and banquet servers retain the entire service charge billed to banquet customers, the effective hourly rate of pay for Hotel banquet servers would rise from $22.00 per hour to $30.00 per hour – a 35% percent increase in income.

21. The biggest component of the anticipated cost of complying with the Act comes from the required wage adjustments for tipped employees, who make up approximately thirty-two percent of hourly Hotel staff, and are among our highest paid employees. Restaurant employees comprise over 40 percent of Hotel staff. This increase is an onerous and unreasonable burden for the Hotel to absorb. To comply with this requirement, the Hotel will have to make significant changes to its food and beverage offerings, the area of operations where the most tipped employees work.

22. We have also made projections of what the $15.37 hourly wage rate, which takes effect on July 1, 2016 for Hotels with more than 150 but fewer than 300 rooms, is expected to cost of the Hotel for the 12-month period beginning on July 1, 2016. This estimated cost is between $450,000 and $500,000, based on accounting projections. That cost includes about $250,000 to $300,000 to bring our food and beverage department alone into compliance with this Act.

**Anticipated Harm to Hotel**

23. The increased labor costs associated with complying with the Hotel Workers Act would cause the Hotel to suffer an economic penalty for asserting the rights secured to the Hotel and its employees under federal labor law. Such harm and injury will be avoided if the preliminary injunction sought by Plaintiffs is granted.

24. If the $15.37 minimum wage takes effect, the Hotel may be able to take steps to mitigate the harms of the Act's penalty by controlling costs in other ways. Yet the Hotel must adhere to brand standards to provide the customer service and experience expected across the Kimpton brand. Any significant change that has a resulting negative impact on the Hotel's brand would cause us irreparable harm.

25. If the Hotel cannot reasonably find a way to operate economically under the financial constraints of the Hotel Workers Act, it may have to pass on the increased costs to its customers through higher prices.

DECLARATION OF ROBERT HANNIGAN

26. If the Hotel were to attempt to recoup this expected shortfall by raising room rates, it would have to raise its rates by approximately $8.50 per night. Such an increase would place the Hotel at a competitive disadvantage as compared to other hotels that receive a union-granted waiver. And, it will pay more than many direct competitors located in nearby Beverly Hills, since those hotels are outside of L.A. city limits and, need not comply with the Act.

27. My experience with our corporate accounts leads me to believe that corporate groups that currently do business with the Hotel would likely move their business rather than pay an additional $8.50 per night. Similarly, based on my extensive knowledge of the industry, I know that leisure travelers who typically stay in the Hotel for weekends or vacation are very price-sensitive. Therefore, an $8.50 nightly change in room rates could cost the Hotel a significant amount of business. The increased costs to the Hotel imposed by the Act has the effect of penalizing the Hotel for not consenting to union representation for its employees.

28. In the same vein, if the Hotel adjust prices for its restaurants, the Hotel will be placed at a competitive disadvantage with respect to area restaurants that are not subject to the Act and the hotels who obtain a waiver from complying with the Hotel Workers Act through a collective bargaining agreement. As a result, the option to raise prices could render the Hotel less competitive in its direct market and cause its business to suffer.

29. As a consequence of these circumstances, the Hotel could face economic pressure to strike a deal with the Union to obtain a waiver that will allow it to remain competitive in its market

//
//

7

DECLARATION OF ROBERT HANNIGAN

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 23, 2015, in Los Angeles, California.

*Robert Hannigan*

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 400 S. Hope St., 8th Floor, Los Angeles, California 90071.

On January 26, 2015, I served the document described as **DECLARATION OF ROBERT HANNIGAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** on the interested parties in this action as follows:

**[X]** (**BY Electronic Transfer to the CM/ECF System**) In accordance with Federal Rules of Civil Procedure 5(d) (3), Local Rule 5-4, and the U.S. District Court of the Central District's General Order governing electronic filing, I uploaded via electronic transfer a true and correct copy scanned into an electronic file in Adobe "pdf" format of the above-listed documents to the United States District Court Central District of California' Case Management and Electronic Case Filing (CM/ECF) system on this date. It is my understanding that by transmitting these documents to the CM/ECF system, they will be served on all parties of record according to the preferences chosen by those parties within the CM/ECF system. The transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on January 26, 2015, Los Angeles, California.

By: _____//S//_____
Kristina S. Azlin