Kristina S. Azlin (SBN 235238)
John A. Canale (SBN 287287)
HOLLAND & KNIGHT LLP
400 South Hope Street, 8th Floor
Los Angeles, California  90071
Telephone 213.896.2400
Facsimile  213.896.2450
E-mail:  kristina.azlin@hklaw.com,
john.canale@hklaw.com

Michael Starr (*Pro Hac Vice*)
Katherine H. Marques (*Pro Hac Vice*)
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Telephone: 212.513.3200
Facsimile: 212.385.9100
E-mail: michael.starr@hklaw.com
katherine.marques@hklaw.com

Attorneys for Plaintiffs
American Hotel & Lodging Association and
Asian American Hotel Owners Association

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| AMERICAN HOTEL & LODGING ASSOCIATION, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES,<br><br>Defendant. | CASE NO. 2:14-cv-09603-AB-SS<br>Assigned to Hon. Andre Birotte Jr.<br><br>DECLARATION OF DAVID HSU IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION<br><br>Date:   March 23, 2015<br>Time:  10:00 a.m.<br>Dept.:   790, Roybal<br><br>Complaint Filed: December 16, 2014 |

1

DECLARATION OF DAVID HSU

**DECLARATION OF DAVID HSU**

I, DAVID HSU , the undersigned, hereby declare and state as follows:

1. I give this declaration in support of the Motion for Preliminary Injunction filed in the above-captioned matter by Plaintiffs American Hotel & Lodging Association ("*AH&LA*") and Asian American Hotel Owners Association ("*AAHOA*"). I have personal knowledge of the matters stated below except for those stated on information and belief, which I am informed and believe are true. I could testify to each of the facts stated below under penalty of perjury if called upon to do so.

2. I am the President of Universal Fortuna Investment, Inc., the general partner of Fortuna Enterprises, L.P.("*Fortuna*" or the "*Owner*"), owner of The Los Angeles Airport Hilton Hotel and Towers, located at 5711 West Century Boulevard, Los Angeles, California, (the "*Hilton LAX*" or the "*Hotel*"). I submit this declaration in support of the motion of the plaintiffs in the above-referenced action for preliminary injunction. I am fully familiar with the facts asserted herein.

3. The Owner has a management agreement with Hilton Management, LLC ("*Hilton*"). Hourly workers at the Hotel are employed by the Owner. I have held the position of President of Universal Fortuna Investment, Inc. since 1992. In this role, I am responsible for working with Hilton pursuant to its management agreement with the Owner regarding the operation the Hotel and am familiar with its business practices, business records, pay practices, staffing, and accounting.

4. I have over 40 years of experience in the hospitality industry. I am familiar with labor relations practices in hotel environments. As specific labor concerns have arisen at the Hotel, I have analyzed those issues along with individuals in Hotel management.

5. The Hotel has over 1200 guest rooms and suites and has maintained that level of guest rooms and suites since approximately 1983. It is one of the largest

2

hotels in Los Angeles. The Hotel has four restaurants, which offer a range of services: casual fare that is available 24 hours per day, breakfast and lunch; a sports bar and grill; and an Italian restaurant serving dinner.

6. The Hotel has over 50,000 square feet of meeting space that is utilized for meetings and meal functions. This meeting space is vital to sustain a hotel with this number of rooms, as just being close to LAX is not sufficient to fill all of the rooms that we have without also having a meeting and convention business. We have made a sizeable investment in this meeting space in order to keep the Hotel competitive.

7. The Hotel is located in a part of the City of Los Angeles known as the "LAX Corridor" because it is on a strip of land going from downtown Los Angeles to the Los Angeles International Airport, which is popularly known as "LAX."

8. In the LAX Corridor, there are five other large hotels, including brands such as Westin, Sheraton and Marriott. Three of these large hotels are unionized. The non-union Hilton LAX has always prided itself on its superior service, its flexibility of service when dealing with our valued customers, and the longevity of its team members. We do not have a turnover problem with our hourly employees.

**Union Activity At The Hotel**

9. In 1998, the Teamsters' Union attempted to organize and establish itself as the bargaining representative of the employees at the Hotel. After a full union "campaign" and a vote, in accordance with federal law, of the several hundred hourly Hotel employees, the Hotel employees voted overwhelming to remain non-union. Both before that vote and at all times since, we have enjoyed a strong relationship with our Hotel employees and have worked closely with Hilton to make sure that they are treated fairly and work with management to provide excellent guest services. As of today, there is no labor union that represents any group of employees working at the Hotel. Except for the 1998 vote in which the Hotel employees overwhelming

3

DECLARATION OF DAVID HSU

voted to remain non-union, as far as I know, no petition has ever been filed with the federal government seeking to hold an election to establish a union bargaining representative for Hotel employees.

10. Over the past eight years, the Hotel has been the target of campaigns by UNITE HERE Local 11 ("*Local 11*" or the "*Union*") seeking to compel the Hotel to sign what is commonly called a "card-check/neutrality" agreement. Based on my experience in the hotel business in Los Angeles, I am familiar with what such agreements typically require.

11. As I understand it, by signing one of Local 11's card-check/ neutrality agreements, Hotel management would be required, at the request of the Union, to provide to the Union names and addresses of Hotel employees and to allow the Union access to the Hotel premises to talk to employees about signing authorization cards. In addition, both Hotel management and the Owner would be prohibited from making any statement that would indicate their views on whether unionization is the right choice for the Hotel and its workers.

12. Most important, the card-check/ neutrality agreement would require the Hotel to recognize and to bargain with the Union if the majority of the union-eligible employees signed Union authorization cards. Signing a neutrality agreement also requires the Owner to give up the right that it would otherwise have, under federal labor law, to demand that the Union's selection as bargaining representative be certified by a secret-ballot election supervised by the National Labor Relations Board under procedures that assures employees free choice about whether to have a union bargaining representative, or not.

13. The Owner believes that Hotel employees should not be required to join a union or pay union dues unless the union wins a secret ballot election run by the federal government's labor authority. Our employees have already once overwhelming voted to remain non-union and through our communication with

4

DECLARATION OF DAVID HSU

employee representatives and staff.  I believe that the employees' position has not changed. Accordingly, the Owner has never signed a card-check/ neutrality agreement nor has it authorized Hilton to enter into one, and it has no intention of ever doing so voluntarily.  The Owner is unwilling to give up its rights or the rights of its employees to freely select a bargaining representative – or to refuse to select a bargaining representative – by secret ballot election.

**Hotel Workers Act**

14. About two months ago, the City of Los Angeles passed an ordinance called the "Citywide Hotel Worker Minimum Wage Ordinance" (the "*Hotel Workers Act*" or the "*Act*"). I understand that the Hotel Workers Act includes a wage provision requiring virtually all hotel employees at covered hotels to be paid a wage of $15.37 per hour. Contrary to the established hospitality industry practice, this wage rate fails to distinguish between tipped employees (like bartenders, restaurant servers, and bell persons) and non-tipped employees (like housekeeping staff and cooks).

15. The Hotel Workers Act allows hotels to obtain a waiver from complying with any and all of its provisions but only where such waivers have been obtained through a collective bargaining agreement, that is, an agreement negotiated with a union who has been established as the bargaining representative of the hotel's employees.

16. Because the Hotel has not recognized Local 11 or signed a card-check/neutrality agreement, it does not have a collective bargaining agreement with that, or any union.  It is not party to a collective bargaining agreement with Local 11, or any union. It, therefore, has no option of obtaining an exemption from the economically unreasonably requirements of the new City ordinance.

17. This puts the Hotel at an extreme economic disadvantage to unionized hotels in the LAX Corridor because they can, and, in my judgment, likely will, obtain a full exemption from Local 11.  Consequently, Local 11 will, in my opinion,

probably grant exemptions to unionized hotels. While I believe it may ask for concessions in exchange for the exemption, it is likely to agree to it. It is my belief that this highlights the true purpose of the Act: It has very little to do with increasing wages in a manner that is fair to the employees and the hotel owners, and everything to do with some City Council members trying to repay the support of Local 11 officials by forcing all hotel owners to either sign card-check neutrality agreements or face financial ruin. I feel that, if Act goes into effect, the Owner has no choice but to accede to this extortion or radically reduce its business operations if it wishes to stay in business, regardless of the fact that its employees, I believe, do not want to join a union.

**Effect of Prior Legislative Compliance**

18. The Hotel has been affected by prior Los Angeles ordinances targeting the hotel industry. One ordinance, adopted in 2007, was applicable only to hotels in the LAX Corridor and set a minimum wage that exceeded the State minimum wage. Under this ordinance, covered hotels must currently pay a cash wage of $11.03 per hour, plus an additional $1.25 per hour towards health benefits.

19. The Hotel made significant changes to staffing and other Hotel practices to comply with that ordinance. For example, the Hotel closed one restaurant completely in the evening hours, reduced hours in the lobby bar, and reduced the hours of service for a breakfast and lunch restaurant.

20. The Hotel also has had to raise the cost to guests for room service and banquet service in order to partially offset the increased wages. It simply could not offer such services in any economical fashion under the cost structure it used prior to 2007. There has been a resulting reduction in client demand for these services, which had led to fewer hours of work for those remaining available employees. The decrease in demand has, in turn, led to additional reductions of available positions.

DECLARATION OF DAVID HSU

21. Based on my review and analysis of the Hotel's occupancy rates, which have recently begun to improve, especially as compared to the lower rates experienced in the period between 2008 and 2011, I estimate that the Hotel would currently be employing an additional 73 full-time employees but for the need to make up the extra costs incurred from compliance with the Airport Zone Ordinance. Over 40 of these positions are in the food and beverage section ("*F & B*").

22. The 2007 ordinance contained a provision allowing for a waiver from compliance with its requirement when such a waiver was granted by a union through a collective bargaining agreement. To my knowledge, four hotels (the Sheraton Four Points, the Sheraton Gateway, the Concourse Hotel (formerly the Radisson) and the Westin Los Angeles Airport) became unionized after the 2007 ordinance went into effect.

23. After the 2007 ordinance, the Hilton LAX continued to insist that it would not recognize a union unless there was a valid election under labor law rules establishing that union as the exclusive bargaining representative for Hotel employees. To remain competitive, the Hotel has been unable to raise prices significantly to compensate for the additional costs and still has had to make operational changes. One way we did this was to limit the hours of operation for the Hotel's main restaurant.

**<u>Collective Bargaining Waiver</u>**

24. The Hilton LAX remains a non-union hotel. As a result, it is not eligible under the new City ordinance for a waiver that is available to hotels that have collective bargaining agreements.

25. If the Hotel continues to resist Local 11's pressure to induce the Hotel to sign a card-check agreement, it will be placed at an economic disadvantage compared to other hotels, based on its labor-relations practices and the law's favoring unionized hotels.

7

DECLARATION OF DAVID HSU

26. Specifically, there are approximately four hotels in the Los Angeles Airport corridor (our competitive market) that are eligible to obtain a waiver under the Hotel Workers Act. The Hilton LAX will be operating at a distinct handicap as compared to such hotels. The only available remedy according to the new law would be for the Hotel to quickly succumb to pressure to sign a card check/ neutrality agreement with the Union. Such harm and injury will be avoided if the preliminary injunction sought by Plaintiffs is granted.

**Anticipated Effect of Hotel Workers Act Compliance**

27. One of the most unreasonable provisions is the new ordinance is that it requires the Hotel to pay tipped employees a cash wage of $15.37 per hour, up from the $11.02 minimum required under the 2007 ordinance rates. This increase is an onerous and unreasonable burden for the Hotel to absorb. To comply with this requirement, the Hotel will have to make additional changes to its F & B offerings, the area of operations where the most tipped employees work. My estimate is that compliance with the recent ordinance would drastically increase the payroll obligations of the Hotel. The biggest component of the anticipated cost of complying with the Act comes from the required wage adjustments for tipped employees, who make up a significant portion of Hotel staff, and are among our highest paid employees.

28. The high costs imposed by the new ordinance is in addition to the extra costs that the Hotel has had to assume to comply with the 2007 ordinance. To cope with another sizable shortfall will require the Hotel to cut costs and staff. As part of its cost-containment strategy, Hotel management is weighing the possibility of implementing a "Grab and Go" dining concept to replace the current full-service restaurant, as this would lower the number of employees working at any given point in the roles of waiters, line cooks, and chefs. The Hotel must make its decisions concerning a change to its F&B offerings by no later than about May 1, 2015 in order

to put that change into effect by July 1, 2015 which is when the new minimum wage rates will have to be paid.

29. The Hotel must determine if this concept, or any alternative presented for consideration, interferes with its maintenance of Hilton brand standards, external ratings, and popularity. Any negative impact could, in turn, have the effect of reducing customer demand and occupancy. If the harm of such changes is anticipated to have a sufficiently damaging effect on hotel business, the Hotel will be unable to contain the costs necessitated by the new ordinance to operate economically while maintaining appropriate customer service.

30. Unionized hotels in the City of Los Angeles, including those in the LAX Corridor, will not face those economic challenges if Local 11 gives them an exemption. Because our Hotel cannot get an exemption, for reasons I explained above, those directly competitive hotels will not have to incur those costs or make those changes their services. And, of course, if our services change, we can lose guests to other LAX Corridor hotels. The Owners in this way are being effectively penalized by the new city-wide hotel ordinance for not having acceded to Local 11's demand in 2007 for a card-check neutrality agreement and for continuing in the present day its unwillingness to waive its rights and those of its employees under federal labor law. That constitutes a further penalty for its lawful labor relations policies, a penalty that disrupts the economic balance between the Hotel and the Union drastically in favor of the Union. Such harm and injury will be avoided if the preliminary injunction sought by Plaintiffs is granted.

Dated: Los Angeles, California
January 21, 2015.

_____
DAVID HSU

9

DECLARATION OF DAVID HSU

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 400 S. Hope St., 8th Floor, Los Angeles, California 90071.

On January 26, 2015, I served the document described as **DECLARATION OF DAVID HSU IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** on the interested parties in this action as follows:

**[X]** (**BY Electronic Transfer to the CM/ECF System**) In accordance with Federal Rules of Civil Procedure 5(d) (3), Local Rule 5-4, and the U.S. District Court of the Central District's General Order governing electronic filing, I uploaded via electronic transfer a true and correct copy scanned into an electronic file in Adobe "pdf" format of the above-listed documents to the United States District Court Central District of California' Case Management and Electronic Case Filing (CM/ECF) system on this date. It is my understanding that by transmitting these documents to the CM/ECF system, they will be served on all parties of record according to the preferences chosen by those parties within the CM/ECF system. The transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on January 26, 2015, Los Angeles, California.

By:         //S//
        Kristina S. Azlin

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450