Kristina S. Azlin (SBN 235238)
John A. Canale (SBN 287287)
HOLLAND & KNIGHT LLP
400 South Hope Street, 8th Floor
Los Angeles, California 90071
Telephone 213.896.2400
Facsimile 213.896.2450
E-mail: kristina.azlin@hklaw.com,
john.canale@hklaw.com

Michael Starr (*Pro Hac Vice*)
Katherine H. Marques (*Pro Hac Vice*)
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Telephone: 212.513.3200
Facsimile: 212.385.9100
E-mail: michael.starr@hklaw.com,
Katherine.marques@hklaw.com

Attorneys for Plaintiffs
American Hotel & Lodging Association and
Asian American Hotel Owners Association

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| AMERICAN HOTEL & LODGING ASSOCIATION and ASIAN AMERICAN HOTEL OWNERS ASSOCIATION<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES,<br><br>Defendant. | CASE NO. 2:14-cv-09603-AB-SS<br>Assigned to Hon. Andre Birotte Jr.<br><br>DECLARATION OF RAYMOND D. MARTZ<br><br>IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION<br><br>Date: March 23, 2015<br>Time: 10:00 am<br>Dept.: 790, Roybal<br><br>Complaint Filed: December 16, 2014 |

1

DECLARATION OF RAYMOND D. MARTZ

# DECLARATION OF RAYMOND D. MARTZ

I, RAYMOND D. MARTZ, hereby declare and state as follows:

1. I give this declaration in support of the Motion For Preliminary Injunction filed in the above captioned matter by Plaintiffs the American Hotel & Lodging Association and Asian American Hotel Owners Association. I have personal knowledge of the matters stated below except for those stated on information and belief, which I am informed and believe are true. I could testify to each of the facts stated below under penalty of perjury if called upon to do so.

2. I am the Chief Financial Officer of Pebblebrook Hotel Trust ("*Pebblebrook*"). I have over twenty years of experience in the hospitality industry. I am responsible for financial matters concerning all hotels in which Pebblebrook has an ownership interest, which requires me to stay abreast of issues affecting hotel owners and operators nationwide.

3. Pebblebrook is a Real Estate Investment Trust ("*REIT*") organized under the laws of Maryland. Through one of its subsidiaries, Pebblebrook owns the W Los Angeles Westwood (the "*W Westwood*" or the "*Hotel*"), a hotel in the City of Los Angeles with more than 150 hotel rooms. For ease of reference, I will sometimes refer to Pebblebrook's subsidiary as the "Owner" of the W Los Angeles.

4. The Owner has entered into a management agreement with W Hotel Management, which is a subsidiary of Starwood Hotels & Resorts Worldwide, Inc. ("*Starwood*"). For ease of reference, I will sometimes refer to Sheraton Operating Corporation or Starwood as the "Operator" of the W Los Angeles hotel.

5. Pursuant to that management agreement, the Owner receives the net income from operations of the W Los Angeles, after payment of fees to the Operator. Labor costs are a major expense item for the Hotel and significantly affect net operating income. Consequently, the ability of the Operator to control labor costs

2

DECLARATION OF RAYMOND D. MARTZ

relates directly to the revenues received by the Owner and, thus, the net return on investment that Pebblebrook earns from its ownership of the Hotel.

6. I understand that Kevin Gleason, Starwood's Director of Labor Relations – West Coast, is submitting a declaration in connection with Plaintiffs' motion that identified some of the labor-relations problems for the W Westwood that are created by the Act. I will limit my declaration to addressing how the Act affects the Hotel's relationship with certain third-parties, which are referred to in the Complaint as "Ancillary Businesses."

**Collective Bargaining Agreement**

7. Starwood, as Operator of the W Los Angeles, employs all of the individuals at the hotel who perform services directly connected with its operations, except for employees of third-parties who operate concessions at the hotel (such as the restaurant or the spa) or who perform outsourced functions (such as for overnight cleaning or valet parking).

8. In 2014, the Operator entered into a collective bargaining agreement ("*CBA*") with UNITE HERE Local 11 ("*Local 11*" or the "*Union*") setting forth the wages, hours and terms and conditions of the employment for substantially all of the hotel workers employed at the W Los Angeles. That CBA did not apply to employees of ancillary businesses that operate on the Hotel's premises.

**Expansive Definition of "Hotel Employer"**

9. Pebblebrook has been informed by the Operator that the City of Los Angeles has recently enacted a new ordinance to be codified at Section 186.00 *et seq.* of the Municipal Code and called the "Citywide Hotel Worker Minimum Wage Ordinance" (the "*Hotel Workers Act*" or the "*Act*"). I have reviewed this ordinance and am familiar with its provisions.

10. The Hotel Workers Act imposes certain obligations on "Hotel Employers" (as defined by the Act), including the obligation to pay employees of

3

DECLARATION OF RAYMOND D. MARTZ

"Hotel Employers" a wage rate of not less than $15.37 an hour. But the Act is not limited to hotels or to people employed by hotel operators. Rather, the definition of "Hotel Employer" includes any business operating in "any contracted, sublet, or leased premises" connected to such hotels, which I shall refer to as an "Ancillary Business".

11. The Act also prohibits the hotel or any Ancillary Business connected to the hotel from retaining any portion of any service charge or from crediting any gratuity or service charge payments towards the $15.37 hourly rate for any employees, including those, like waiters or bartenders, who typically receive a substantial portion of their compensation from such "tips".

12. As I understand the ordinance, if an Ancillary Business operates at a Hotel with 150 rooms or more, the mandated wage of $15.37 must be paid to its employees, irrespective of the size (by revenue or number of employees) of the Ancillary Business. There are a number of Ancillary Businesses operating at hotels in Los Angeles that are owned (directly or indirectly) by Pebblebrook. To my knowledge, some of those Ancillary Businesses employ fewer employees and have lower gross operating revenue than do the smaller hotels in Los Angeles that are excluded from the Act's $15.37 an hour wage requirement because they have fewer than 150 rooms.

13. Pebblebrook is informed by the Operator that a provision of the Hotel Workers Act allows the Operator to obtain a waiver from Local 11 of any and all of its provisions, provided that such waiver is explicitly set forth in a collective-bargaining agreement in clear and unambiguous terms. As we are further informed, the Operator has approached Local 11 to obtain such a waiver, but, to date, the Union has not consented to any such waiver.

DECLARATION OF RAYMOND D. MARTZ

**Restaurant Operated by Third Party Tenant**

14. The restaurant and bar space at the Hotel is operated by a third party tenant, the One Group (the "*One Group*" or "*Restaurant Lessee*"), which is not subject to a CBA with Local 11 or any other union. In early 2014 (before, to my understanding, the Hotel Workers Act was enacted) Pebblebrook and the Restaurant Lessee entered into a multi-year contract under which the Restaurant Lessee pays a fixed base rent for its use of the Hotel's restaurant and bar space, operates all of the food and beverage service on the Hotel premises, and then retains any profits (or suffers any financial loss) yielded by its operations. In addition, the Restaurant Lessee pays a percentage rate payment if restaurant revenues meet certain threshold levels.

15. Because the Restaurant Lessee does not have, as I understand it, a CBA with any Union and, therefore, it is not eligible for a waiver from complying with the new ordinance – unless its workers elect union representation, or it consents to Union representation before the ordinance takes effect. If the Restaurant Lessee cannot obtain a waiver, then the Lessee's ability to operate its business in an economically effective way may be severely impaired. I know this because I know what its rent obligation is to Pebblebrook and, from my experience in the hotel industry, what its labor cost will likely be under the Act as compared to what it would be if this Act did not go into effect.

16. If the Restaurant Lessee projects that it will be unable to operate at a profit for a sustained period of time, it is likely to request a modification of its Lease with Pebblebrook. Pebblebrook would then be faced with the decision to agree to a less financially favorable contract for its restaurant space, *i.e.*, to allow the lessee to effectively pass on to Pebblebrook a portion of its costs of compliance with the new ordinance, or to risk the lessee's breaking its lease rather than suffer projected losses by trying to operate under the Act's restrictions.

5

DECLARATION OF RAYMOND D. MARTZ

17. If its current tenant broke its lease and vacated the premises to avoid the economic strain of the new ordinance, the Hotel would have difficulty filling the vacant restaurant space under economically favorable terms because of the elevated costs of operating a restaurant under the expensive terms of the Act. Any prospective restaurant tenant would likely want assurances that it would be able to secure a waiver. That is, it would need to have an agreement in place that would allow for union representation of its workers and a CBA containing a waiver from the Act.

18. If no outside restaurant operators were willing to accept such an arrangement to provide food and beverage service at the Hotel, then the Hotel would be compelled to provide food and beverage operations itself because we could not viably leave the restaurant dark.

19. The availability of a full-service restaurant at the Hotel is important to attract guests to the Hotel. Furthermore, vacant restaurant space would detract from the Hotel's appearance and popularity. Based on my extensive experience and knowledge of the hotel industry, I believe that it is likely that the Hotel would suffer a decline in occupancy rates and room rental rates if it lost a full-service restaurant, which would cause the Owner to suffer economic harm and injury.

20. Whether the Hotel began to operate the restaurant itself or attempted to outsource it, the Hotel Operator would have to negotiate with the Union concerning the unionization of the restaurant staff to establish new wage rates and work rules that would allow for economically sustainable operations.

21. The current CBA at the W Westwood does not include a job classification for restaurant workers. The Hotel's manager would have to negotiate with Local 11 as to whether the existing CBA should be extended to the restaurant and what these wages, benefits and work-rules of those restaurant workers would be. In those negotiations, the Union would have added bargaining power because, if its bargaining proposals were not accepted, it could refuse to allow a waiver.

DECLARATION OF RAYMOND D. MARTZ

22. The Hotel Operator's need to obtain such terms concerning the restaurant would provide the Union with inordinate bargaining power and allow it to extract other concessions related to the Hotel or restaurant operations that it would not otherwise have the economic leverage to demand from the Hotel.

23. The Hotel (and its independently operated restaurant) also competes directly with nearby areas not subject to the Act, namely Beverly Hills, Santa Monica, and Culver City. I am informed that there are also approximately 100 restaurants in Westwood Center and the surrounding area that compete with the Hotel restaurant, but do not have to comply with the act. As a consequence, the Hotel will face additional economic pressure to cut a deal with the Union to obtain a waiver that will allow it or the independently-operated businesses located on its premises to remain competitive in their markets.

24. This gives the Union economic leverage that it would not have but for the Act and consequently, causes harm to the Owner because it risks economic harm if it does not meet whatever price the Union establishes to provide a waiver under the terms of the Act. Such harm and injury will be avoided if the preliminary injunction sought by Plaintiffs is granted.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 23, 2015, in Bethesda, Maryland.

_____
Raymond D. Martz

#34358869_v3

7

DECLARATION OF RAYMOND D. MARTZ

# **PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 400 S. Hope St., 8th Floor, Los Angeles, California 90071.

On January 26, 2015, I served the document described as **DECLARATION OF RAYMOND D. MARTZ IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** on the interested parties in this action as follows:

[X] (**BY Electronic Transfer to the CM/ECF System**) In accordance with Federal Rules of Civil Procedure 5(d) (3), Local Rule 5-4, and the U.S. District Court of the Central District's General Order governing electronic filing, I uploaded via electronic transfer a true and correct copy scanned into an electronic file in Adobe "pdf" format of the above-listed documents to the United States District Court Central District of California' Case Management and Electronic Case Filing (CM/ECF) system on this date. It is my understanding that by transmitting these documents to the CM/ECF system, they will be served on all parties of record according to the preferences chosen by those parties within the CM/ECF system. The transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on January 26, 2015, Los Angeles, California.

By: _____//S//_____
Kristina S. Azlin

PROOF OF SERVICE