Kristina S. Azlin (SBN 235238)
John A. Canale (SBN 287287)
HOLLAND & KNIGHT LLP
400 South Hope Street, 8th Floor
Los Angeles, California 90071
Telephone 213.896.2400
Facsimile 213.896.2450
E-mail: kristina.azlin@hkwlaw.com,
john.canale@hklaw.com

Michael Starr (*Pro Hac Vice*)
Katherine H. Marques (*Pro Hac Vice*)
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Telephone: 212.513.3200
Facsimile: 212.385.9100
E-mail: michael.starr@hklaw.com,
Katherine.marques@hklaw.com

Attorneys for Plaintiffs
American Hotel & Lodging Association and
Asian American Hotel Owners Association

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

AMERICAN HOTEL & LODGING ASSOCIATION and ASIAN AMERICAN HOTEL OWNERS ASSOCIATION

Plaintiffs,

vs.

CITY OF LOS ANGELES,

Defendant.

CASE NO. 2:14-cv-09603-AB-SS
Assigned to Hon. Andre Birotte Jr.

DECLARATION OF ROBERT ROWLING

IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Date: March 23, 2015
Time: 10:00 am
Dept.: 790, Roybal

Complaint Filed: December 16, 2014

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

**DECLARATION OF ROBERT ROWLING**

I, ROBERT ROWLING, hereby declare and state as follows:

1. I give this declaration in support of the Motion For Preliminary Injunction filed in the above captioned matter by Plaintiffs the American Hotel & Lodging Association and Asian American Hotel Owners Association. I have personal knowledge of the matters stated below except for those stated on information and belief, which I am informed and believe are true. I could testify to each of the facts stated below under penalty of perjury if called upon to do so.

2. The Omni Los Angeles Hotel at California Plaza, located at 251 South Olive Street, Los Angeles, California (the "*Hotel*" or the "*Omni Los Angeles*"), is owned by RMMK-II, LLC (the "*Owner*"). I control RMMK-II, LLC, and I submit this declaration in support of the motion of plaintiffs in the above-referenced action for preliminary injunction. I am fully familiar with the facts asserted herein.

3. I have over twenty years of experience as a luxury hotel owner in the hospitality industry. I am the owner of TRT Holdings, Inc., which owns OHO Corporation.

4. OHO Corporation is the parent company a various entities that own approximately 60 Omni-branded properties in North America. There are approximately 18,000 associates working at those properties. At each of these locations, there is a commitment to the career development of the associates. As a result, many associates at the Hotel and elsewhere enjoy long tenures with the brand and opportunities for promotion and growth as they progress in their careers.

5. The Hotel located in downtown Los Angeles is a seventeen-story luxury, four diamond convention hotel with over 450 guest rooms. It employs approximately 350 associates. About 60 of those associates have been working at the Hotel since it first came under the Omni brand in 2000, nearly 15 years ago.

6. The Hotel is operated by a management company. Net operating income of the Hotel is retained by the Owner, which pays a fee for the services provided by the management company. The Hotel maintains two full-service restaurants, each of which is also owned by the Owner.

**Hotel Workers Act**

7. I have reviewed a new ordinance to be codified at Section 186.00 *et seq.* of the Municipal Code and called the "Citywide Hotel Worker Minimum Wage Ordinance" (the "*Hotel Workers Act*"). I am, accordingly, familiar with its provisions that most directly affect the Omni Los Angeles.

8. The Hotel Workers Act notably includes a wage provision that becomes effective for the Hotel as of July 1, 2015. That provision requires *all* Hotel Workers (as defined by the ordinance) at covered hotels to be paid a wage rate of at least $15.37 per hour. That required wage rate must be paid irrespective of gratuities, service charges, or any other payments that the Hotel makes to its employees.

9. Contrary to the established practice in the hospitality industry in Los Angeles – and in other major cities and throughout the United States – the wage rate mandated by the new ordinance fails to distinguish between tipped employees (such as, banquet servers, bartenders, bell persons) and non-tipped employees (such as housekeeping staff, cooks, and kitchen stewards). As I will explain below, this feature of the Hotel Workers Act has dramatic consequences on net operating income of our Hotel.

10. The Hotel Workers Act also includes a provision forbidding any covered hotel from retaining any portion of a service charge billed to customers. Instead, the provision requires both that the service charge in its entirety be paid to the hotel workers performing the services for the customer who paid the service charge and also that it be paid "equitably" among them. This provision, too, is contrary to accepted practice in the hotel industry in Los Angeles and conflicts with the Internal

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

Revenue Service definition of service charges that was published in their guidance released in January 2014.

11. Under California wage rules, amounts designated as gratuities must be paid entirely to the employees who perform the pertinent services. The Hotel fully complies with this provision of California law. But service charges are recognized to be the property of the hotel. While the largest portion of the service charge is paid to the servers, a portion is also retained by "the house" to cover non-itemized expenses related to, for example, a banquet event.

12. The service-charge requirement of the Hotel Workers Act, for no good reason, deprives the Hotel of a significant amount of operating income and gives it as cash compensation to individuals who are among the most highly paid associates working at the Hotel. Moreover, the provision does nothing to advance the ordinance's stated purpose of assuring that Hotel Workers are paid a "living" or "fair" wage, since the employees benefited by this provision have hourly equivalent rates of pay, including wages, gratuities and service charges, that already exceed the new requirement of $15.37 an hour.

13. The Hotel Workers Act also includes a provision that allows hotels to obtain a waiver from complying with any and all of the Act's provisions but only where such waivers have been obtained by means of "a bona fide collective bargaining agreement." This necessarily means that the waiver can be obtained only in negotiations with a union that has been established by legal procedures as the bargaining representative of the hotel's employees. Stated otherwise, this waiver is available only to unionized hotels.

**<u>Hotel Compensation Practices</u>**

14. The Hotel is a non-union hotel. By this I mean that no union has been certified by federal labor authorities to represent employees at the Hotel, nor has any union been recognized by management as the authorized representative of any group

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

of employees at the Hotel. To the best of my memory, there has never been a union-representation election at the Hotel, nor has any group of workers at the Hotel ever presented to management a petition requesting union representation.

15. The Hotel values its workers and they are paid accordingly, even without any labor agreement requiring it. For instance, new employees working as housekeepers or laundry attendants begin at the hourly rate of $16.45 once they have completed the introductory period of the employment. Forgive me for stating the obvious, but this is already $1.08 an hour greater than the new City ordinance establishes as the "fair wage" for Hotel Workers.

16. The Hotel also offers all employees a full complement of benefits, including all employee meals on the premises, significantly subsidized public transportation costs, and a generous paid time off (PTO) plan. The wage rate paid to housekeepers and laundry attendants together with the value of these and other benefits provided by the Omni, exceeds $23.81 an hour.

17. As a practical matter, the only employees at the Hotel who currently are paid a wage rate of less than $15.37 per hour are the "tipped" employees. This includes those who regularly either receive gratuities directly from guests, such as bellpersons. It also includes employees, like banquet servers and room-service servers, who receive a set percentage of the service charge billed to customers, or those who receive some combination of gratuities and service charges.

18. The tipped waitstaff at the Hotel is currently paid between $9 and $11 per hour. (That amount will be raised on January 1, 2016 to at least $10 per hour in compliance with the minimum wage requirement of the State of California.) With tips or service charges, waitstaff and bartenders employed at the Hotel all earn more than the $15.37 per hour rate that will be imposed by the Hotel Workers Act. Many, in fact, earn far more than $15.37 an hour.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

19. For example, in 2014, the average banquet server earned pay equivalent to $27.49 for each hour worked. In 2013, the average annual salary for a Hotel banquet server was $45,597.88. That represented the combination of the current $9 per hour wage plus the employee's distributed portion of service charges. (It does not take into account the per-hour value of benefits provided by the Hotel to its full-time associates.)

20. The banquet employees at the Hotel are currently paid out 15.5 percent of the service charge, and room-service employees are currently paid out 16 percent of the service charge, and keeping a portion "for the house," as it is termed in the industry. The Hotel also charges and retains a small delivery fee for room service.

**Effects of Compliance With The Act**

21. If the Hotel is forced to comply with the terms of the Hotel Workers Act because it is unable to secure a waiver through a collective bargaining agreement, the primary beneficiaries will be employees who are already earning far in excess of the $15.37 hourly wage. Specifically, accounting projections show that if all employees must be paid $15.37 per hour and banquet servers retain the entire service charge billed to banquet customers, the effective hourly rate of pay for banquet servers at the Hotel would rise from $27.49 per hour to $43.26 per hour – a 57 percent increase in pay.

22. There will be a similar effect for Hotel room-service servers. These employees are currently paid on average a base wage of $9.00 an hour and are also paid 16 percent from the service charge. This is equivalent to a wage rate of $19.60 an hour. In 2013, room-service servers earned an average of $35,503.03 annually. In contrast, if the minimum-wage and service-charge provision of the Hotel Workers Act are put into effect, the employees would receive pay that is equivalent to $34.24 per hour, including the payment of the full service charge and delivery fee, based on the Hotel manager's accounting projections.

23. The housekeepers at the Hotel would experience no change as the result of the Hotel Workers Act. They would continue to earn between $16.45 and $16.80 per hour, with additional health and retirement benefits available.

24. The new ordinance also has a significant and, I must say, perverse effect on the benefits provided. All full-time employees at the Hotel are eligible for enrollment in a 401(k) plan. Under the 401(k) plan, full-time employees are eligible for a partial employer match on employee contributions made up to 5 percent of the employee's income. Consequently, the Hotel Workers Act would have the effect of allowing banquet and room-service servers to increase the cash value of the Hotel's match for 401(k) plan contribution, but would not affect the ability of room attendants to increase the value of the Hotel's matching payment to them.

**Cost of Complying**

25. The Hotel manager has calculated that the expected cost of compliance with the Hotel Workers Act for 2015.

26. If the $15.37 hourly wage requirement takes effect on July 1, the expected cost of compliance will be approximately $554,000 in 2015 alone, based on accounting projections. The wage increase alone would account for $335,000 of that cost. The increased payroll costs resulting from compliance with the Act's requirements will also raise the cost of additional benefits provided at the Hotel, e.g., increasing the value of PTO, 401(k) matching contributions, and payroll taxes. These indirect payroll costs will amount to $219,000.

27. The financial impact in 2016 and beyond will be significantly greater because the $15.37 rate will then apply for the full calendar year. If the projected cost of compliance were extended over a full year, it would likely exceed $1,000,000 a year.

28. The cost of forfeiting the portion of the service charge and delivery fee currently kept for "the house" would cost $265,994 annually.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

**Union Organizing Practices**

29. It is well-known in the hospitality industry that UNITE HERE, the hotel workers union, seeks to organize hotel workers by inducing hotel management to sign card-check neutrality agreements. Under card-check neutrality agreements that I have seen, the hotel management who is party to the agreement is required to provide a list of the names and home addresses of its employees and to allow union organizers to speak to the employees on the hotel premises.

30. I have been advised by counsel that such card-check neutrality agreements can effectively deprive workers of their right to secret ballot elections to determine union representation, a right guaranteed to the workers by federal labor law. I am also advised by counsel that the Owner has a right under federal labor law to express views to employees at the Hotel concerning the costs and consequences of voting for a labor union, and also the right to refuse to allow outside union organizers access to the premises. I understand from others in the hospitality industry that UNITE HERE seeks to organize hotels by asking them to sign so-called "neutrality" agreements and that these agreements require hotels to give up those two rights.

31. The Owner believes that employees at the Hotel should not be required to join a union or pay union dues unless the union wins a secret ballot election run by the federal government's labor authority. Accordingly, the Owner has never signed one of UNITE HERE's so-called "card-check" or "neutrality" agreements and has no intention of ever doing so. The Hotel will not give up its rights or the rights of its workers to freely select a bargaining representative – or to refuse to select a bargaining representative – by a secret ballot election.

**Anticipated Harm to Hotel**

32. The increased labor costs associated with complying with the Hotel Workers Act would cut into the Hotel's profits and, consequently, the net operating income that flows to the Owner. As a consequence, the Owner will suffer an

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

economic penalty for asserting the rights secured to the Owner and its employees under federal labor law. Such harm and injury will be avoided if the preliminary injunction sought by Plaintiffs is granted.

33. The Owner has no labor union from which to seek relief in the form of a waiver because the workers at the Hotel have not selected one, as is *their* exclusive right under federal labor law.

34. If the $15.37 minimum wage takes effect, the Hotel may be able to take steps to mitigate the harms of the Act's penalty by controlling costs in other ways. Yet the Hotel's business decisions require adherence to brand standards to provide the customer service and experience expected across the Omni luxury brand. As a result, the Hotel is not pragmatically free to make significant changes to its operations without causing collateral harm to its business. Any resulting negative impact on the Hotel's brand would be irreparable.

35. If the Hotel cannot reasonably find a way to operate economically under the financial constraints of the Hotel Workers Act, it may have to pass on the increased costs to its customers through higher prices. The Hotel will need to know whether it will have to begin complying with the wage-rate and service-charge provisions of the Hotel Workers Act as of July 2015, by March. The Hotel must begin making concrete arrangements to control the cost increases created by the new ordinance, such as by implementing price changes, as of March 1, 2015.

36. If restaurants operated at the Hotel must adjust prices to comply with the Act, they will be placed at a competitive disadvantage with respect to area restaurants that are not subject to the Act and the hotels who obtain a waiver from complying with the Hotel Workers Act through a collective bargaining agreement. As a result, the option to raise prices could render the Hotel less competitive in its direct market and cause its business to suffer.

37. The Hotel Workers Act's explicit favoring of collective bargaining relationships to the detriment of others has the unavoidable effect of subjecting the Hotel to economic pressure applied as the result of its labor relations decisions, specifically its refusal to enter into a card-check neutrality agreement with UNITE HERE. This economic pressure will continue on the Hotel as long as the Act remains in effect. As a consequence, the Owner will suffer injury as a consequence of the Hotel Workers Act. That harm and injury will be avoided if the preliminary injunction sought by the Plaintiffs is granted.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 22nd, 2015, in Dallas, Texas.

Robert Rowling

#34486771_v1

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400 Fax: 213.896.2450

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 400 S. Hope St., 8th Floor, Los Angeles, California 90071.

On January 26, 2015, I served the document described as **DECLARATION OF ROBERT ROWLING IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** on the interested parties in this action as follows:

**[X]** (**BY Electronic Transfer to the CM/ECF System**) In accordance with Federal Rules of Civil Procedure 5(d) (3), Local Rule 5-4, and the U.S. District Court of the Central District's General Order governing electronic filing, I uploaded via electronic transfer a true and correct copy scanned into an electronic file in Adobe "pdf" format of the above-listed documents to the United States District Court Central District of California' Case Management and Electronic Case Filing (CM/ECF) system on this date. It is my understanding that by transmitting these documents to the CM/ECF system, they will be served on all parties of record according to the preferences chosen by those parties within the CM/ECF system. The transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on January 26, 2015, Los Angeles, California.

By: //S//
Kristina S. Azlin