Kristina S. Azlin (SBN 235238)
John A. Canale (SBN 287287)
HOLLAND & KNIGHT LLP
400 South Hope Street, 8th Floor
Los Angeles, California 90071
Telephone 213.896.2400
Facsimile 213.896.2450
E-mail: kristina.azlin@hklaw.com,
john.canale@hklaw.com

Michael Starr (*Pro Hac Vice*)
Katherine H. Marques (*Pro Hac Vice*)
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Telephone: 212.513.3200
Facsimile: 212.385.9100
E-mail: michael.starr@hklaw.com
katherine.marques@hklaw.com

Attorneys for Plaintiffs
American Hotel & Lodging Association and
Asian American Hotel Owners Association

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| AMERICAN HOTEL & LODGING ASSOCIATION, et al. | CASE NO. 2:14-cv-09603-AB-SS<br>Assigned to Hon. Andre Birotte Jr. |
| Plaintiffs, | |
| vs. | DECLARATION OF PETER ZEN |
| CITY OF LOS ANGELES, | IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |
| Defendant. | |
| | Date: March 23, 2015<br>Time: 10:00 a.m.<br>Dept.: 790, Roybal |
| | Complaint Filed: December 16, 2014 |

1

DECLARATION OF PETER ZEN

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

## DECLARATION OF PETER ZEN

I, PETER ZEN, the undersigned, hereby declare and state as follows:

1. I give this declaration in support of the Motion for Preliminary Injunction filed in the above-captioned matter by Plaintiffs American Hotel & Lodging Association ("*AH&LA*") and Asian American Hotel Owners Association ("*AAHOA*"). I have personal knowledge of the matters stated below except for those stated on information and belief, which I am informed and believe are true. I could testify to each of the facts stated below under penalty of perjury if called upon to do so.

**Los Angeles Hotels**

2. I act as the representative of the owner for two hotels in the City of Los Angeles, which are the Westin Bonaventure Hotel & Suites ("*Westin Bonaventure*") in downtown Los Angeles and the Holiday Inn® hotel located at 19800 S. Vermont Ave. Torrance, California ("*Holiday Inn Torrance*"). By a quirk of geography, the Holiday Inn Torrance has a Torrance, California mailing address, but is located in Los Angeles city limits.

3. The Westin Bonaventure is the largest hotel in Los Angeles, with over 1300 guest rooms and suites, multiple restaurants, over 110,000 square feet of meeting space, and a ballroom for especially large events, spread out over 35 floors. It is operated by Interstate Hotels, LLC, a hotel management company, which employs the vast majority of the hotel's employees. The hotel has a collective bargaining agreement with UNITE HERE Local 11 (the "*Union*" or "*Local 11*") governing the terms and conditions of employment for a significant portion of its employees.

4. The Holiday Inn Torrance has 330 guest rooms and suites, a restaurant and bar, room service and banquet service offerings, as well as other amenities. The

hotel owner contracts with an affiliate of InterContinental Hotels Group, ("*IHG*" or the "*Manager*"), to operate and manage this hotel. There is currently no collective bargaining agreement in place governing the terms and conditions of employment for any Holiday Inn Torrance hotel employees.

**Meeting With Tom Walsh**

5. On November 14, 2014, I received an email from Ely Esber, the assistant to Tom Walsh, the President of Local 11, asking for an appointment to meet with me "to discuss the implementation of the new minimum wage law Raise LA at the Westin Bonaventure Hotel."

6. I understood Ms. Esber's reference to the "new minimum wage law Raise LA" to mean the "Citywide Hotel Worker Minimum Wage Ordinance" that was enacted on October 10, 2014 by the City of Los Angeles (the "*Hotel Workers Act*"). I had reviewed this ordinance when it was passed. I was and am familiar with its provisions, especially those most directly affecting the Westin Bonaventure and Holiday Inn Torrance.

7. From newspaper accounts and my various conversations with individuals actively involved in the Los Angeles hospitality industry, I understand that the "Raise LA" initiative was a marketing and lobbying campaign that was driven by Local 11 and the Los Angeles Alliance for a New Economy ("*LAANE*") to obtain the passage of what became the Hotel Workers Act. Local 11 and LAANE partnered on this promotion campaign, which was not surprising to me as I know that the two organizations are closely linked, even sharing office space. James Elmendorf, the Deputy Director of LAANE and the chief proponent for the Hotel Workers Act, was formerly a Local 11 official, and LAANE operates essentially as the political arm of the Union.

8. When I received the November 14th email from Mr. Walsh's office, I reached out to Mike Czarcinski because, as Managing Director, he handles the

DECLARATION OF PETER ZEN

Westin Bonaventure's relations with the Union. I do not personally handle collective bargaining or other labor relations responsibilities for the Westin Bonaventure. That is why I asked him to join me at the meeting.

9. Mr. Czarcinski and I met with Mr. Walsh on November 17, 2014 at a restaurant at the Westin Bonaventure. James Elmendorf also joined us for lunch, although Mr. Walsh had not told me in advance that he would be there. I am informed that documents obtained by the AH&LA in connection with this lawsuit demonstrate that Mr. Elmendorf, in addition to publicly campaigning for the Act's adoption, was also involved the process of drafting the legislation itself. I have personal knowledge of these facts directly from Mr. Elmendorf. In response to a comment that I made about the Hotel Workers Act during our lunch, Mr. Elmendorf admitted that he had drafted the ordinance. From his tone of voice, demeanor and context, I could tell that Mr. Elmendorf was proud of his having such a direct role in the ordinance and was trying to persuade me that he had some special knowledge about what the ordinance "really" meant and how it would be enforced.

10. We began our conversation by discussing the new ordinance and Mr. Walsh quickly revealed his reason for inviting me to the meeting. He told me he wanted to organize the employees at the Holiday Inn Torrance.

11. Mr. Walsh asked me to sign a neutrality agreement to facilitate Local 11's ability to organize the employees at the Holiday Inn Torrance employees. I told him, "No." I also said that the Holiday Inn Torrance could not afford to be a union hotel, by which I meant that it could not economically pay wage rates and operate under work rules like those in the Bonaventure's union contract. He asked me if I was willing to pay $15 an hour. I told him that I wasn't, but that I would rather do that than sign a neutrality agreement with Local 11 because, as a practical matter, agreeing to neutrality would ultimately result in the Union organizing the Holiday Inn Torrance employees.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

DECLARATION OF PETER ZEN

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450

12. Mr. Walsh and Mr. Elmendorf each described what in their opinion were the virtues of having a unionized hotel. Mr. Walsh also told me that under the new ordinance, the Holiday Inn Torrance will have to raise its labor costs. He further explained that if the hotel were to become covered by a collective bargaining agreement, the Union contract would set forth lower rates than the $15.37 contained in the ordinance. He also stated that because of the lower rates paid in the surrounding Torrance area, the union would be lenient in the rates and work rules that it sought to allow the hotel to absorb those costs. I declined to further entertain his suggestion and re-stated that I had no desire to sign a neutrality agreement with the Union for the Holiday Inn Torrance.

13. Mr. Walsh and Mr. Elmendorf then turned their attention to the businesses located in the Galleria surrounding the Westin Bonaventure. Both Mr. Walsh and Mr. Elmendorf (the self-described writer of the ordinance) told me and Mr. Czarcinski that the new ordinance was "intended to apply" to the Galleria businesses and that because they are "connected" to a hotel, Galleria businesses were covered under the ordinance. I said that this did not make sense to me. Many of the Galleria businesses are "mom and pop" shops that I expect operate with low profit margins. I believe that these types of businesses would not be able to survive if they have to comply with a $15 an hour minimum wage.

14. I have no control over the operations of the Galleria businesses. They are independent businesses that simply lease their retail space from the hotel owner. That is the full extent of our business relationship. I could not, for example, sign any neutrality agreement on their behalf.

15. At our lunch, I said quite clearly that I believe in paying people fairly and that I support raising the minimum wage for the City of Los Angeles as a whole (which I do), but that I thought that a high minimum wage only for hotels was unfair

5

DECLARATION OF PETER ZEN

and wrong. Mr. Walsh and Mr. Elmendorf did not respond to this statement. Our meeting ended soon afterwards.

**Local 11 Neutrality Agreements**

16. As I explained to the Union representatives, I am not willing to sign a neutrality agreement, which would compromise my rights or the rights of employees under federal labor law. I understand that such agreements deprive workers of their right to secret ballot elections to determine union representation, a right guaranteed to the workers by federal labor law. I also understand and have been so advised by counsel that management has a right under federal labor law to express views to employees concerning the consequences of voting for a labor union, and may also limit outside union organizers' access to the premises.

17. I understand that by relinquishing these rights, neutrality agreements can have the likely effect of allowing a union a shortcut to obtain bargaining representative status, because the union neither needs to engage in a full debate over the merits of voting for a union nor to have employees express their desires in a private ballot-booth, rather than publicly sign a card in front of their coworkers and a union organizer.

18. I do not know of any hotel in or around Los Angeles that was not organized by Local 11 after signing a neutrality agreements.  In every instance that I know of where a hotel signed a neutrality agreement, it was later organized by Local 11.

19. Yet, because I refuse to consent to a neutrality agreement for the Holiday Inn Torrance, that hotel must suffer economic penalties in the form of higher labor costs, which the finance manager of the hotel has estimated will be approximately $800,000 each year because of the new ordinance.

20. In addition to having to pay the increased costs required by the new ordinance, hotels like the Holiday Inn Torrance will doubly suffer because they will

be at a competitive disadvantage with respect to peer hotels that are able to obtain a waiver through their respective CBAs.

21. The Hotel Workers Act's explicit favoring of collective bargaining relationships to the detriment of others has the unavoidable effect of subjecting the Holiday Inn Torrance to economic pressure applied as the result of its labor relations decisions, namely, the refusal to enter into a neutrality agreement with Local 11. This economic pressure will continue on the hotel as long as the Act remains in effect and cause injury to the hotel owner that I represent as a result of the new ordinance. That harm and injury will be avoided if the preliminary injunction sought by the Plaintiffs is granted.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 23 day of January, 2015, at Los Angeles, California.

_____
PETER ZEN

#34489447_v1

7

DECLARATION OF PETER ZEN

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 400 S. Hope St., 8th Floor, Los Angeles, California 90071.

On January 26, 2015, I served the document described as **DECLARATION OF PETER ZEN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** on the interested parties in this action as follows:

**[X]** (**BY Electronic Transfer to the CM/ECF System**) In accordance with Federal Rules of Civil Procedure 5(d) (3), Local Rule 5-4, and the U.S. District Court of the Central District's General Order governing electronic filing, I uploaded via electronic transfer a true and correct copy scanned into an electronic file in Adobe "pdf" format of the above-listed documents to the United States District Court Central District of California' Case Management and Electronic Case Filing (CM/ECF) system on this date. It is my understanding that by transmitting these documents to the CM/ECF system, they will be served on all parties of record according to the preferences chosen by those parties within the CM/ECF system. The transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on January 26, 2015, Los Angeles, California.

By: _____//S//_____
Kristina S. Azlin

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400  Fax: 213.896.2450