# EXHIBIT 4

FORM GEN. 160 (Rev. 6-80)

# CITY OF LOS ANGELES
## INTER-DEPARTMENTAL CORRESPONDENCE

DATE:     June 6, 2014

TO:       Honorable Members of the City Council

FROM:     Gerry F. Miller
          Chief Legislative Analyst

          Miguel A. Santana
          City Administrative Officer

### HOTEL LIVING WAGE PEER REVIEW

**SUMMARY**

At its meeting of February 25, 2014, the Economic Development Committee considered a Motion (Bonin-Martinez-Price-Koretz-LaBonge, CF# 14-0223, Attachment A) which would impose a living wage of $15.37 for hotel employees working in hotels with more than 100 rooms. Following public testimony and discussion, the Committee requested that the public and interested parties submit to the City any data, studies, and comments on this subject matter. The Committee also instructed the Chief Legislative Analyst (CLA), with the assistance of the City Administrative Officer (CAO), to obtain a peer review of the data, reports, or comments submitted relating to this matter, and report back with analysis and findings on this proposal.

The City received three reports and seven comment letters from the public and interested parties for consideration (Attachment B). The CAO's Office of Economic Analysis completed a competitive bidding process and selected Blue Sky Consulting Group to review the materials submitted. The Blue Sky report (Attachment C) evaluates studies and findings concerning the imposition of living wage requirements, as well as the comments and studies submitted to the City, and determines that existing research is not adequate to determine any specific outcome from the imposition of this policy.

**RECOMMENDATION**

Inasmuch as the Council may choose to implement a policy that would impose a living wage of $15.37 for hotel employees at hotels with more than 100 rooms, it would REQUEST that the City Attorney prepare and present the ordinances necessary to implement this policy and specify any adjustments to the policy such as a phase-in period, exception of tipped employees, and the number of rooms in a hotel that would be required to comply.

**FISCAL IMPACT STATEMENT**

There is no fiscal impact on the City General Fund associated with this action.

Exhibit 4 Page 32

## BACKGROUND

A Motion (Bonin-Martinez-Price-Koretz-LaBonge, CF# 14-0223, Attachment A) was presented for consideration by the Los Angeles City Council that seeks to require hotels with 100 or more rooms to pay their employees an hourly wage of at least $15.37. Upon consideration of this Motion in the Council's Economic Development Committee, members of the Committee requested that interested parties submit to the City their analyses, data, and other documentation concerning this proposal, and further instructed the Chief Legislative Analyst and City Administrative Officer to seek the assistance of an economist to evaluate all submissions received.

### Peer Review Process

Three reports and seven letters were received in response to the Committee's request for the public and interested parties to comment on this proposal. All of these materials were posted on the web at http://hotellivingwage.lacity.org/, as well as on the Council File Management System.

Concurrent with the comment submittal period, the CLA and the CAO's Office of Economic Analysis conducted a competitive bid process to select an economic team to evaluate the submitted materials. At the conclusion of that process, Blue Sky was selected to prepare the requested peer review.

Blue Sky evaluated all of the reports, data, and comments submitted for consideration. To ensure that the Council would have the benefit of all available information on this subject matter, Blue Sky also conducted a literature review to identify additional studies related to the subject of living wage requirements and local or industry-targeted living wage requirements. Finally, Blue Sky conducted follow-up interviews with several of the interested parties that submitted studies and comments. These interviews were focused on technical issues related specifically to the materials that these parties submitted.

The result of Blue Sky's review is provided in Attachment C, "Hotel Minimum Wage: Analysis of the Impact on the City of Los Angeles of the Proposed Minimum Wage for Hotel Works" (Report).

### Report Findings

The Report provides a review of various studies into the general effects of minimum wage legislation based on a review of literature on the subject matter. Concepts identified in that review indicate that a local policy could increase local wages, reduce employment in the affected hotels, reduce hotel profits, increase local economic activity, impact room rates, reduce local spending by hotel on services or improvements, affect new hotel development, and/or cause disruptions in employment for hotel workers.

The conclusion, though, is that these various effects represent various trade-offs: new and current hotel employees who remain employed would likely see a benefit from higher wages, as would the

2

Exhibit 4 Page 33

businesses these workers engage; but these benefits would come at the expense of laid-off hotel workers or individuals who would not be hired, of hotel owners who see profits decline, and possibly the City which could see a decrease in hotel construction.

If the City chooses to adopt an increase in the minimum wage for hotel workers, the Report recommends that such a policy should be phased-in. A gradual implementation of the policy could help minimize any adverse impacts or severe disruptions. Further, if the new minimum wage for hotel workers is adopted, the Report recommends that an exemption for tipped employees be considered because hotel food services, in particular, face competition from local restaurants, and a minimum wage policy applied to hotel food services would have a "disproportionate effect on hotel restaurants and the workers at those restaurants."

The Report concludes that no consensus exists concerning the effects of minimum wage policies that have been previously enacted and, therefore, the possibility for research to demonstrate the likely future outcomes of a proposed policy is limited.

However, the Report suggests that additional research into the minimum wage policies for hotel workers in the LAX Hospitality Zone and in the City of Long Beach might provide insight into the question of how such a policy might impact hotel employment in the City.

Though not addressed directly in the Blue Sky report, several commenters requested consideration of the size of a hotel that would be required to comply with this policy. The policy could require a different number of rooms, such as 150 or 200, be set as the minimum number of rooms that would be obligated to provide a living wage to their employees. A larger minimum room threshold would result in few hotels that are required to comply with the policy and fewer employees receiving a wage of $15.37 per hour.

Blue Sky will be available to address questions concerning policy phase-in, exemption of tipped employees, and the number of rooms in a hotel that would be required to comply with the policy.

| Attachment A | Motion (Bonin-Martinez-Price-Koretz-LaBonge, CF 14-0223) |
| Attachment B | Reports, Data, and Comment Letters Submitted by the Public and Interested Parties |
| Attachment C | "Hotel Minimum Wage: Analysis of the Impact on the City of Los Angeles of the Proposed Minimum Wage for Hotel Works" by Blue Sky Consulting Group |

3

Exhibit 4 Page 34

Attachment A

Motion (Bonin-Martinez-Price-Koretz-LaBonge, CF# 14-0223

Exhibit 4 Page 35

*14-0723*

FEB 18 2014
ECONOMIC DEVELOPMENT

**M O T I O N**

By maintaining free public tourist attractions like Hollywood Boulevard, Griffith Park and Venice Beach, modernizing LAX, upgrading the Convention Center and helping to build the public transportation system that will carry visitors around the city, to and from hotels, the City of Los Angeles has made significant financial investments to create a climate that has allowed the hospitality industry to thrive in Los Angeles. The City's investments have proven helpful for the hospitality industry, which has enjoyed three consecutive years of growth, and which boasts an occupancy rate of 75.4% (far better than the national average of 62%) and a "revenue per room available" rate of $100 – a 12-year high for LA. Since hotels receive definite benefits from City assets and investments, it is fair and reasonable that these hotels pay their employees a fair wage - especially when doing so would so greatly benefit the people of and the economy in Los Angeles.

According to the Economic Development Department, 43% of the people who work in hotels in Los Angeles earn wages that still put them far below the federal poverty line. Wages paid to hotel employees are economically restrictive and prevent many hospitality employees from having purchasing power at local businesses, which has a devastating toll on Los Angeles' local economy. According to research done by the Economic Policy Institute, increasing wages for hotel workers could generate more than $70 million in economic activity for Los Angeles.

Income inequality is one of the most pressing economic, social and civil rights issues facing Los Angeles, and establishing a fair wage for hotel employees will help raise thousands of Angelenos out of poverty. Economic studies have made the circumstances of those living paycheck to paycheck clear, and hotel employees should not be forced to work two or three jobs to provide food and shelter for their families.

Several cities, including Santa Monica and West Hollywood, have realized the value in providing enhanced wages for employees in the hotel and tourism industry, and voters in the City of Long Beach adopted a living wage for hotel workers by a nearly 2-1 margin just last year.

In 2007, the Los Angeles City Council passed a living wage ordinance for workers employed in hotels near LAX, and in 2009 passed an ordinance that raised the wages for airport employees. The living wage for airport employees has resulted in higher pay and real benefits for low-income families, and the hotels around LAX have continued to thrive. In recent years, LAX passenger traffic has steadily increased (4.7% increase in 2013, following a 3% increase in 2012) as the city has invested in infrastructure that draws tourists to Los Angeles.

**I THEREFORE MOVE** that the City Council instruct the CLA to secure a study and provide for public input of the Citywide economic impacts of imposing a living wage of $15.37 for hotel employees at hotels with more than 100 rooms; and

**I FURTHER MOVE** that, if supported by the study, the City Council request the City Attorney to work with the CLA and CAO in preparing and presenting an ordinance that requires a living wage for hotel workers at hotels with more than 100 rooms.

PRESENTED BY:

_____     _____     _____
MIKE BONIN                  NURY MARTINEZ                CURREN D. PRICE, Jr.
Councilmember, 11th District  Councilmember, 6th District  Councilmember, 9th District

_____
FEB 18 2014   SECONDED BY:

Exhibit 4 Page 36

# Attachment B

# Reports, Data, and Comment Letters Submitted by the Public and Interested Parties

- Central City Association, February 25, 2014
- Hotel Association of Los Angeles, March 11, 2014
- Hotel Association of Los Angeles, March 25, 2014
- VICA, March 13, 2014
- E-mail from Adena Tessler, March 24, 2014
- California Hotel & Lodging Association, March 25, 2014
- Small Hotel Coalition for Jobs, March 25, 2014
- "Repaying Hospitality" by Economic Roundtable
- "From the Pockets of Strangers" by Economic Roundtable
- "Impacts of Living Wages in the Airports Hospitality Enhancement Zone by Economic Roundtable

Exhibit 4 Page 37




**CCA | Central City Association**
of LOS ANGELES

626 Wilshire Blvd.
Suite 200
Los Angeles, CA  90017

telephone  213.624.1213
facsimile  213.624.0858
www.ccala.org

February 25, 2014

The Honorable Curren Price, Jr.
Chairman, Economic Development Committee
Los Angeles City Council
200 N. Spring Street, Room 420
Los Angeles, CA  90012

Dear Chairman Price:

As you know, the Central City Association is very concerned about the potential consequences of a mandate to increase the minimum pay for all hotel employees in the city to $15 per hour.  We believe that the negative impacts to Downtown, to the hotel industry, to the city's economy and tax base and to the city's ability to compete for tourist dollars and for new businesses will greatly outweigh the gains that will be seen by a small number of hotel employees who do not already make $15 per hour.

We are, therefore, encouraged to see that you and your colleagues have chosen to have a study of the economic impacts of the proposal completed and evaluated by the City Council before moving forward with a wage mandate.  However, you must ensure that the study is unbiased and attempts to find the actual effects of a dramatic wage increase in one industry in one city. The study must go where the data takes it and not cherry pick data to suit a predetermined outcome.

In addition to choosing an economist to do the study who is agreeable to all parties in this matter, that economist must look at a broad set of issues and answer questions about the hotel industry and new hotel development as well as the effects on the entire local economy. Merely saying that raising wages creates more spending by employees is only half of the equation. Unfortunately, it is a zero-sum-game.  The economist must look at where that increased payroll money comes from, what is not spent as a result and how that reduced income elsewhere affects the industry and the economy.

For that reason, CCA requests that the Committee include the attached list of questions in its instructions to the Chief Legislative Analyst about how the study should be conducted.

Sincerely,

Carol E. Schatz
President & CEO

cc: The Honorable Paul Krekorian, Councilmember
     The Honorable Jose Huizar, Councilmember
     The Honorable Gil Cedillo, Councilmember
     The Honorable Nury Martinez, Councilmember
     Gerry Miller, Chief Legislative Analyst

Exhibit 4 Page 38

**Questions for Citywide Living Wage Hotel Employee Economic Impact Study**

- Who will do the study?
  - The study must be conducted by a reputable economist who isn't using data to drive an outcome and who is interested in the economic impacts, not the social outcomes

- What have been the overall effects of the LWO on the hotels along the Century Blvd. Corridor?
  - What are those effects when the data is adjusted to account for the growth in the US economy and growth in overall travel from the time the wage was implemented until today?
- What was the cost to hotels from the increase?
  - How did the hotels manage those costs?
    - Absorption? Passed on to guests? Reduced staff levels or hours?
- How have the Century Blvd. hotels compared with hotels in El Segundo and elsewhere in that area that do not have a $13-plus hour minimum wage?
- What has been the effect on the hotel restaurants, bars, room service (food & Beverage) at those hotels?
- How many hotels signed CBAs on Century Blvd. and how does this compare to the county and to national averages?

- Similarly, what have been the effects of the hotel LWO increases in Long Beach and in cities such as New York and elsewhere?
  - Have new hotels been built in Long Beach?
  - Have New York hotels stopped various services and cut jobs?

- What will be the effects on the hotel industry if a $15 per hour minimum wage is imposed?
  - What will be the average increase in room rates?
  - How will that increase affect tourism and room stays?
  - Will higher room rates mean less spending in other areas of the local economy like restaurants, museums, taxis, retailers, etc.?
  - Will hotel jobs be cut? Will hours and shifts be cut?
  - Will reduced profits affect existing loans as P/E ratios or profits may drop below those required in loan agreements?
- How will higher costs affect hotel restaurants, especially those in areas where they compete with non-hotel restaurants nearby?
- What is the average reported wage for a tipped employee?
  - What will be effect of not including tipped employees whose reportable wages exceed $15/hour in the mandated increase?
  - What percentage of the non-tipped employee workforce makes $8.25 / hour? What percentage already makes over $15 / hour?
    - How many of those employees below $15 / hour have healthcare plans? How many employers can be expected to drop healthcare coverage?
- What will be the overall effect on a hotel's food and beverage operations if the wage is raised to $15 per hour?
  - Does the effect grow, diminish or stay constant as the number of rooms in a hotel affected by the wage mandate is raised?

Exhibit 4 Page 39

- What will be the effect on investments into renovation of existing hotels?
  - What will be the job impacts?
  - What will be the long term impacts to those hotels?

- How will this wage increase affect investments into new hotels?
  - Will size matter? (i.e., will investors still put money into large 400-plus room hotels but not 120-room hotels? Or vise versa?)
  - What are the effects if this is levied on 100+ room hotels vs. 200+ room hotels vs. 300+ room hotels or vs. 400+ room hotels?
    - Are the effects more deleterious to smaller hotels? And if so, how?
- Will hotel developers build in surrounding cities that do not have a citywide $15 hotel wage mandate instead of LA?
- How many developments can we expect to leave LA (not be built) and how many construction, full-time staff and third-party service provider jobs will be lost as a result?
- What will be the effect on "boutique" hotel investment and construction?

- What will be the effect on Downtown hotels of an LWO?
- What will be the effect on Downtown if no more boutique hotels are built in the area?
  - What will the ripple effect be on other new businesses coming into Downtown?
- What will be the overall effect on the Convention Center if the 5,000 new hotel rooms that are needed go unbuilt?
- Adaptive Reuse has been instrumental in revitalizing portions of Downtown and in bringing in new hotel brands to the city. What are the costs associated with building a hotel through adaptive reuse versus ground-up construction?
  - Do these costs make it more difficult to build a hotel through adaptive reuse?
  - Will the added costs from a living wage mandate make investors more likely to abandon an adaptive reuse hotel project than a ground-up project?
  - Is it more difficult to finance a hotel project that uses adaptive reuse than through ground-up construction?
    - If so, do the lower P/E ratios mean that banks will not give loans or may call in existing loans to adaptive reuse hotels?
  - How many construction jobs are created per room for an adaptive reuse hotel? And how does that compare to ground-up hotels?

- Has a study ever been done about raising a minimum wage, even for one industry sector, by nearly 80%? What were the effects on the economy of such an increase?
  - What is the largest mandated wage increase and what were the effects?

- What is the actual effect of "free" tourist attractions such as Griffith Park, Venice Beach, Hollywood Blvd., modernizing LAX, modernizing the Convention Center or investments in public transportation on bringing in visitors who stay at hotels in the City of Los Angeles?
  - How many of those visitors can be attributed solely to those attractions and not other factors in whole or in part?
- Excluding the Convention Center, do these other "free attractions" have any effect on visitors' decisions to stay in Los Angeles? In other words, if Hollywood Blvd. did not exist, how many visitors who stay in Los Angeles would actually travel elsewhere and how many room nights are affected?

Exhibit 4 Page 40

- o How much effect does a privately owned business have in these areas ability to draw tourists (e.g., the Chinese Theater as part of Hollywood Blvd.)
- o How much does the County's operation of a state asset such as the beach at Venice Beach compare with the city's investment there?
- How big is the impact of the Convention Center?
- How much impact does the lack of an easy-to-navigate, user-friendly public transportation system that actually gets people to where they want to go (compared to NY, Paris, London, SF) adversely affect people coming or staying in Los Angeles?
- How much effect do attractions that are either not free or not in the City of Los Angeles have on people staying at hotels in the City of Los Angeles (e.g., the Rose Parade or a Staples Center concert)?
- How much does LAX's poor image negatively affect the ability of the city to attract tourists?
- How many room nights are lost to other city's because of the poor quality and small size of the Convention Center?

Exhibit 4 Page 41



**Hotel Association of Los Angeles**

March 11, 2014

Honorable Curren Price
Los Angeles City Council
200 N. Spring Street, 4th Floor
Los Angeles, CA 90012

Dear Councilmember Price:

I'm writing on behalf of the Hotel Association of Los Angeles, which includes more than 135 hotels and affiliates throughout the Los Angeles area. We are writing to reiterate our concerns regarding the proposal to raise the minimum wage for hotel workers in Los Angeles to $15.37 per hour -- nearly double the current minimum wage in California. We also want to be sure that you saw the recent editorials in both the Los Angeles Times and the Los Angeles Daily News in which the respective newspapers expressed their strong opposition to the current proposal that is pending in City Council.

The Hotel Industry in Los Angeles contributed $179 million in Transient Occupancy Tax (TOT) to the City of Los Angeles in the 2012-13 Fiscal Year. In 2013, Los Angeles experienced a record breaking 42.2 million visitors, bringing $16.5 billion in direct spending and $30.5 billion in total economic benefits to the City along with 324,000 jobs throughout the County.

The Hotel Industry plays an integral role in tourism in Los Angeles. We provide quality jobs, good wages, and we contribute millions of dollars to the City's General Fund each year. Our concern with the living wage proposal is that it unfairly targets just one industry, the Hotel Industry, without knowing what the possible unintended consequences will be for the Los Angeles economy as a whole.

**The Los Angeles Times Editorial dated March 10 states:**

*"The proposal taking shape in City Hall to raise hotel workers' wages to $15.37 an hour is not the right way to go about it (lifting people out of poverty)."*

*"Their proposal unjustifiably singles out one industry…That's not sound economic policy."*

*"The 64 hotels that would be affected by the new proposal have sought nothing nor received anything special from the city."*

*"Would the higher wage for hotel workers lead to a loss of jobs or deter investment in new hotels in the city? Would it harm L.A. by offering a competitive advantage to hotels located just outside the city?"*

404 South Figueroa Street, Suite 604 • Los Angeles, CA 90071
Tel: 213-239-5607 • Fax: 213-239-5617 • www.hotelassociationla.com

Exhibit 4 Page 42

*"If the City Council and Mayor Eric Garcetti are serious about raising all boats, they should dedicate their energy to policies that help the many instead of the few."*

**The Los Angeles Daily News Editorial dated March 5, 2014 states:**

*"An L.A. only increase risks undercutting the city's effort to fix its business-unfriendly image."*

*"Perhaps it would be more useful for the City Council to put its influence and its momentum behind campaigns for bigger increases throughout California."*

*"Caruso is right when he says that if you believe in raising the minimum wage, you should be for raising it for as many people as possible, not one industry at a time in one town at a time."*

**The Hotel Association of Los Angeles wholeheartedly agrees with the concerns that both the Los Angeles Times and the Los Angeles Daily News have put forth.**

Our Association is concerned with the impact that this proposal will have on current and future employment in Los Angeles hotels. We believe that Los Angeles will be at a competitive disadvantage with our surrounding cities and that new hotel developments will be discouraged from coming to Los Angeles – at a time when the Tourism and Visitors Board has stated that we need 4,000 new hotel rooms in the City to attract new conventions and accommodate our growth in tourism.

We are encouraged that the City Council's Economic Development Committee has asked that a comprehensive economic impact study be performed before any action is taken to nearly double the minimum wage for certain hotels in Los Angeles. We continue to ask for a fair, impartial, and comprehensive study that addresses all of the concerns that have been put forth by our Association, the LA Times and the Daily News, and the greater Los Angeles business community.

We thank you for your careful consideration of our concerns and we look forward to continuing our dialogue in the days to come.

Sincerely,

**Bob Amano**
Executive Director
Hotel Association of Los Angeles

Exhibit 4 Page 43

## L.A. should consider other ways to push living wage: Editorial

*Wednesday, March 5, 2014*                                    DailyNews.com

LA Daily News (http://www.dailynews.com)

**L.A. should consider other ways to push living wage: Editorial**



As momentum builds for a minimum-wage increase, Los Angeles' leaders should keep this in mind: It's possible to support the living-wage movement but oppose raising pay for only one city or one industry.

Right now the City Council is looking at a proposal by members Mike Bonin, Nury Martinez and Curren Price Jr. to raise the minimum wage to $15.37 an hour for workers at L.A.'s big hotels. That figure, pegged to the minimum the city already imposes for L.A. International Airport employees, would be well above the state's current $8 bottom wage and the nation's current $7.25. The council has ordered a study of such a move's potential economic benefits and drawbacks, a healthy sign that it isn't going to rush into this.

Meanwhile, something happened last week that gave living-wage proponents encouragement — but also should make them think twice about their approach.

Philanthropist Eli Broad and shopping-mall developer Rick Caruso, who might not ordinarily be expected to take the side of workers, have voiced support for a higher minimum wage, telling the Los Angeles Times it would turn out to be good for business by putting more money into the economy.

But both billionaires advocated taking the proposal beyond the current City Council proposal, which would target approximately 11,000 employees at 87 hotels with more than 100 rooms. Broad would like to see a gradual increase to $15 an hour applied to all workers in Los Angeles. Caruso would prefer a $12 to $15 minimum not just in the city but statewide or nationally.

Caruso is right when he says that if you believe in raising the minimum wage, you should be for raising it for as many people as possible, not one industry at a time in one town at a time.

An L.A.-only increase risks undercutting the city's effort to fix its business-unfriendly image, a drive that includes Mayor Eric Garcetti's wish to phase out the onerous gross-receipts business tax.

Perhaps it would be more useful for the City Council to put its influence and its momentum behind campaigns for bigger increases throughout California, where it is now scheduled to rise to $9 in July and $10 in 2016, or the United States, where President Obama and Democrats in Congress are pushing for $10.10.

Exhibit 4 Page 44

That's the debate the council should be having about the minimum wage — as broad a debate as possible. Ironically, a general wage hike might draw support from many opponents of the hotel-workers wage hike. It would fuel less suspicion than the hotels-only hike, which would target only non-union hotels, helping labor organizers by giving hotel owners incentive to sign union contracts.

The minimum-wage debate always revolves around whether the benefits of an increase outweigh the costs: How much would it help low-income workers, many of whom need more than one-wage job to make ends meet, and help the economy by spurring spending? How much would it burden business owners and, in the end, backfire on some workers by prompting workforce reductions?

The City Council is correct to seek the answers to those questions as they pertain to L.A. But council members also should be asking if focusing on L.A., and specifically its major hotels, is the best way to attack the issue.


**URL: http://www.dailynews.com/opinion/20140305/la-should-consider-other-ways-to-push-living-wage-editorial**

© 2014 LA Daily News (http://www.dailynews.com)

Exhibit 4 Page 45

OPINION                                                77°    March 11, 2014

ADVERTISEMENT

# Why help just L.A.'s hotel workers earn more?

Email      Facebook      3      Twitter      2      g+1      2



LOS ANGELES TIMES

BY THE TIMES EDITORIAL BOARD
*March 10, 2014, 12:00 a.m.*

Income inequality, persistent poverty and the lack of economic mobility are not only some of the most salient political issues of 2014 but are fundamental challenges that affect the prosperity of the country and the stability of our communities. About 25% of families with children in the city of Los Angeles live in poverty, according to the Census Bureau. And even many people whose earnings exceed the federal poverty line struggle to make ends meet. Nearly half of all workers in Los Angeles earn less than $15 an hour, which some advocates for the poor believe is the minimum necessary to afford basic housing, food and transporta-

Exhibit 4 Page 46

tion.

The fact that so many Angelenos live on so little has profound impacts. Many parents work two jobs, leaving them less time to be involved in their children's lives and education. Many live in substandard housing or have no savings, meaning they are just one setback from bankruptcy or homelessness. Bad schools, substandard healthcare, teenage pregnancies and other factors leave many stuck in a cycle of poverty that persists from one generation to the next.

Creating policies that help lift people out of poverty should be one of government's top priorities. Nevertheless, the proposal taking shape in City Hall to raise hotel workers' wages to $15.37 an hour in Los Angeles is not the right way to go about it.

**PHOTOS: A peek inside 5 doomed dictators' opulent lifestyles**

City Council members Mike Bonin, Curren Price and Nury Martinez have called for a hotel worker living wage as a way to "raise all boats" and address income inequality on a local level. However, their proposal unjustifiably singles out one industry, benefiting several thousand hotel employees while ignoring more than 1 million other low-wage workers. It would impose the second-highest minimum wage in the country for, say, a waiter in a Hilton hotel, while leaving a waiter at the restaurant next door — one that doesn't happen to be part of a hotel — with a guarantee of only $8 an hour (or $9 after July 1). The justification? Los Angeles hotels have low vacancy rates and are profitable.

That's not sound economic policy. It's simply a response — and a troubling one — to pressure from the hotel workers and their union, Unite Here. This time around, the

hotel workers have waged the most effective lobbying campaign. Next time it might be fast-food workers. Sorry, mall cashiers, you won't get a raise because the retailers threatened to leave and city leaders don't want to lose their sales tax revenue.

**PHOTOS: From the Fed to GM, 5 top-tier women trying to fix man-made messes**

Frankly, if the city's minimum wage is going to be raised, it makes sense to raise it for all city workers across the board.

In the past, L.A.'s political leaders have occasionally mandated a higher-than-minimum wage for certain workers whose employers, they argue, have received direct benefits from the city. The city decreed in 2007, for instance, that hotels near LAX must pay workers a living wage, now set at $12.16 an hour, because those hotels supposedly benefit from the city's investment in the airport. (This page strongly disagreed with that argument.) And the JW Marriott hotel downtown has to pay that same rate as part of an incentive package that gives it a $270-million break on city taxes through 2035.

But the 64 hotels that would be affected by the new proposal have sought nothing nor received anything special from the city. Unless you consider a public street or park or a medi-

Exhibit 4 Page 47

ocre Convention Center a unique benefit bestowed on the hotel industry.

**PHOTOS: How the Democrats can win back the House and keep the Senate**

There are other concerns. Would the higher wage for hotel workers lead to a loss of jobs or deter investment in new hotels in the city? Would it harm L.A. by offering a competitive advantage to hotels located just outside the city? These questions are to be addressed in a forthcoming study.

Generally, it is wiser to set minimum wages at a higher level of government, in order to have the broadest, fairest impact and to minimize the risk that businesses will move to cheaper locations. At the moment, President Obama is seeking to raise the federal minimum wage from $7.25 an hour to $10.10 — a proposal this page has supported — and California's leaders have rightly voted to raise the state wage to $10 an hour in 2016. Multimillionaire conservative Ron Unz is gathering signatures for a ballot initiative to boost the state's baseline pay to $12. If the City Council and Mayor Eric Garcetti are serious about raising all boats, they should dedicate their energy to policies that help the many instead of the few.

## Related Content

Why help just L.A.'s hotel workers earn more?

Bring on the candidates — it's election season in California

On L.A. River restoration, it's time to think bigger

L.A. Fire Dept. shows how not to hire firefighters

New York has bike sharing. So does Chicago. So why doesn't L.A.?

For the homeless, taking shelter -- in a book

Have bike, will ride train -- if Metro will just provide more bike lockers

Cycling on the edge: Dodging cars and bike lane potholes

L.A.'s plan to make Figueroa a 'complete street' makes sense

Build My Figueroa, and let L.A.'s cyclists, and walkers, flourish

Exhibit 4 Page 48



March 25, 2014

Honorable Members of the Economic Development Committee
C/O John Wickham
Office of the Chief Legislative Analyst
200 N. Spring Street, Room 255
Los Angeles, CA  90012

Re: CLA Request for Study Points Inclusions

Dear Committee Members:

The Hotel Association of Los Angeles (HALA) and our member hotels and affiliates have been actively engaged in the proposed living wage ordinance and continue to voice our strong concerns to its negative impacts on existing hotel positions, future job creation, new hotel development and tax generation for municipal revenues.

We commend your decision to move forward with an economic analysis and would like to submit our points and questions and concerns relative to a comprehensive and unbiased study to evaluate the severe impacts of this proposal.

We have consulted with globally recognized economists, numerous industry experts across the nation including PKF Consulting USA and local hoteliers to consider the impacts and have compiled the list of guidelines, points and questions which need to be addressed in the proposed study.

We respectfully submit the attached document and look forward to continued dialogue with the city committees, members of council and administrative offices to participate in follow up discussions.

Sincerely,

Robert Amano
Executive Director

Cc: EDC Members -Chairman Price, Vice Chairman Krekorian, CM Huizar, CM Cedillo, CM Martinez



**Hotel Association of Los Angeles**

*Points for Economic Analysis Study*

* Study of the impact of LAX living wage. How were hotel operations, service levels, and employment levels affected, if at all, from the passage of the 2006/2007 Airport Hospitality Enhancement Zone Hotel Workers Living Wage Ordinance?

* Research analogous situations (Long Beach). Similarly, have hotel operations been materially altered since the passage of Measure N which took effect in December 2012? Further, did any hotels decrease their amount of available rooms so as to fall below the 100 room threshold, therefore making them exempt from the new law? Has there been any chill on hotel development in Long Beach since that time?

* Are there precedents in other cities for a minimum wage standard for hotel properties only? If so, what is the scope of hotels and jobs covered? Are there union or exemptions that are considered within these ordinances?

* What are the wage and earning benefits of the proposed living wage? An estimate of projected hourly wage increases should be compared to current wage and earnings estimates.

* Survey General Managers within the City of Los Angeles to determine likely operational changes, i.e., job loss, hour cuts, position/services elimination that may occur if the proposed wage increase is enacted.

* Would the proposed ordinance lead to a cut back, or elimination of entry level positions so as to avoid exposure to potential wage increases?

* Tip credit exemption. Can and should the proposed living wage ordinance being considered by the City Council apply to restaurant servers and other tipped employees that actually earn substantially more than minimum wage? Would the consideration of a tip credit allow hotel managers and operators to maintain a similar level of staff if this option is included as a provision in the proposed ordinance? What are the average hourly wages of tipped employees and what is the range of earnings?

* Whether the proposed wage increase would curtail new hotel development in the City of Los Angeles from an investor/developer prospective? That is - would potential developers of new hotels instead chose other Southern California cities in which to construct their desired hotel projects?

* What is the collective potential negative impact of the proposed legislation in terms of the loss of tax revenues to the City of Los Angeles from new and existing hotel operations, as well as the potential loss of new jobs being created and materials and goods being sold in the connection with new hotel developments in the City?

* What will be the impact to third party vendors such as night cleaners, valet parking services and others?

* What would be the indirect charge to the economy if jobs are lost and hotels spend less on goods and services?



March 13, 2014

Gerry Miller - Chief Legislative Analyst
Office of the CLA
200 N. Spring Street, Room 255
Los Angeles, CA. 90012

**SUBJECT: Hotel Living Wage Study**

Dear Mr. Miller,

The Valley Industry and Commerce Association (VICA) and our member hotels have voiced our concerns with the proposed hotel living wage ordinance and would like to thank you for choosing to study the effects of such a proposal before imposing it. VICA has compiled the list of questions below that we feel should be answered to ensure that the study accomplishes its goals in evaluating the real impacts of this proposal.

**Procedural Questions:**

- Who will be involved in conducting the study? This study has been referred the CLA's office, however, we feel an unbiased study should be conducted by the Office of Economic Analysis, since it was created for this purpose.

- What will be the CAO's role in the study? Following our discussions with several Councilmembers, they agreed that the CAO should work with the CLA through the course of this study, but in what capacity? How will the study elements be split by department?

- How will a full study that addresses all of the impacts of this proposal be conducted in just 45 days?

**Impacts Realized in Other Cities, Neighborhoods:**

- What have been the overall effects of the Living Wage Ordinance on employees around LAX, in Long Beach, in New York, and elsewhere?

    1. How many jobs were cut, or replaced by new, higher skilled employees after the ordinance went into effect?
    2. Of those who kept their jobs, how many experienced a reduction in hours per week and how many workload expectations were raised? (i.e. maid used to be responsible for 15 rooms an hour and is now expected to clean 22 an hour)
    3. How many employee benefits or free services were cut? (i.e. free employee lunches, recognition programs, insurance co-pays)

- What have been the costs to hotels from the increase?

    1. From other city examples, have managers or those paid above minimum wage asked for increased compensation as those who they oversee receive an increase (wage stratification)? If so, what can we expect to be the overall cost of wage stratification to

Exhibit 4 Page 51

hotels, including the raise for minimum wage workers, further increases for other staff, and other costs tied to wages, such as workers' compensation, etc.
2. How have the hotels managed these costs?
3. What was the average increase in room rates/ banquet hall rates?
4. What has been the effect on hotel restaurants and bars as they implement this increase?
5. Have new hotels been built after the ordinance was put into place? How does this number compare with development numbers in previous years?
6. Have any previous examples raised minimum wage by nearly 80 percent, like the current proposal in L.A.? How large were their respective increases?

- What loss in tourism has been realized in these cities with rates that are disproportionate to competitive sets in bordering cities? How have the living wage hotels compared in tourism with their neighbors who are not required to pay a living wage?

**Questions regarding Specific City Zones:**

- As we all know, the Valley operates under a very different economic reality than other areas of the city, such as downtown where hotel development has been heavily city subsidized. For this reason, the study should analyze the impacts on a local basis instead of city wide, by dividing up the city into various zones. Once this has been done, we request that the following valley-specific questions be answered.
    1. What nexus is being used to justify including Valley hotels in this ordinance?
    2. How many tourists stay in Valley hotels to visit the "free" attractions listed in the motion?
    3. How are the data points listed in the motion different for Valley hotels in comparison to downtown? (i.e. Rev par, occupancy rates, ADR).
    4. How much effect do privately owned businesses or attractions located outside of the city (i.e. Magic Mountain, Universal, Burbank Studios) have on people staying in the Valley?

**Los Angeles Projections:**

- What will be the overall impact of the ordinance on the hotel industry in L.A.? What will be the specific impact on Valley hotels?
    1. What will be the average increase in room rates?
    2. How will these new labor rates affect tourism when less expensive options are available at bordering cities like West Hollywood, Burbank, and Beverly Hills, Anaheim?
    3. How will this potential loss of value affect the conferences and banquets, both large and small that regularly utilize hotel spaces? Will they be likely to stay in L.A., or move to a neighboring city?
    4. What will be the impact of L.A.'s lack of competitive pricing on online forums such as Priceline and Expedia?
    5. How will this loss of tourism and decrease in room stays affect the livelihood of hotels?
    6. How will this loss of tax revenue impact the city?
    7. Will hotel jobs be cut, replaced, or outsourced? Will hours be reduced or will workload per hour be increased?
    8. Will reduced profits affect loans as P/E ratios may drop below those required in loan agreements? Can the city be held liable for it being the cause of these business plan failures?
    9. How will higher costs affect hotel restaurants who compete with outside restaurants not impacted by this ordinance?
    10. What will be the effect on new investments/ renovations and new development in the city? How will this impact current and future jobs? Will developers instead build in surrounding cities?

Exhibit 4 Page 52

11. Do we expect any hotels to be forced to shut down as a result of this ordinance?

**Exemptions:**

- What would be the effects of an exemption for tipped employees?

  1. Would it be legal, under state law and the Department of Labor, to exempt tipped employees from the living wage ordinance?
  2. What is the average wage reported for a tipped employee? Hourly? Annually?
  3. What will be the effect of exempting tipped employees from the ordinance?
  4. What percentage of affected employees make $8.25 an hour? What percentage make over $15.37 an hour?

- What would be the impact of mandating a $15.37 floor for wages in future union contracts?

  1. Although we understand that current contracts cannot be changed, must future bargaining agreements also be exempted from the living wage?
  2. In the other city examples, how many hotels unionized after the living wage was imposed? How does this number compare with usual unionization in that area and across the country?

**Underlying Issues/ Alternatives:**

- What will be the impact on youth jobs and wages? (i.e. high school and college students)

- What alternatives have been considered to better address the issue of the wage gap and low purchasing power in Los Angeles?

- What is the benefit of instead addressing the underlying issues in the city and investing in job growth through economic development (i.e. phasing out of the business tax) as well as increased public-private partnerships with our schools, to match curriculum to workforce needs?

Thank you for your hard work on this important issue.

Sincerely,

Coby King
Chair

Stuart Waldman
President

Exhibit 4 Page 53

City of Los Angeles Mail - Living Wage Ordinance for Hotel Workers       https://mail.google.com/mail/u/0/?ui=2&ik=64a6db04f0&view=pt&...



**John Wickham <john.wickham@lacity.org>**

## Living Wage Ordinance for Hotel Workers

**Adena R. Tessler** <atessler@mercuryllc.com>                     Mon, Mar 24, 2014 at 4:40 PM
To: John Wickham <john.wickham@lacity.org>

I am representing the CA Restaurant Association and we do not have a report to put on file however we do have some questions:

1)   Will this living wage ordinance include restaurants that lease space in the designated hotels?  If so, what is the reasoning behind including them?

2)   In reviewing type of wage requirement in hotels in the LAX Corridor and in other Cities, how has an increase in living wage impacted the restaurants leasing space in the hotels.

Just want to make sure restaurants are not overlooked as far as economic impact.

**From:** John Wickham [mailto:john.wickham@lacity.org]
**Sent:** Monday, March 24, 2014 4:25 PM
**To:** Adena R. Tessler
**Subject:** Re: Living Wage Ordinance for Hotel Workers

[Quoted text hidden]

Exhibit 4 Page 54                     3/28/2014 10:49 AM



March 25, 2014

Honorable Members of the Economic Development Committee
c/o Gerry Miller
Office of the Chief Legislative Analyst
200 North Spring Street, Room 255
Los Angeles, CA  90012

Dear Committee Members:

Thank you all for recently meeting with me recently.

As voiced in our meetings, the California Hotel & Lodging Association believes that a mandate to increase wages for only hotel employees to $15.37 per hour will negatively impact the City of Los Angeles.

It's for that reason we are supportive of the Economic Development Committee's directive to study the economic impact of such a mandate.   It is our request that the Office of Economic Analysis (OEA), which was established by the City Council for the purpose of incorporating economic impact analysis into the City's legislative decision-making process conduct this research on behalf of the Council.  OEA already has considerable experience in such endeavors, and familiarity with the hotel industry via the economic impact analysis of the proposed downtown stadium and convention center project.

Areas of analysis should include:

- By what means has the wage been determined to be $15.37 per hour? With the Affordable Care Act being implemented, how its implementation effect this figure, if at all?
- Competitive Issues:
  - Convention/Group/Corporate business:
    - What would be the ability for area hotels to compete for future convention business with Anaheim, San Diego, and San Francisco?
    - How does the competitive environment change for group and corporate meetings with surrounding areas such as West Hollywood, Pasadena, Marina Del Rey, and others as well as regional competitors in Southern California?
  - Restaurant/Catering/Banquets:
    - How would such a mandate impact restaurants and food service in hotels?
    - What is the rationale for exempting an identical business, such as a restaurant or meeting venue, just because it is not in a hotel?

      

*PROTECTING THE RIGHTS & INTERESTS OF THE CALIFORNIA LODGING INDUSTRY.*
414 Twenty-Ninth Street | Sacramento, CA 95816-3211 | 916.444.5780 | www.calodging.com

Exhibit 4 Page 55

- o General Operations:
  - Complete a comprehensive hotel & lodging industry wage survey.
  - Identify operational changes (pricing, reduction in hours, services elimination, etc.) that further compound the ability to compete with other regional hotel properties?
- o Size of Hotels:
  - What will be the economic impact of hotels reducing the number of rooms (see Long Beach example below)?
  - How many employees will be displaced by these room reductions and what is the impact upon the City of Los Angeles?
  - What is the economic rationale for the size of an impacted hotel proposed to be 100 rooms or greater?
  - What is the difference in a 100 room hotel from a 300 room hotel (for example) that would justify the increased wage mandate?
- Future Development:
  - o How will this impact the ability to attract hotel development/financing?
  - o Published reports indicate the Los Angeles Convention Center needs 4,000 additional hotel rooms to begin to be competitive – how does this mandate effect the development and/or timing of any future development?
  - o If there would be an impact on development, how would this effect the City's ability to attract marquee events, such as the Olympics?
- Exemptions:
  - o What is the economic rationale for exempting hotels with collective bargaining agreements?
    - Why don't union employees deserve a living wage?
  - o What is the rationale for including tipped employees that effectively earn a wage above the proposed mandate?
- Review of comparable circumstances:
  - o LAX Living Wage:
    - What is the nexus (equivalent to LAX) for expanding this mandate, and why just hotels?  Why wouldn't other employees deserve this increased wage?
    - Why are businesses with collective bargaining agreements exempt and what is the economic analysis to employee wages.
    - Of businesses that don't provide the higher tiered rate (excluding health care benefits), how many employees utilized the additional hourly rate to purchase health care coverage?
  - o Long Beach Living Wage:
    - What is the impact on the (at least) 75 employees who lost jobs as a direct result of this measure?
    - What is the effect of the loss of revenue and taxes from the closure of 41 and 75 rooms, respectively, from the two area hotels which reduced their room numbers?

Exhibit 4 Page 56

- Of all hotel employees, how many were effected and how many did not receive the living wage increase because they worked in union hotels?
- Administration:
  - What is the annual cost to the City of Los Angeles to implement, monitor, and respond to issues related to this mandate?
  - How many employees would be required to administer this mandate?
  - How would the tax collection receipts be affected?

In addition to these limited issues, the economic firm chosen to perform this economic analysis should be agreeable to all stakeholders in this matter, studying the issue broadly and in its entirety. The premise of raising wages to create additional spending must be coupled with the cost of providing these wages and the reduction of jobs and income which will also affect the economy.

Thank you for your consideration.

Sincerely,

Lynn S. Mohrfeld, CAE
President & CEO


cc:   Chair Price
      Vice Chair Krekorian
      Councilmember Cedillo
      Councilmember Huizar
      Councilmember Martinez

Exhibit 4 Page 57

# SMALL HOTEL COALITION FOR JOBS

*325 West 8th Street, Suite 901, Los Angeles, CA 90014*
*(213) 221-7161*

**VIA ELECTRONIC MAIL**

March 25, 2014

The Honorable Curren Price
Chair, Economic Development Committee
Los Angeles City Hall
200 North Spring Street, Room 420
Los Angeles, CA 90012

**Re:    Proposed Living Wage Ordinance; Council File 14-0223**

Dear Councilmember Price:

This letter is submitted on behalf of the "Small Hotel Coalition for Jobs," a group of hotel owners who are concerned about the potential negative impacts the proposed living wage ordinance will have on small hotels. We share your goal of reducing income disparity, and applaud your efforts to solicit and incorporate stakeholder input at such an early juncture. However, we have strong concerns about the singling out of one industry for this heavy mandate that we understand would immediately nearly *double* the current minimum wage.

Before moving this proposal forward, we do agree that a study of its economic impacts is absolutely imperative. The city must recognize that small hotels – those under 200 rooms – operate under a completely different economic reality than the larger, often publicly- or syndicate-owned corporate hotels in Los Angeles. Many are independent, family-owned businesses that provide a quality work environment – good wages, health benefits, and generous bonuses. This, in turn, has resulted in many long-term satisfied employees. A one-size-fits-all model is rarely successful in a city as diverse as Los Angeles. Thus, in the economic impact study, *we ask that you pay special attention to the issues we've identified that are unique to small hotel owners and consider increasing the 100-room threshold, or come up with an alternative method of determining to which hotels the new policy will apply, if any.*

## I.    Large Corporate Hotels vs. Small Independent Hotels: Economies of Scale

The average hotel size in the City of Los Angeles is 326 rooms, and most are affiliated with larger, public corporations. Hotels with high room capacity generally benefit from economies of scale which allow them to efficiently distribute fixed costs. They are able to share resources and materials, and the result is a lower product cost. Smaller, independent hotels lack such economies of scale. Small hotels operate under a different business model, and any substantial cost increase must be made up elsewhere.

Exhibit 4 Page 58

## II.   Loss of Jobs, Reduced Work Hours

Without an exemption, small hotel owners will be forced to cut costs to make ends meet. Many of these hotels operate on very tight profit margins, and any increase in the cost of labor threatens this delicate balance. Unfortunately, the likely result will be a loss of jobs, reduced work hours, more outsourcing, and fewer services provided to guests. For the city, this equates to more unemployment, less tax revenue and fewer consumers. This strategy is counterproductive, and hurts the families the city is trying to help. Our coalition is available to meet with the individuals who are preparing the economic impact study to provide more detailed information about these impacts, among others.

## III.   Tipped Employees and the Ripple Effect on Salaries

In addition, the proposed wage increase does not take into consideration that many tipped employees already make well over $15.37 an hour with tips. This will cause a devastating ripple effect on salaries – adding even more costs to hotels. If passed, tipped hourly employees will earn more than shift supervisors with more seniority or other employees with more advanced skill sets. This creates personnel problems that can only be solved by increasing managerial level salaries as well. This is financially infeasible and could lead to unintended consequences. This ripple effect will occur with non-tipped employees as well.

## IV.   Increased Costs Cannot be Recouped with Higher Room Rates

Despite prevailing beliefs, substantially increased operating costs cannot simply be passed onto consumers. Small hotels will not be able to recoup these costs with higher room rates because it will put them at a significant disadvantage versus others in their competitive set. If owners do decide to increase room rates, they will likely price themselves out of the market and consumers will head to hotels in City of Los Angeles adjacent communities such as West Hollywood, Santa Monica, Marina Del Rey, Pasadena, Burbank, Glendale, El Segundo, Torrance and Simi Valley, which are not subject to wage ordinances of this kind. It is important that these issues, and pricing vis-a-vis cities adjacent to Los Angeles, be carefully studied.

In addition, an arbitrarily set 100-room threshold will put small hotels in the 100-200 room category at a competitive disadvantage with small hotels under 100 rooms. Those in the latter category will not have to raise room rates to offset wage increases and will take market share away from other small hotels in the City.

## V.   Reduction of Hotel Development

Another issue to consider is the potential reduced development of hotels in the 100-room range, such as adaptive reuse projects vital to Downtown's renaissance and other independent hotels throughout the City. If projects do not "pencil out" in Los Angeles, adjacent communities will once again reap the benefits of our high cost of doing business. Los Angeles will be hurt as more hoteliers choose to develop elsewhere. Permanent and construction jobs will be lost as well as an ongoing revenue stream of Transient Occupancy Tax the city would otherwise collect.

2

Exhibit 4 Page 59

### Conclusion

Finally, this proposal may bring about the unintended consequence of minimizing job opportunities for youth. The hotel industry accounts for a large majority of seasonal and temporary jobs for young workers, and hotel owners will be inclined to hire more experienced workers at such a high starting wage. We strongly urge you to carefully examine these important issues, and be mindful of the impact this proposal will have on small hotels in the City. We thank you for your consideration and the opportunity to continue working with you.

Sincerely,

Veronica Perez
Small Hotel Coalition for Jobs


Cc:   The Honorable Paul Krekorian
      The Honorable Jose Huizar
      The Honorable Gil Cedillo
      The Honorable Nury Martinez
      John Wickham, Chief Legislative Analyst's Office
      Richard Williams, Office of the City Clerk

3

Exhibit 4 Page 60

# Repaying Hospitality

### Economic Impacts of Raising Hotel Workers' Wages and Benefits in the City of Los Angeles



Economic Roundtable
*A Nonprofit Research Organization*



Exhibit 4 Page 61

# Repaying Hospitality
Economic Impacts of Raising Hotel Workers'
Wages and Benefits in the City of Los Angeles

2013

Patrick Burns and Daniel Flaming

Underwritten by the Los Angeles Alliance for a New Economy

ECONOMIC ROUNDTABLE
A Nonprofit, Public Policy Research Organization
315 West Ninth Street, Suite 502, Los Angeles, California 90015
www.economicrt.org

Exhibit 4 Page 62

This report has been prepared by the Economic Roundtable study team, which assumes all responsibility for its contents.  Data, interpretations and conclusions contained in this report are not necessarily those of any other organization that supported or assisted this project.

This report can be downloaded from the Economic Roundtable web site:
*www.economicrt.org*

Exhibit 4 Page 63

# Contents

Executive Summary ............................................................................................. 1

Introduction ...................................................................................................... 3

**1. Hotel Market Characteristics, Indicators, and Effects of a Higher
   Minimum Wage** ............................................................................................ 4

1a. Structure of the City of Los Angeles Hotel Industry, based on Employment Size
   Class and Number of Rooms ........................................................................... 4

1b. Effects of a minimum wage requirement for hotels with 100 or more rooms on the
   hotel industry in the City of Los Angeles, including the relocation or cessation of
   any hotels ..................................................................................................... 8

1c. Comparison of occupancy rates and revenue for hotels located in Los Angeles
   and other major US Cities in LA's competitive set: New York, Las Vegas,
   San Francisco, San Diego and Phoenix.  What does this indicate about the
   Los Angeles' ability to retain and attract new hotel business with a living
   wage for hotels? .......................................................................................... 12

**2. Current Hotel Worker Wages** ...................................................................... 17

2a. Wage Rates for Hotel Workers Employed in the City of Los Angeles,
   by Occupation ............................................................................................. 17

2b. Current Wage Differences between Unionized and Non-Unionized Hotels
   in the City of Los Angeles ............................................................................ 18

2c. Comparative Hotel Wage Rates for the City of Los Angeles and Other Major
   Destinations ................................................................................................ 19

**3. Economic Impacts of the Proposed Minimum Wage Ordinance** ..................... 21

3a. Current Economic Impacts of Hotel Worker Wages ......................................... 21

3b. Economic Impacts if a $15.37 per Hour Minimum Wage is Enacted .................. 22
   *Group A:* Workers at Nine Large, Non-Union Hotels in the LAX Zone ............... 23
   *Group B:* Workers at 42 Large, Non-Union Hotels outside the LAX Zone .......... 25

3c. Effects of a wage increases on hotel room rates, including effects on hotel
   customers in the City of Los Angeles ............................................................ 28
   Note on Estimated Hotel Revenue .................................................................. 29
   *Scenario #1:* Paying for Added Labor Costs from Existing Hotel Revenue by
      Reducing Owners' Income ......................................................................... 30
   *Scenario #2:* Paying for Added Labor Costs through Reduced Staffing .............. 31
   *Scenario #3:* Paying for Added Labor Costs through Reduced Employee Benefits .. 31

Exhibit 4 Page 64

*Scenario #4:* Paying for Added Labor Costs through By Cutting Costs Paid for
Purchased Goods and Services ...................................................................32
*Scenario #5:* Raising Hotel Revenue to an Amount Equal to Increased Labor
Costs   ........................................................................................................32
Combination of Scenarios is Most Likely Response .......................................33

**4. Paid Sick Leave for Hotel Workers**............................................................................35

4a. Effect of requiring hotels with 100 or more rooms in the City of Los Angeles
to provide their employees with 5 paid sick days ........................................35
4b. Alternative measure of employers' cost to provide their employees with
5 paid sick days.........................................................................................36
4c. Variations in the cost of implementing paid sick leave benefit .....................36

**5. Impacts of Tourism on Hotels and other Los Angeles Businesses** .........................37

5a. Share of hotel revenue imported from other regions, i.e., is spent by visitors
who do not live in Los Angeles ..................................................................37
5b. Share of Jobs in Other Industries Supported By the Tourism Business at Hotels
in the City of Los Angeles ........................................................................39

**Data Appendix Tables** ..................................................................................................43

Data Appendix Table 1: Estimated Average Hourly Wage Rates for
Hotel Occupations with 500 or More Employed in Los Angeles...............................43
Data Appendix Table 2: Estimated Mean Annual Wages for Hotel Occupations
with 500 or More Employed in Los Angeles.................................................................44
Data Appendix Table 3: List of Hotels with 100 or More Rooms in the City of Los
Angeles, by Union Status and Whether Located in the 2008 Airport Hospitality
Enhancement Zone.........................................................................................................45
Data Appendix Table 4: Calculating Total Compensation of the Proposed $15.37
Minimum Wage at Affected Hotels, City of Los Angeles...........................................47
Data Appendix Table 5: Employment Impacts of Tourism-Related Business
at Hotels in the City of Los Angeles ...........................................................................48

**End Notes**........................................................................................................................59

Exhibit 4 Page 65

## Repaying Hospitality: Economic Impacts of Raising Hotel Workers' Wages and Benefits in the City of Los Angeles

*A report by the Economic Roundtable, underwritten by the Los Angeles Alliance for a New Economy*

### Executive Summary

A new, citywide minimum wage for all hotels with 100 or more rooms is being considered. This new minimum wage would impact approximately 64 of the city's 87 large hotels and over five thousand low-wage hotel workers in the City of Los Angeles. Based upon a review of recent, local data including impacts to date of the 2008 Airport Hospitality Enhancement Zone ordinance, the twenty year trend for citywide hotel openings and closures, and the current growth of Los Angeles hotels' occupancy and revenue compared to other major, domestic tourist destinations, our study concludes that a new minimum wage will not result in significant relocation or cessation of current hotel business.

Average wages paid by hotels in the City of Los Angeles are well below the proposed minimum wage of $15.37 per hour, with maids and housekeepers earning $9.03, desk clerks earning $11.17, and bellhops earning $12.03 per hour. Compared with the rest of the nation, the state and five other urban areas that compete with Los Angeles for tourists, the city ranks near the bottom of the wage ladder for hotel workers and is competing with Phoenix for the lowest hourly wages offered. Employees at city's unionized hotels earn 141 percent of the wages earned by their counterparts at non-unionized hotels, more than the 118 percent nationwide differential between union and non-union private sector workers.

Hotel workers employed in the City of Los Angeles *currently* earn $499 million in total annual wages, and their household spending already supports the equivalent of 3,296 local, year-long jobs and $469 million in local sales. If enacted, the ordinance would bring a combined $33.7 million pay raise to hotel workers in its first year, with multiplier effects that would support an additional 283 jobs and $39.6 million sales at local businesses. The cost of this pay raise to $15.37 per hour could be paid for by hotels in at least two different ways:

1. Hotels could keep their prices and revenue the same, and reduce the portions of revenue going to hotel ownership from 17.9 percent to 12.4 percent, enabling the share of revenue going toward employee compensation to rise from 30.9 percent to 36.4 percent, *or*

2. Hotels could increase their revenue from room rates and other services by an average of $3,351.23 per occupied room per year, or $9.18 per occupied room per day. The 64 hotels affected by the proposed ordinance have a total of 16,295 hotel rooms.

The second method – passing costs on to customers – is the likely means by which hotels would generate the funds needed to pay the new minimum wage, but these methods could be blended.

Tourism accounts for an estimated 74 percent hotel business in the City of Los Angeles, directly supporting over 12,000 jobs in *all* hotels citywide. Another 4,311 indirect and induced jobs are supported by the tourism share of hotel business through local multiplier effects. In addition, tourists directly support over 64,000 jobs in other City of Los Angeles industries. Out-of-town visitors would pay three-quarters of the cost for the proposed minimum wage ordinance.

Exhibit 4 Page 66

# Repaying Hospitality: Economic Impacts of Raising Hotel Workers' Wages and Benefits in the City of Los Angeles

*A report by the Economic Roundtable, underwritten by the Los Angeles Alliance for a New Economy*

## Introduction

This study analyzes the impact of a proposed increase in the minimum wage for hotels in the City of Los Angeles with 100 rooms or more, presenting new information about the city's hotel industry with an emphasis on its largest hotels.[1]  Building upon earlier research by the Economic Roundtable,[2] we analyze the potential economic impacts of both the proposed minimum wage increase and a new paid sick leave benefit for hotel workers employed at the city's large hotels.  This research is carried out using both publicly-available and confidential data sources about employers and workers, broken out by industry and occupation.  It also compares Los Angeles' hotel employers and workers to their peers in other major cities, and presents data about variations within sub-market areas of Los Angeles.

*Economic Impacts of a Citywide Minimum Wage for Large Hotels*

In July 2008, the City of Los Angeles adopted an ordinance to increase the minimum wages and benefits of hotel workers employed at thirteen large hotel properties near Los Angeles International Airport (LAX).  The purpose of that ordinance is "*to improve and encourage the continuing growth and development of the business community in the Century Boulevard Corridor, while simultaneously improving the welfare of service workers at LAX-area hotels by ensuring that they receive decent compensation for the work they perform.*"[3]  While this ordinance covers a relatively small geographic area known as the Airport Hospitality Enhancement Zone – 0.22 square miles of parcels along or near Century Boulevard – it affects over 7,000 hotel rooms and 2,900 hotel workers, 18 percent of the city's total hotel employment.

A proposed ordinance to increase in the minimum wage for hotels with 100 rooms or more in the City of Los Angeles – as well as provide paid sick leave benefits – represents an expansion of the 2008 Airport Hospitality Enhancement Zone ordinance.  It would directly impact approximately 57 large hotel properties citywide not already covered by the 2008 Airport Hospitality Enhancement Zone ordinance, with over 20,000 additional hotel rooms and 8,700 additional hotel workers.  Low wage occupations most likely affected would include housekeepers, desk clerks, line cooks and banquet servers.  The minimum hourly wage – initially proposed at $15.37 per hour with pre-set annual increases, along with health and paid sick time benefits – is different than the earlier LAX zone ordinance, but the types of large hotels affected by the proposed ordinance would be similar.

The centerpiece of this report is an estimate of the economic impacts of the proposed ordinance to increase the minimum wage at hotels with 100 rooms or more, as well as providing hotel workers with paid sick days.  This is preceded by an overview of the City of Los Angeles' hotel industry and hotel workers, and then followed by a look at the share of the city's lodging and linked economic activity tied to tourism.

Exhibit 4 Page 67

Case 2:14-cv-09603-AB-SS   Document 58-1   Filed 03/09/15   Page 38 of 72   Page ID #:1244

## 1. Hotel Market Characteristics, Indicators, and Effects of a Higher Minimum Wage

*1a. Structure of the City of Los Angeles Hotel Industry, based on Employment Size Class and Number of Rooms*

The City of Los Angeles's hotel industry is diverse, with hotels ranging in size from just a few rooms to hundreds of rooms, some that are family enterprises and others that are corporate, and some that are single-site establishment while others are national chains. There are only 51 hotels with 100 or more *employees*, but these large hotels employ enough workers to fill 12,360 job positions (Figure 1.1).

If the City of Los Angeles enacted the proposed minimum wage ordinance for hotels with 100 or more *rooms*, the 87 local hotel establishments affected represents 21 percent of all hotel establishments in the City, and includes thirteen large hotels

Figure 1.1: Number of Lodging Establishments by Employment-Size Class, City of Los Angeles.



**Employees per Hotel Establishment**

Source: Economic Roundtable analysis; California Employment Development Department, 2011. *Quarterly Census of Employment & Wages*, City of Los Angeles.

Table 1.1: Hotels and Hotel Employment in the City of Los Angeles, Broken Out by Number of Rooms and Employees

| Employment Size Class | 100 or More Rooms | | Less Than 100 Rooms | |
|---|---|---|---|---|
| | Number of Hotels | Number of Employees | Number of Hotels | Number of Employees |
| 1 - 4 | - | - | 96 | 231 |
| 5 - 9 | - | - | 47 | 331 |
| 10 - 19 | - | - | 52 | 765 |
| 20 - 49 | 22 | 462 | 29 | 893 |
| 50 - 99 | 22 | 1,379 | 8 | 584 |
| 100 - 249 | 22 | 2,814 | 7 | 1,389 |
| 250 - 499 | 13 | 3,814 | 1 | 270 |
| 500 + | 8 | 4,073 | - | - |
| **Total** | **87** | **12,542** | **240** | **4,463** |

Source: Economic Roundtable analysis; California Employment Development Department, 2011. *Quarterly Census of Employment and Wages*, City of Los Angeles; U.S. Census Bureau. 2013. *Los Angeles Co., CA: 2011 County Business Patterns (NAICS)* [Table].

already covered by the 2008 Airport Hospitality Enhancement Zone ordinance. Measured by employment, 12,542 jobs are based in the city's large hotels with 100 or more rooms, including those by the airport. This represents 73 percent of hotel jobs in the City of Los Angeles (Table 1.1).

Most of the City of Los Angeles' lodging industry is situated in well-known hotel concentrations. Downtown Los Angeles and the

Exhibit 4 Page 68

Repaying Hospitality: Economic Impacts of a Hotel Minimum Wage                                    5

Century Boulevard corridor leading to LAX stand out, along with a swath of mid-city hotels between Century City and Hollywood (Figure 1.2). Other hotel clusters are located in San Pedro, North Hollywood, and Canoga Park.

Among the Los Angeles City Council Districts, the 5th (mid-city), 11th (LAX, plus Westwood and Venice) and 14th (downtown) stand out as having the most hotels with 100 or more rooms (Table 1.2). Every city council district has at least one of these large hotels, and at least 375 rooms potentially affected.

Figure 1.2: Location of Hotels in the City of Los Angeles, by Number of Rooms and City Council District



Source: Economic Roundtable analysis; hotel list compiled by the Los Angeles Alliance for a New Economy.

Table 1.2: Count of Large Hotels and Hotel Rooms by City Council District, City of Los Angeles

| CD | Hotels with 100+ Rooms | | Rooms in Hotels with 100+ Rooms | |
|---|---|---|---|---|
| | Count | Percent | Count | Percent |
| 1 | 3 | 3% | 564 | 2% |
| 2 | 3 | 3% | 587 | 2% |
| 3 | 5 | 6% | 1,149 | 4% |
| 4 | 4 | 5% | 1,203 | 4% |
| 5 | 13 | 15% | 3,524 | 13% |
| 6 | 4 | 5% | 620 | 2% |
| 7 | 3 | 3% | 375 | 1% |
| 9 | 3 | 3% | 1,240 | 4% |
| 10 | 1 | 1% | 385 | 1% |
| 11 | 20 | 23% | 8,673 | 31% |
| 12 | 3 | 3% | 376 | 1% |
| 13 | 5 | 6% | 1,460 | 5% |
| 14 | 16 | 18% | 6,921 | 25% |
| 15 | 4 | 5% | 909 | 3% |
| Total | 87 | 100% | 27,986 | 100% |

Source: Economic Roundtable analysis; hotel list compiled by Los Angeles Alliance for a New Economy. This table includes only hotels with 100 or more rooms located in the City of Los Angeles.

The hotels currently operating in the City of Los Angeles vary in age, with many of the rooms in today's inventory being added in the 1960s through the early 1990s (Figure 1.3). New hotel construction was slowed in the 1990s by the devastating aerospace sector collapse, the accompanying recession that started in July 1990, and a drop-off in the overseas commercial real estate investment that had surged in Los Angeles during the 1980s. Since 1995, 5,450 rooms were added to the city's current inventory, with over 75 percent in larger hotels with 100 or more rooms. Going forward, the new "normal" for the Los Angeles hotel industry may be adding an average of 200 or more new hotel rooms each year. That

Exhibit 4 Page 69

6                                  Repaying Hospitality: Economic Impacts of a Hotel Minimum Wage

Figure 1.3: Year of Construction for Current Hotel Inventory in the City of Los Angeles, by Hotel Size



Source: STR (Smith Travel Research, Inc.). 2013. *2000-2013 Trend Report for the Los Angeles Market Area.*
This chart includes hotels with less than 100 rooms.

said, there are over 2,000 new hotel rooms either under construction or planned for completion in the city by the year 2020.[4]  Furthermore, the City of Los Angeles is coming off of back-to-back records years of tourist visits in 2011 and 2012, with projections of 50 million visitors annually by the year 2020.[5]  While annual growth in Los Angeles' hotel inventory fluctuates, the demand for hotel rooms by customers appears strong, and this can provide stability for implementing the proposed minimum wage ordinance for hotel workers employed at large hotels.

In the balance of Los Angeles County outside of the City of Los Angeles, the hotel room inventory grew on par with the city through the 1960s, but from 1980 to 2010 saw more rooms added than in the city (Figure 1.4).  This is to be expected given that greater population growth took place in the balance of the county than within the city from 1980 to 2010.  While the total population of the City of Los Angeles grew by 824,042 persons in that 30-year span (28 percent), the balance of Los Angeles County grew by 1,516,906 persons (34 percent).[6]  The addition of currently under-construction and planned new hotel room capacity in the balance of Los Angeles County appears likely to continue this trend.

Relocation or cessation of hotel businesses beyond the recent trend in the city of shifting from older, smaller lodging establishments to newer, larger ones appears unlikely given the recent growth and strong performance of the city's hotel industry and regional tourism overall.  Large hotels with 100 or more rooms located in the City of Los Angeles, if covered by a new minimum wage ordinance, are likely to remain in business due to their established competitive

Exhibit 4 Page 70

Repaying Hospitality: Economic Impacts of a Hotel Minimum Wage                    7

Figure 1.4: Age of Current Hotel Room Inventory in the City of Los Angeles and the Balance of Los Angeles County, for Hotels with 100 or More Rooms



Source: STR (Smith Travel Research, Inc.). 2013. *2000-2013 Trend Report for the Los Angeles Market Area.*
This chart excludes hotels with less than 100 rooms.

advantage. This includes their established customer bases, proximity to places of interest in the city (Downtown LA, Hollywood, etc.), niche-neighborhood presence, and existing brand and marketing recognition.

Exhibit 4 Page 71

*1b. Effects of a minimum wage requirement for hotels with 100 or more rooms on the hotel industry in the City of Los Angeles, including the relocation or cessation of any hotels*

A commonly assumed impact of legislated increases in the minimum wage is that, for whichever jurisdiction is affected, businesses located in adjacent areas *outside* of that jurisdictions will benefit from not having to comply with the new minimum wage. For a city such as Los Angeles, with its irregular boundaries and neighbored by numerous smaller cities and unincorporated areas (including a few that it completely surrounds), creating a citywide minimum wage might create an *uneven playing field* that adversely impacts the city's hotels. Is it likely that the proposed minimum wage would encourage hotel customers to stay at hotels located just outside the City of Los Angeles, but near enough for those guests to pursue the same recreational, leisure, or business activities within the city? Or is it likely to encourage hotel customers to stay at smaller hotels with less than 100 rooms in the City of Los Angeles that would not be affected by the proposed ordinance? Is it likely that such customer choices would cause hotel businesses to relocate away from the City, or for hotel properties to go out of business?

One way of assessing the likely impacts of the proposed minimum wage ordinance on large hotels citywide is to review the measurable effects of the Airport Hospitality Enhancement Zone ordinance, examining average wages, employment, and average employees per room before and after it went into effect in July 2008. Among the 13 large hotel properties near LAX affected by that earlier ordinance, *all* are still operating.[7] Although ownership and operator management have changed for some of these hotel properties, their proximity to the airport, large room capacities, and existing land use designations as "hotels," all make them too valuable to close down, even during the recent severe recession.

Since 2003, the average monthly wages of all hotel workers employed in the Airport Hospitality Enhancement Zone rose 15 percent, from $2,334 to $2,683 in constant 2013 dollars (Figure 1.5). This upward wage trend at LAX zone hotels closely follows that of other hotels with 100 or more rooms located elsewhere in the City of Los Angeles, which includes both unionized and non-union hotel properties. The 13 large hotels in the LAX zone had slightly lower average wages than their citywide counterparts at the beginning of the recession, but that gap closed by 2011. Comparatively, the city's hotels with less than 100 rooms and hotels located in the balance of Los Angeles County have notably lower average wages, a trend the predates the 2008 Airport Hospitality Enhancement Zone ordinance. These latter two groups of hotels saw stagnant or declining average wages during the recession.

Between 2003 and June 2008, employment at the LAX zone's 13 large hotels increased 9 percent, or by roughly 285 job positions directly employed at the hotels (Figure 1.6). Citywide, employment at Los Angeles' large hotels grew 6 percent in this period, adding 495 jobs, while hotels in the balance of Los Angeles County grew 18 percent (adding roughly 3,664 jobs). When the LAX Hospitality Zone ordinance went into effect in July 2008, the Great Recession was impacting Los Angeles' hotel business, leading to decreased numbers of overnight visitors and lower overnight visitor spending in 2008 and 2009.[8]   Reflecting this economic downtown, the number of hotel jobs at 13 large hotels in the LAX zone declined 13 percent from July 2008 to the end of 2011, or by roughly 444 job positions directly employed at the hotels. Since July 2008, employment at large hotels with 100 or more rooms in the rest of the city increased

Exhibit 4 Page 72

Repaying Hospitality: Economic Impacts of a Hotel Minimum Wage                    9

Figure 1.5: Average Monthly Wages of Hotel Workers, by Hotel Location, 2003-2011



Figure 1.6: Monthly Hotel Employment, based on Hotel Location, 2003-2011



Source: Economic Roundtable analysis; California Employment Development Department. 2011. *Quarterly Census of Employment and Wages, City of Los Angeles*. Adjusted to first-half 2013 dollars using the *CPI - All Urban Consumers* for LA-Riv.-Or. Co., CA.

Exhibit 4 Page 73

during this same period by 7 percent, with roughly 596 net jobs added.  Hotels with less than 100 rooms located in the city grew at a slightly lower rate in the same period, by 7 percent (303 net jobs added), while hotels located in the balance of Los Angeles County declined by 9 percent (1,733 net jobs lost).

It is worth noting that since 2008, the number of hotels in the 0.22 square mile LAX Zone has not increased beyond the original 13 under that ordinance's jurisdiction, while the rest of the City of Los Angeles has added several new large and small boutique hotels in this period (discussed in report section 1a).  Without new hotel properties being added to the city's overall inventory, the city's large hotels located outside of the LAX Zone also experienced a decline in employment since July 2008.[9]

Interestingly, an earlier difference between the four unionized and nine non-union hotels located within the LAX zone has diminished since the 2008 ordinance went into effect: the ratio of the number of hotel workers employed per hotel room (Figure 1.7).  Among all hotels in the LAX zone – which all have 100 or more rooms, there is a range of 0.39 to 0.49 hotel workers per room.  Since the recent recession and the 2008 ordinance went into effect, the ratios for both union and non-union hotels in the LAX zone have declined slightly, and resemble each other more than in the period before 2008.

Figure 1.7: Monthly Hotel Employment per Number of Hotel Rooms in the LAX Zone, 2003-2011



Source: Economic Roundtable analysis; California Employment Development Department. 2011. *Quarterly Census of Employment and Wages, City of Los Angeles.*

Exhibit 4 Page 74

Repaying Hospitality: Economic Impacts of a Hotel Minimum Wage                11

Figure 1.8: Annual Hotel Openings and Closures in the City of Los Angeles, 1989-2012



Source: STR (Smith Travel Research, Inc.). 2013. *2000-2013 Trend Report for the Los Angeles Market Area*.

　　　While the 13 hotels covered by the 2008 Airport Hospitality Enhancement Zone ordinance have stayed in continuous operation, business failures are nonetheless a regular occurrence in any industry. Since 1998, 82 hotels have shuttered operations in the City of Los Angeles, while 65 new hotels have started up (Figure 1.8). Part of this turnover of the city's hotel inventory represents older, smaller hotels being replaced by newer, larger ones, but in some cases it also represents hotel properties and investments shifting from declining neighborhoods to aspiring ones. This turnover and change in the City of Los Angeles hotel industry is ongoing part of the economy and would continue if the proposed minimum wage ordinance is enacted.

Exhibit 4 Page 75

*1c. Comparison of occupancy rates and revenue for hotels located in Los Angeles and other major US Cities in LA's competitive set: New York, Las Vegas, San Francisco, San Diego and Phoenix. What does this indicate about the Los Angeles' ability to retain and attract new hotel business with a living wage for hotels?*

Occupancy rates at Los Angeles Hotels (75 percent in 2012) compare favorably with those of its "competitive set," major urban centers with significant tourism business. Los Angeles hotel occupancy trailed New York (84 percent) and San Francisco (80 percent) in 2012, but has rebounded strongly from the Great Recession (December 2007 to June 2009, officially), exceeding its mid-2000's high water mark of 75 percent. San Francisco's lowest occupancy rates followed the "Dot.com" recession (March 2001 to November 2001), falling as low as 61 percent. San Diego's hotel occupancy rate most closely resembles Los Angeles' over time, but has fallen off to 71 percent, almost five percentage points below Los Angeles. Las Vegas (62 percent) and Phoenix (58 percent) have significantly lower hotel occupancy rates than Los Angeles, and in 2012, both experienced declines (Figure 1.9).

Figure 1.9: Comparative Hotel Occupancy Rates for Los Angeles and Five Major U.S. Cities



Source: STR (Smith Travel Research, Inc.). 2013. *Trend Reports for Los Angeles, New York, Las Vegas, San Francisco, San Diego and Phoenix Market Areas.*

Total room revenues generated from the rental of hotel rooms is another means of comparing Los Angeles to its competitive set. On this metric, Los Angeles and the rest of the nation trail New York, which has experienced a long recovery from an abrupt decline after 9/11, albeit with a significant dip during the Great Recession. New York currently generates $7.9 billion annually from 75,654 hotel rooms, over twice as much as Los Angeles' $3.5 billion from 93,749 rooms. Since 2009, Las Vegas has been Los Angeles' peer in hotel revenue, and in 2012 generated $3.6 from its 140,956 rooms. San Francisco ($2.6 billion from 48,623 rooms), San

Exhibit 4 Page 76

Figure 1.10: Comparative Hotel Revenue for Los Angeles and Five Major U.S. Cities



Source: STR (Smith Travel Research, Inc.). 2013. *Trend Reports for Los Angeles, New York, Las Vegas, San Francisco, San Diego and Phoenix Market Areas.* Dollars represent billions of regional aggregate hotel revenue.

Diego (just under $2 billion from 48,216 rooms) and Phoenix ($1.4 billion from 51,883 rooms) form the next lower tier of competitors (Figure 1.10).

Revenue per available hotel room – sold or unsold (RevPAR) – is an insightful statistic, and Los Angeles hotels averaged $98 in 2012. San Diego similarly averaged $93 in revenue per

Figure 1.11: Comparative Hotel Revenue per Available Room for Los Angeles and Five Major U.S. Cities



Source: STR (Smith Travel Research, Inc.). 2013. *Trend Reports for Los Angeles, New York, Las Vegas, San Francisco, San Diego and Phoenix Market Areas.*

Exhibit 4 Page 77

available room, and both trailed New York ($210 per available room) and San Francisco ($138 per available room) significantly.  Phoenix ($61) and Las Vegas ($59) trailed the pack, although the latter subsidizes its hotel room rates with revenues gained from casino gambling and live entertainment, which are charged separately from rooms (Figure 1.11).

Hotels' average daily rates (ADR), which is equal to room revenue divided by the number of rooms sold, is a further measure of realized revenue potential.  Los Angeles hotels earned $130 per room sold in 2012, which was again very comparable to San Diego ($132 per room sold).  Both are seeing modest recoveries after the Great Recession, with Los Angeles surpassing its earlier peak ADR ($129 per room sold in 2008).  New York's 2012 ADR of $251 is the nation's highest, although it is leveling off at a rate lower than its pre-Great Recession peak ($276 per room sold in 2008).  San Francisco's ($172 per room sold) exceeded Los Angeles' rate, while Phoenix ($106 per room sold) and Las Vegas ($95 per room sold) trailed Los Angeles and were still short of their pre-recession peaks (Figure 1.12).

Figure 1.12: Comparative Hotel Average Daily Rates for Los Angeles and Five Major U.S. Cities



Source: STR (Smith Travel Research, Inc.). 2013. Trend Reports for Los Angeles, New York, Las Vegas, San Francisco, San Diego and Phoenix Market Areas.

While these four hotel business trends – occupancy, revenue, revenue per available room, and average daily rates – fluctuate over time, each region's overall inventory of hotel rooms is changing as well.  With hotel construction projects started in the early 2000's, hotel room inventories have risen amongst several of Los Angeles' competitors.  Since January 2000, Los Angeles has added a modest 3,218 hotel rooms, a three percent increase.  Meanwhile, New York has added 30,038 hotel rooms, a 40 percent increase that enable it to surpass Los Angeles' capacity in November 2010.  In the same time span, Las Vegas has added 28,315 hotel rooms (a 20 percent increase since 2000), San Diego added 10,156 hotel rooms (a 21 percent increase),

Exhibit 4 Page 78

Repaying Hospitality: Economic Impacts of a Hotel Minimum Wage                    15

Phoenix added 10,107 hotel rooms (a 19 percent increase), and San Francisco added 2,651 hotel rooms (a 5 percent increase) (Figure 1.13).

Figure 1.13: Comparative Regional Hotel Room Inventories for Los Angeles and Five Major U.S. Cities



Source: STR (Smith Travel Research, Inc.) 2013. *Trend Reports for Los Angeles, New York, Las Vegas, San Francisco, San Diego and Phoenix Market Areas.*

Los Angeles' recent hotel business growth trends have been built upon a relatively unchanged net inventory of hotel rooms.  However, as mentioned earlier, this situation will change over the next five years with eight new hotels currently under construction or planned for completion by the year 2020.  This represents 2,846 new hotel rooms in the City of Los Angeles, 63 percent of the 4,508 new hotel rooms expected to open countywide.[10]  Once completed and opened for business, Los Angeles' countywide hotel room inventory will exceed one hundred thousand for the first time in its history, and amount to an 8.2 percent increase since 2000.

Available information indicates that large hotels citywide can sustain this growth while also providing a living wage for hotel workers, given that:

- Hotel *occupancy* and *revenue* rates have already recovered from the effect of the recent Great Recession, demonstrating strong and growing demand at the same time that some of Los Angeles' competitors struggle.

- Profitability – measured by *revenue per available room* and *average daily rates* – is climbing for Los Angeles hotels.

Exhibit 4 Page 79

- The number of new hotel rooms under construction or planned demonstrates the belief of property developers that the Los Angeles hotel market will continue to grow.

- Local and national tourism experts predict substantial growth in the number of visitors coming to Los Angeles in the coming years, with 50 million visitors projected by the year 2020.[11]

- Twenty one hotels in the City of Los Angeles, with over 10,000 combined rooms, are unionized and already paying living wages with good benefits.

- Nine hotels covered under the 2008 Airport Hospitality Enhancement Zone ordinance but not unionized, with over 4,500 combined rooms, are also paying living wages with good benefits.

- Developers of new hotels are increasingly negotiating project agreements with the City of Los Angeles that include unionization pacts, ensuring that more hotel employees will earn living wages and benefits.

- New York hotels have the highest occupancy, revenue, revenue per available room, and average daily rates, but also have among the highest average wage rates for hotel workers, as presented in the next section of the report.

All of these trends indicate that the Los Angeles region is retaining and attracting new hotel business with the capability to also pay hotel workers a living wage.

Exhibit 4 Page 80

## 2. Current Hotel Worker Wages

*2a. Wage Rates for Hotel Workers Employed in the City of Los Angeles, by Occupation*

Across all hotels located in the City of Los Angeles, workers are employed in a variety of job positions, but there are eleven hotel occupations with at least a thousand employed at a given time. Foremost among these are *Maids and Housekeepers* with over 10,000 employed in city hotels, followed by *Desk Clerks* (3,600) and *Waiters and Waitresses* (3,510).[12] The large number of workers employed in the city's eleven largest hotel occupations allows the use American Community Survey data *reported by workers themselves*, and therefore includes those working informally ("off-the-books"), with some possibly paid less than the current statewide minimum wage of $8.00 an hour. These data, while insightful, are not reliable for other hotel occupations with fewer workers, and include workers at hotels with less than 100 rooms.

Hotel worker wages in the City of Los Angeles vary from *Maids and Housekeepers* earning an average of $9.03 per hour to *Lodging Managers* earning $17.12 per hour (Figure 2.1). *Desk Clerks* ($11.17 per hour), *Janitors and Building Cleaners* ($11.44 per hour), *Parking Lot Attendants* ($11.49 per hour), *Baggage Porters, Bellhops, and Concierges* ($12.03 per hour) and hotel *Restaurant Cooks* ($13.31 per hour) also have average wages at the low end of the industry range. These data include both unionized as well as non-union hotels, so wages for workers employed at the latter are more likely to be below these citywide occupational averages. The "*Other Hotel Industry Occupations*" in the last bar of Figure 2.1 represent less numerous management-level occupations, as well as those involved in advertising and promotion, billing, reservations, payroll and human resources, many with wage rates above the proposed minimum wage.



**Figure 2.1: Hotel Industry Average Wage Rates, by Occupation, City of Los Angeles (Adj. to 2013 dollars)**

| Occupation | Hourly Wage Rate |
|---|---|
| Parking Lot Attendants | $11.49 |
| Hotel, Motel, and Resort Desk Clerks | $11.17 |
| Baggage Porters, Bellhops, and Concierges | $12.03 |
| Janitors and Building Cleaners | $11.44 |
| Maids and Housekeeping Cleaners | $9.03 |
| Misc Dining Room and Cafeteria Attendants and Bartender Helpers | $14.01 |
| Food Servers, Nonrestaurant | $14.53 |
| Waiters and Waitresses | $15.37 |
| Bartenders | $16.16 |
| Cooks, Restaurant | $13.31 |
| Lodging Managers | $17.12 |
| (All Other Hotel Industry Occupations) | $18.67 |

Source: U.S. Census Bureau. 2013. *American Community Survey, 5-Year Public Use Microdata Sample (PUMS), 2007-2011.* Adjusted to first-half 2013 dollars using the *CPI - All Urban Consumers* for LA-Riverside-Orange Co., CA.

Exhibit 4 Page 81

*2b. Wage Differences between Unionized and Non-Unionized Hotels in the City of Los Angeles*

Labor unions organize workers so that they can collectively bargain for a legal contract with employers, which includes wage and benefit standards. In the City of Los Angeles, how has unionizing affected current hotel employee wages? Citywide, there are currently 23 unionized hotels with 100 or more rooms (four of which are located in the LAX zone).[13] This report section compares current wages of workers employed in the city's 23 unionized hotels with 64 non-union hotels also located in the City of Los Angeles, all with 100 or more rooms.

In 2011, average monthly wages for all employees in large, unionized hotels were $3,441 per month, while the comparable large, non-union hotels paid an average of $2,436 per month (Figure 2.2). The hourly wage rate equivalents are $19.85 per hour for workers at unionized hotels, $14.06 per hour for workers at non-unionized hotels; the annual wage equivalents are $36,209 yearly for workers at unionized hotels, $25,637 for workers at non-unionized hotels, assuming full time hours. In the City of Los Angeles, employees at unionized hotels earn 141 percent of the wages earned by their counterparts at non-unionized hotels. This exceeds the nationwide, private sector wage differential between unionized and non-unionized workers of 118 percent in 2011.[14]

Figure 2.2: Average Monthly Wages for All Employees in Unionized and Non-Unionized Hotels with 100 or More Rooms, City of Los Angeles, in 2013 Dollars



Source: Economic Roundtable analysis; California Employment Development Department, 2011. *Quarterly Census of Employment and Wages*, City of Los Angeles. Due to data limitations, all local hotel employees are included in the average monthly wages, from managers to housekeepers. All wages adjusted to first-half 2013 dollars using the *Consumer Price Index - All Urban Consumers* for Los Angeles-Riverside-Orange County, CA.

Exhibit 4 Page 82

*2c. Comparative Hotel Wage Rates for the City of Los Angeles and Other Major Destinations*

How do wage rates for hotel workers in the City of Los Angeles compare to those elsewhere, such as those in the balance of Los Angeles County and the state California, as well as other major cities such as New York, Las Vegas, San Francisco, San Diego and Phoenix?[15] For hotel occupations with the most workers, the City of Los Angeles ranks near the bottom, and is competing with Phoenix for the lowest hourly wages offered in four out of five occupations shown in Figure 2.3. Comparatively, New York City and Las Vegas typically pay the highest hourly wages for these occupations. (For detailed average hourly and annual wages for 20 occupations employed in hotels, see Data Appendix Tables 1 and 2.)

Figure 2.3: Comparative Average Hourly Wage Rates for Select Occupations in the Hotel Industry



Source: U.S. Census Bureau. 2013. *American Community Survey, 5-Year Public Use Microdata Sample (PUMS), 2007-2011*. All wages adjusted to first-half 2013 dollars using the *Consumer Price Index - All Urban Consumers* for Los Angeles-Riverside-Orange County, CA.

Among *Maids and Housekeeping Cleaners* employed in hotels, those in Phoenix earn $7.73 per hour and those in Los Angeles earn $9.03 per hour. Those in the rest of Los Angeles County earned $9.52 per hour, while *Maids and Housekeeping Cleaners* statewide averaged $9.65 per hour. New York City ($21.14 per hour) and Las Vegas ($13.29 per hour) were the only areas with a wage rate over $10.

*Janitors and Building Cleaners* employed in hotels have wages rates starting at $11 per hour, starting in Phoenix, where these workers earn an average of $11.14. The City of Los

Exhibit 4 Page 83

Angeles is the next lowest for these workers, at $11.44, followed by those in San Francisco hotels ($11.91 per hour). Those employed in San Diego earn $12.30 per hour, slightly higher than the rest of Los Angeles County ($11.93) and the state of California as a whole ($11.94). Again, *Janitors and Building Cleaners* employed in New York hotels ($17.08 per hour) and Las Vegas ($13.70 per hour) had the highest average wages.

 *Dining Room Attendants and Bartender Helpers* – including workers engaged in hotels' function room service – fare better in the City of Los Angeles ($14.01 per hour), the rest of Los Angeles County ($14.49 per hour) and California as a whole ($13.03 per hour) compared to San Diego ($9.47 per hour) and Phoenix ($7.68 per hour). *Dining Room Attendants and Bartender Helpers* employed in New York ($17.14 per hour) and Las Vegas ($13.83 per hour) hotels once again have the highest average wage rates.

 *Baggage Porters, Bellhops, and Concierges* earn $12.03 per hour in the City of Los Angeles hotels, the lowest rate among all those compared except for Phoenix hotels ($11.06 per hour). The highest wages are found in New York hotels ($18.40 per hour), followed by hotels located elsewhere in Los Angeles County ($18.06 per hour). Hotel *Baggage Porters, Bellhops, and Concierges* employed in the other comparison areas earn between $14.19 (California statewide) and $16.29 (Las Vegas) per hour.

 *Hotel, Motel, and Resort Desk Clerks* in the City of Los Angeles earn $11.17 per hour, the second lowest after Phoenix ($10.52 per hour). Those working in Las Vegas earn the most ($14.98 per hour), followed by New York ($14.11 per hour). Other *Hotel, Motel, and Resort Desk Clerks* studied receive wages from $11.43 (San Diego) to $13.04 (San Francisco) an hour.

Exhibit 4 Page 84

## 3. Economic Impacts of the Proposed Minimum Wage Ordinance

### 3a. Current Economic Impacts of Hotel Worker Wages

The economic impacts of hotel workers in the City of Los Angeles are measured by the amount of household spending that their current wages allow. We utilize an input-output model of the City of Los Angeles' economy for estimating the local economic impacts of this household spending, using IMPLAN software and regional accounts data:

Table 3.1: Economic Impacts of Current Hotel Worker Wages, City of Los Angeles, in 2013 Dollars

| Hotel Workers' Household Wage Ranges | Distribution of Hotel Workers | Est. Aggregate Annual Wages | Economic Impacts of Current Worker Wages | | | |
|---|---|---|---|---|---|---|
| | | | Induced Jobs | Induced Labor Income | Induced Value Added | Induced Output (sales) |
| < $10k/year | 2.90% | $2,090,688 | 17.6 | $898,172 | $1,577,273 | $2,448,579 |
| $10-$15k/year | 1.90% | $1,780,690 | 14.3 | $764,440 | $1,334,901 | $2,082,502 |
| $15-$25k/year | 8.70% | $12,544,131 | 92.9 | $4,907,745 | $8,637,020 | $13,392,036 |
| $25-$35k/year | 12.80% | $27,683,598 | 228.8 | $11,935,000 | $20,780,702 | $32,518,442 |
| $35-$50k/year | 19.50% | $59,746,829 | 501.4 | $25,966,134 | $45,083,891 | $70,228,909 |
| $50-$75k/year | 19.80% | $89,214,722 | 702.2 | $36,679,553 | $64,768,218 | $101,049,520 |
| $75-$100k/year | 14.20% | $89,575,185 | 668.6 | $34,656,053 | $61,669,186 | $95,962,305 |
| $100-$150k/year | 13.60% | $122,557,597 | 632.1 | $32,430,536 | $57,727,880 | $89,899,898 |
| $150k+ /year | 6.50% | $93,720,516 | 437.9 | $22,250,200 | $39,076,942 | $61,196,014 |
| **Total** | **100.00%** | **$498,913,955** | **3,296.0** | **$170,487,833** | **$300,656,013** | **$468,778,203** |

Source: Economic Roundtable analysis; U.S. Census Bureau. 2013. *American Community Survey, 5-Year Public Use Microdata Sample (PUMS), 2007-2011*; U.S. Census Bureau. 2013. *Los Angeles County, California: 2011 County Business Patterns (NAICS)* [Table]; Minnesota IMPLAN Group, Inc., IMPLAN System 2011 data ("County Plus Package") and 2013 software.

The aggregate annual wage of all hotel workers in the City of Los Angeles is $499 million (Table 3.1). When workers take these earnings home, their household spending supports the equivalent of 3,296 local, year-round jobs and $468.8 million in local sales. These *induced* jobs and sales are dispersed throughout the local economy (Figure 3.1),[16] where the consumption of goods and services by hotel workers' households generates demand for:
  • Grocery & Retail Stores
  • Eating and Drinking Places
  • Hospitals & Doctors' Offices
  • Automotive Dealers and Repair
  • Amusement and Recreation
  • Nursing and Protective Care
  • Rent and Mortgage Payments

Figure 3.1: Worker Household Spending Patterns.



Source: Economic Roundtable illustration based on the IMPLAN input-output model and national household survey data. Minnesota IMPLAN Group, Inc., IMPLAN System 2011 data and 2013 software.

Exhibit 4 Page 85

*3b. Economic Impacts if a Citywide $15.37 per Hour Minimum Wage is Enacted*

If the City of Los Angeles enacts a new $15.37 per hour minimum wage for employees of hotels with 100 or more rooms,[17] added economic impacts will come from increased wages paid to hotel workers currently earning less than this proposed rate. The *affected* workers fall into two distinct groups in our analysis:

A.  Those employed at nine non-union hotels with 100 or more rooms and located inside of the city's Airport Hospitality Enhancement Zone currently earning at least $12.16 per hour due to that 2008 ordinance, but less than $15.37 per hour. There are approximately 2,007 workers employed at these nine hotels (Table 3.2), with a subset currently earning less than $15.37 per hour. (See Data Appendix 3 for a list of hotels in these groups.)

B.  Those employed at non-union hotels with 100 or more rooms and located *outside* of the Airport Hospitality Enhancement Zone, currently earning at least $8.00 per hour (the statewide minimum wage), but less than $15.37 per hour. There are approximately 4,540 workers employed at 55 hotels in this category (Table 3.2), with a subset currently earning less than $15.37 per hour.

Hotel workers *unaffected* by the proposed ordinance would comprise three additional groups:

C.  Those employed at smaller hotels in the City of Los Angeles with less than 100 rooms. There are approximately 4,693 workers employed at 240 hotels in this category (Table 3.2) and they would not be covered by the proposed ordinance.

D.  Those employed in the City of Los Angeles' larger hotels with 100 or more rooms that are also unionized, since all of these workers already have wages at or above $15.37 per hour. There are 23 of these large hotel properties in the city (four of which are located in the Airport Hospitality Enhancement Zone),[18] employing approximately 5,995 total workers (Table 3.2).

E.  All other hotel workers already earning $15.37 per hour or more. This category includes workers at non-unionized hotels with 100 or more rooms, but working in management, supervisory or professional job occupations. These occupations can include general operations and sales managers, food service managers, human resources and training specialists, meeting and convention planners, security supervisors, chefs and head cooks.

Table 3.2: Number of Hotel Employees in the City of Los Angeles, by Hotel Room Size, Union Status, and Whether Located in the Airport Hospitality Enhancement Zone

|  | 100+ Room Hotels | Under 100 Rooms | Total |
|---|---|---|---|
| Unionized, All | 5,995 | 0 | 5,995 |
| Non-Union, in LAX Zone | 2,007 | 0 | 2,007 |
| Non-Union, non-LAX | 4,540 | 4,693 | 9,233 |
| Total | 12,542 | 4,693 | 17,235 |

Source: Economic Roundtable analysis; California Employment Development Department, 2011. *Quarterly Census of Employment and Wages, City of Los Angeles*; U.S. Census Bureau. 2013. *Los Angeles Co., CA: 2011 County Business Patterns (NAICS)* [Table].

The following report sections calculate the aggregate, citywide increase in wages needed to bring hotel workers in Groups A and B up to $15.37 per hour, separating out hotel workers in group E who already earn more that this proposed minimum wage.

Exhibit 4 Page 86

*Group A: Workers at Nine Large, Non-Union Hotels in the LAX Zone*

Hotel workers employed at nine large, non-union hotels located along Century Boulevard near Los Angeles International Airport[19] would be among those affected by the proposed citywide minimum wage ordinance, if they earn less than $15.37 per hour. Even though these 2,007 workers are already under the jurisdiction of the 2008 Airport Hospitality Enhancement Zone, which currently sets a wage floor of $12.16 per hour,[20] the newly proposed *citywide* ordinance would add up to $3.21 per hour more to some of these workers' pay.

How many would be affected by the proposed ordinance? Using an industry-occupation matrix for Los Angeles as a composite guide,[21] approximately 1,623 (81 percent) of hotel workers in Group A earn wages between $12.16 and $15.37 per hour, not counting any informal, off-the-books workers that may earn lower wages.[22] These lowest paid hotel workers employed at the city's nine large, non-union hotels in the LAX zone are employed in several different occupations shown in Table 3.3. Their average hourly rates are the equivalent of annual earnings starting at $22,180 in 2013, assuming that hotel employees work 1,824 hours per year – the average for hotel workers in Los Angeles.[23] As a point of comparison, the 2012 federal poverty threshold for a family of four with three children was $23,364 in annual income.[24] The proposed new minimum annual wage for hotels with 100 or more rooms in the City of Los Angeles is $28,035 ($15.37 per hour, multiplied by 1,824 annual work hours).

If all the approximately 1,623 workers currently earning less than $28,035 per year at the nine large, non-union hotels in the LAX zone got a raise in pay to that new wage floor, it would bring significant additional *induced* economic impacts to their communities, as discussed in the report section 3a. Their aggregate wage increase would add up to $10.3 million dollars per year, with increases varying from $90 to $5,800 in annual pay per worker affected. Table 3.3 shows the total and disaggregated annual wage increase amounts for the 35 hotel occupations that would be affected by this raise, along with the estimated number of affected workers and the aggregate annual wage increases. For each occupation in the table, the aggregate annual wage increase is computed as follows:

$$\substack{\textbf{Aggregate}\\\textbf{Annual}\\\textbf{Wage}\\\textbf{Increase}} = \left( \substack{\text{Proposed}\\\text{Minimum}\\\text{Hourly Wage}\\(\$15.37)} - \substack{\text{Current}\\\text{Hourly}\\\text{Wage}} \right) \times \substack{\text{Average}\\\text{Hours}\\\text{Worked}\\\text{per Year}\\(1,824)} \times \substack{\text{Estimated}\\\text{Number}\\\text{of Job}\\\text{Positions}}$$

Exhibit 4 Page 87

Table 3.3: Current and Proposed Wages for 1,623 Affected Hotel Workers Employed within the City of Los Angeles' Airport Hospitality Enhancement Zone (Group A), by 35 Detailed Occupation

| SOC Code | Occupational Title | Est. Jobs | Current Mean Hourly Wage | Current Mean Annual Wages | Proposed Minimum Annual Wage | Annual Wage Increase Amt. | Aggregate Annual Wage Increase |
|---|---|---|---|---|---|---|---|
| 33-9032 | Security Guards | 25 | $13.32 | $24,300 | | $3,735 | $93,306 |
| 35-2012 | Cooks, Institution & Cafeteria | 4 | $14.31 | $26,104 | | $1,931 | $8,040 |
| 35-2014 | Cooks, Restaurant | 76 | $15.13 | $27,595 | | $440 | $33,427 |
| 35-2015 | Cooks, Short Order | 26 | $14.11 | $25,736 | | $2,299 | $59,830 |
| 35-2021 | Food Preparation Workers* | 12 | $12.16 | $22,180 | | $5,855 | $84,592 |
| 35-3011 | Bartenders | 51 | $13.06 | $23,821 | | $4,214 | $214,911 |
| 35-3021 | Combined Food Prep., Serving Workers* | 26 | $12.16 | $22,180 | | $5,855 | $243,298 |
| 35-3022 | Coffee Shop, Concession Attendants* | 8 | $12.16 | $22,180 | | $5,855 | $62,066 |
| 35-3031 | Waiters & Waitresses* | 183 | $12.16 | $22,180 | $28,035 per year | $5,855 | $1,062,295 |
| 35-3041 | Food Servers, Non-Restaurant* | 50 | $12.16 | $22,180 | | $5,855 | $296,980 |
| 35-9011 | Dining Room & Cafeteria Attendants* | 61 | $12.16 | $22,180 | | $5,855 | $444,174 |
| 35-9021 | Dishwashers* | 47 | $12.16 | $22,180 | ($15.37 per hour x 1,824 annual work hours, the LA City hotel industry average) | $5,855 | $325,104 |
| 35-9031 | Hosts/Hostesses, Restaurant & Lounge | 26 | $12.37 | $22,569 | | $5,466 | $139,378 |
| 35-9099 | Other Food Prep., Serving Workers* | 4 | $12.16 | $22,180 | | $5,855 | $24,337 |
| 37-2011 | Janitors & Cleaners* | 75 | $12.16 | $22,180 | | $5,855 | $648,607 |
| 37-2012 | Maids & Housekeeping Cleaners* | 536 | $12.16 | $22,180 | | $5,855 | $4,202,757 |
| 37-3011 | Landscaping & Groundskeeping Workers | 6 | $12.96 | $23,637 | | $4,398 | $25,177 |
| 39-3091 | Amusement & Recreation Attendants* | 6 | $12.16 | $22,180 | | $5,855 | $53,638 |
| 39-3093 | Coatroom, & Dressing Room Attendants | 6 | $12.39 | $22,606 | | $5,429 | $33,903 |
| 39-5092 | Manicurists & Pedicurists* | 6 | $12.16 | $22,180 | | $5,855 | $63,450 |
| 39-6011 | Baggage Porters & Bellhops* | 36 | $12.16 | $22,180 | | $5,855 | $294,765 |
| 39-6012 | Concierges | 15 | $14.03 | $25,588 | | $2,446 | $35,651 |
| 39-9032 | Recreation Workers* | 6 | $12.16 | $22,180 | | $5,855 | $50,919 |
| 41-2011 | Cashiers* | 14 | $12.16 | $22,180 | | $5,855 | $80,930 |
| 43-2011 | Answering Service Operators | 19 | $13.79 | $25,147 | | $2,888 | $55,617 |
| 43-3031 | Bookkeeping & Accounting Clerks | 32 | $15.32 | $27,945 | | $90 | $2,909 |
| 43-4081 | Hotel, Motel & Resort Desk Clerks* | 187 | $12.16 | $22,180 | | $5,855 | $1,172,310 |
| 43-4171 | Receptionists & Information Clerks | 3 | $13.13 | $23,950 | | $4,085 | $12,755 |
| 43-5071 | Shipping, Receiving, & Traffic Clerks | 2 | $14.21 | $25,920 | | $2,115 | $4,403 |
| 43-5081 | Stock Clerks & Order Fillers | 3 | $13.03 | $23,766 | | $4,269 | $11,109 |
| 43-9061 | Office Clerks, General | 9 | $14.41 | $26,288 | | $1,747 | $15,456 |
| 51-3011 | Bakers | 1 | $15.32 | $27,945 | | $90 | $94 |
| 51-6011 | Laundry & Dry-Cleaning Workers* | 34 | $12.16 | $22,180 | | $5,855 | $272,695 |
| 53-3041 | Shuttle Drivers & Chauffeurs* | 7 | $12.16 | $22,180 | | $5,855 | $53,916 |
| 53-6021 | Parking Lot Attendants* | 19 | $12.16 | $22,180 | | $5,855 | $155,515 |
| Totals | | 1,623 | | | | | $10,338,316 |

Source: Economic Roundtable analysis; California Employment Development Department, Labor Market Information Division, *Industry-Occupation Matrix 2011/2012 for Los Angeles County* (developed in cooperation with the Bureau of Labor Statistics). All wages adjusted to first-half 2013 dollars using the *Consumer Price Index - All Urban Consumers* for Los Angeles-Riverside-Orange County, CA. Data for all hotels in Los Angeles County are used as a proxy for the occupational employment and wage distribution within the City of Los Angeles's current non-union hotels with 100 or more rooms, since data from the American Community Survey (used in Section 2a of this report) is not detailed or reliable enough for all 35 hotel occupations to be used for this purpose. Computations in table reflect decimal values not shown, with rounding of cell values accounting for errors. * Indicates occupations with wages affected by the 2008 Airport Hospitality Enhancement Zone, but which have lower average wages elsewhere in Los Angeles.

Exhibit 4 Page 88

*Group B: Workers at 55 Large, Non-Union Hotels outside the LAX Zone*

Another, larger group of hotels (and workers) to be affected if the proposed minimum wage ordinance is passed are non-union hotels with 100 or more rooms, located in the City of Los Angeles but *outside* of the Airport Hospitality Enhancement Zone. There are approximately 4,540 total workers employed at the 55 hotels in this group and 3,670 (81 percent) of them currently earn wages under $15.37 per hour.[25]

Under the proposed ordinance, the aggregate wage increase needed for workers employed at Group B hotels will be greater than for the workers employed in Group A hotels because more potentially affected hotel workers are located *outside* the LAX zone, and their current wage floor is lower, equal to the statewide minimum wage of $8.00 per hour. Again using an industry-occupation matrix for Los Angeles to estimate the numbers employed in each, these potentially affected hotel workers have average hourly wages ranging from $9.80 to $15.32 occupation (Table 3.4). These hourly rates are the equivalent of annual earnings from $17,875 to $27,945, assuming that hotel employees work the City of Los Angeles hotel industry average of 1,824 hours per year.

If the proposed minimum wage ordinance passes and the pay of all of the approximately 3,670 hotel workers currently earning less than $15.37 per hour is increased to the new wage floor, there would be a substantial boost to their households' standard of living. Their collective wage increase would add up to $23.4 million dollars per year and would bring significant additional *induced* economic impacts to their communities, as explained earlier. Table 3.4 shows the disaggregated annual wage increase amounts for the 35 hotel occupations that would be affected by this raise, along with the estimated number of affected workers and their aggregate annual wage increases. For each occupation in table 3.4, the aggregate annual wage increase is computed as follows:

$$\begin{array}{c}\text{Aggregate}\\\text{Annual}\\\text{Wage}\\\text{Increase}\end{array} = \left(\begin{array}{c}\text{Proposed}\\\text{Minimum}\\\text{Hourly Wage}\\(\$15.37)\end{array} - \begin{array}{c}\text{Current}\\\text{Hourly}\\\text{Wage}\end{array}\right) \times \begin{array}{c}\text{Average}\\\text{Hours}\\\text{Worked}\\\text{per Year}\\(1,824)\end{array} \times \begin{array}{c}\text{Estimated}\\\text{Number}\\\text{of Job}\\\text{Positions}\end{array}$$

Exhibit 4 Page 89

Table 3.4: Current and Proposed Wages for 3,670 Affected Hotel Workers Employed in the City of Los Angeles but outside the LAX Zone (Group B), by 35 Detailed Occupation

| SOC Code | Occupational Title short | Est. Jobs | Current Mean Hourly Wage | Current Mean Annual Wage | Proposed Minimum Annual Wage | Annual Wage Increase Amt. | Aggregate Annual Wage Increase |
|---|---|---|---|---|---|---|---|
| 33-9032 | Security Guards | 57 | $13.32 | $24,300 | | $3,735 | $211,051 |
| 35-2012 | Cooks, Institution & Cafeteria | 9 | $14.31 | $26,104 | | $1,931 | $18,185 |
| 35-2014 | Cooks, Restaurant | 172 | $15.13 | $27,595 | | $440 | $75,609 |
| 35-2015 | Cooks, Short Order | 59 | $14.11 | $25,736 | | $2,299 | $135,330 |
| 35-2021 | Food Preparation Workers | 28 | $11.66 | $21,262 | | $6,773 | $191,340 |
| 35-3011 | Bartenders | 115 | $13.06 | $23,821 | | $4,214 | $486,111 |
| 35-3021 | Combined Food Prep., Serving Workers | 59 | $10.24 | $18,685 | | $9,350 | $550,319 |
| 35-3022 | Coffee Shop, Concession Attendants | 19 | $11.28 | $20,581 | | $7,454 | $140,389 |
| 35-3031 | Waiters & Waitresses | 413 | $12.18 | $22,220 | | $5,815 | $2,402,824 |
| 35-3041 | Food Servers, Non-Restaurant | 113 | $12.11 | $22,091 | | $5,944 | $671,745 |
| 35-9011 | Dining Room & Cafeteria Attendants | 139 | $11.40 | $20,802 | | $7,233 | $1,004,685 |
| 35-9021 | Dishwashers | 107 | $11.61 | $21,170 | $28,035 per year | $6,865 | $735,359 |
| 35-9031 | Hosts/Hostesses, Restaurant & Lounge | 58 | $12.37 | $22,569 | | $5,466 | $315,262 |
| 35-9099 | Other Food Prep., Serving Workers | 8 | $11.71 | $21,354 | | $6,681 | $55,049 |
| 37-2011 | Janitors & Cleaners | 171 | $10.66 | $19,440 | ($15.37 per hour X 1,824 annual work hours, the LA City hotel industry average) | $8,595 | $1,467,095 |
| 37-2012 | Maids & Housekeeping Cleaners | 1,212 | $11.07 | $20,195 | | $7,840 | $9,506,289 |
| 37-3011 | Landscaping & Groundskeeping Workers | 13 | $12.96 | $23,637 | | $4,398 | $56,947 |
| 39-3091 | Amusement & Recreation Attendants | 16 | $11.33 | $20,673 | | $7,362 | $121,324 |
| 39-3093 | Coatroom, & Dressing Room Attendants | 14 | $12.39 | $22,606 | | $5,429 | $76,687 |
| 39-5092 | Manicurists & Pedicurists | 14 | $9.80 | $17,875 | | $10,160 | $143,519 |
| 39-6011 | Baggage Porters & Bellhops | 81 | $10.87 | $19,826 | | $8,208 | $666,734 |
| 39-6012 | Concierges | 33 | $14.03 | $25,588 | | $2,446 | $80,639 |
| 39-9032 | Recreation Workers | 14 | $10.90 | $19,882 | | $8,153 | $115,174 |
| 41-2011 | Cashiers | 31 | $12.09 | $22,054 | | $5,981 | $183,058 |
| 43-2011 | Answering Service Operators | 44 | $13.79 | $25,147 | | $2,888 | $125,802 |
| 43-3031 | Bookkeeping & Accounting Clerks | 73 | $15.32 | $27,945 | | $90 | $6,580 |
| 43-4081 | Hotel, Motel, & Resort Desk Clerks | 424 | $11.94 | $21,778 | | $6,257 | $2,651,668 |
| 43-4171 | Receptionists & Information Clerks | 7 | $13.13 | $23,950 | | $4,085 | $28,852 |
| 43-5071 | Shipping, Receiving, & Traffic Clerks | 5 | $14.21 | $25,920 | | $2,115 | $9,960 |
| 43-5081 | Stock Clerks & Order Fillers | 6 | $13.03 | $23,766 | | $4,269 | $25,127 |
| 43-9061 | Office Clerks, General | 20 | $14.41 | $26,288 | | $1,747 | $34,960 |
| 51-3011 | Bakers | 2 | $15.32 | $27,945 | | $90 | $212 |
| 51-6011 | Laundry & Dry-Cleaning Workers | 77 | $10.95 | $19,974 | | $8,061 | $616,814 |
| 53-3041 | Shuttle Drivers & Chauffeurs | 15 | $11.00 | $20,066 | | $7,969 | $121,954 |
| 53-6021 | Parking Lot Attendants | 42 | $10.82 | $19,734 | | $8,301 | $351,762 |
| Totals: | | 3,670 | | | | | $23,384,416 |

Source: Economic Roundtable analysis; California Employment Development Department, Labor Market Information Division, *Industry-Occupation Matrix 2011/2012 for Los Angeles County* (developed in cooperation with the Bureau of Labor Statistics). All wages adjusted to first-half 2013 dollars using the *Consumer Price Index - All Urban Consumers* for Los Angeles-Riverside-Orange County, CA. Data for all hotels in Los Angeles County are used as a proxy for the occupational employment and wage distribution within the City of Los Angeles's current non-union hotels with 100 or more rooms, since data from the American Community Survey (used in Section 2a of this report) is not detailed or reliable enough for all 35 hotel occupations to be used for this purpose. Computations in table reflect decimal values not shown, with rounding of cell values accounting for errors.

Exhibit 4 Page 90

Based upon the preceding Tables 3.3 and 3.4, the aggregate wage increase for all hotel workers affected by the proposed $15.37 per hour ordinance is as follows:

| Hotel Group/Type | Affected Workers | Aggregate Wage Increase Cost |
|---|---|---|
| A. Non-union, LAX hotels w/100+ rooms | 1.623 | $10,338,316 |
| B. Non-union, non-LAX hotels w/100+ rooms | 3,670 | $23,384,416 |
| Total | 5,293 | $33,722,732 |

The *induced* economic impacts of this $33.7 million annual pay raise – an average of $6,371 of additional earned income for affected hotel workers – would support the equivalent of an additional 283 local, year-round jobs and $39.6 million in induced local annual sales in the community (Table 3.5).  In the table, the 5,293 hotel workers affected by the new minimum wage are divided into three *household* income ranges, assuming that there are 1.6 workers per worker household in the City of Los Angeles.[26]

Table 3.5: Economic Impacts of Additional Wages for 5,293 Hotel Workers Raised to the Proposed $15.37 per Hour Minimum Wage, City of Los Angeles

| Hotel Workers' Household Wage Ranges | Distribution of Hotel Workers by Hshld. Inc. | Number of Affected Workers | Est. Aggregate Additional Wages | Economic Impacts of Current Worker Wages | | | |
|---|---|---|---|---|---|---|---|
| | | | | Induced Jobs | Induced Labor Income | Induced Value Added | Induced Output (sales) |
| $25-$35k/year | <2% | 105 | $1,000,586 | 8.3 | $431,374 | $751,090 | $1,175,334 |
| $35-$50k/year | 78% | 5,079 | $32,712,351 | 274.5 | $14,216,877 | $24,684,157 | $38,451,459 |
| $50-$75k/year | <2% | 109 | $9,795 | 0.1 | $4,027 | $7,111 | $11,095 |
| Total | 81%* | 5,293 | $33,722,732 | 282.9 | $14,652,278 | $25,442,358 | $39,637,888 |

Source: Economic Roundtable analysis; U.S. Census Bureau. 2013. *American Community Survey, 5-Year Public Use Microdata Sample (PUMS), 2007-2011*; U.S. Census Bureau. 2013. *Los Angeles County, California: 2011 County Business Patterns (NAICS)* [Table]; California Employment Development Department, Labor Market Information Division, *Industry-Occupation Matrix 2011/2012 for Los Angeles County* (developed in cooperation with the Bureau of Labor Statistics);  Minnesota IMPLAN Group, Inc., *IMPLAN System 2011 data ("County Plus Package") and 2013 software*.  All wages adjusted to first-half 2013 dollars using the *Consumer Price Index - All Urban Consumers* for Los Angeles-Riverside-Orange County, CA.
* The total of 81 percent represents the portion of hotel workers whose wages would be raised by the proposed minimum wage. The other 19 percent of workers in affected hotels already earn more than $15.37 per hour.

Compared to the economic impacts of current hotel worker wages in the City of Los Angeles, enactment of a new minimum wage standard of $15.37 per hour would create a four percent increase in their households' local spending – further impacts captured by Los Angeles businesses:

| | Current | Proposed | Percent Change | |
|---|---|---|---|---|
| Induced Jobs | 7,788.3 | 8,071.2 | 104% | (+4%) |
| Induced Sales | $1,107,710,044 | $1,147,347,932 | 104% | (+4%) |

While the number of workers affected by this proposed ordinance would be approximately 31 percent of the total citywide hotel workforce (5,293 out of 17,235), it would make a significant difference by raising many hotel worker households above the poverty line, and those added wages would also support increased jobs and sales at local businesses.

Exhibit 4 Page 91

*3c. Effects of a wage increase on hotel room rates, including effects on hotel customers in the City of Los Angeles*

    If the proposed hotel minimum wage ordinance is enacted, the effect on hotels would be the total compensation costs needed to bring their employees up to the proposed $15.37 per hour wage floor. As calculated in report section 3b, the proposed wage increase adds up to $33.7 million in the first year:

| Jobs at Affected Hotels | Number of Jobs | Current Annual Wages | → | Annual Wages Under Proposed Ordinance |
|---|---|---|---|---|
| Jobs Paying <$15.37 per Hour | 5,293 | $114,669,669 | → | $148,392,401 |
| Jobs Paying >$15.37 per Hour | 1,255 | $55,234,013 | → | $55,234,013 |
| Jobs/Wages Subtotal: | 6,548 | $169,903,681 | → | $203,626,414 |

However, in addition to the $33.7 million in increased wages, hotels would also incur $7.2 million for employer-paid payroll taxes and benefits (Table 3.6). The total compensation cost to employers for raising their employees' wages to the proposed $15.37 per hour minimum wage would thus be just under $41 million in the first year:

Table 3.6: Total Compensation Required to Raise 5,293 Employees to $15.37 per hour at Affected Hotels, Including Employer-Paid Payroll Taxes and Benefits

| Amounts | Compensation Types and Rates |
|---|---|
| $33,722,732 | Added wages needed to increase 5,293 workers to $15.37/hr at affected hotels |
|  | Employer-paid payroll taxes and benefits: |
| $2,090,809 | • Federal Social Security (FICA 6.2%, employer-side only) |
| $488,980 | • Federal Medicare (FICA 1.45%, employer-side only) |
| $0 | • Federal Unemployment Tax (FUTA 1.2%, or $84 max per CA worker) |
| $0 | • California Unemployment Insurance (deducted from first $7,000 of wages) |
| $0 | • California Employment Training Tax (ETT 0.1%, on first $7,000 of wages) |
| $4,653,737 | • Worker's Compensation Insurance Premium (13.92%) |
| $0 | • Health Insurance (Census ACS PUMS method) |
| $0 | • Retirement benefits |
| $7,233,526 | Subtotal for cost of employer-paid payroll taxes and benefits |
| $40,956,259 | Total Employee Compensation  (wages + payroll taxes and benefits) |

Source: Economic Roundtable analysis; US Internal Revenue Service. 2013. *Topic 751 - Social Security and Medicare Withholding Rates.* CA Employment Development Department. 2013. *UI, ETT, and SDI Rates, Withholding Schedules, and Meals and Lodging Values.* CA Department of Insurance. 2013. *Consumers: CA Workers' Compensation Rate Comparison.* Bureau of Labor Statistics. 2013. *Employer Costs for Employee Compensation – June 2013* (USDL-13-1835). See Data Appendix Table 4 for related tables.

The additional costs to employers come in the form of higher workers' compensation insurance premiums, as well as higher employer contributions to Social Security and Medicare, all of which rise as a percent of workers' wages. Other employer-paid payroll taxes (federal and state unemployment tax, state employment training tax) would not increase due to the proposed minimum wage ordinance because their annual caps are already met. Health and retirement benefits also would not be affected by the proposed ordinance.

Exhibit 4 Page 92

Case 2:14-cv-09603-AB-SS   Document 58-1   Filed 03/09/15   Page 63 of 72   Page ID #:1269

Including hotel's total compensation costs, the effects of the proposed minimum wage increase in the first year are as follows:

| Jobs at Affected Hotels | Number of Jobs | Current Annual Compensation | → | Annual Compensation Under Proposed Ordinance |
|---|---|---|---|---|
| Jobs Paying <$15.37 per Hour | 5,293 | $157,832,498 | → | $198,788,757 |
| Jobs Paying >$15.37 per Hour | 1,255 | $72,876,583 | → | $72,876,583 |
| Jobs/Compensation Subtotal: | 6,548 | $230,709,081 | → | $271,665,340 |

Detailed tables on how total compensation was calculated for each of the groups of workers at affected hotels (similar to Table 3.6) can be found in Data Appendix Table 4.

How each affected hotel would cover the added $41 million cost of the proposed ordinance is not known ahead of time, but scenarios could include one or more of the following:

1) Hotels operate at their current revenue levels, but reduce the portion of going to hotel ownership, allocating more of it for employee wages instead

2) Hotels operate at their current revenue levels, but reduce staffing, relying upon fewer workers to operate the same level of hotel services

3) Hotels operate at their current revenue levels, but reduce employee benefits not covered by the proposed ordinance, such as health benefits

4) Hotels operate at their current revenue levels, but reduce costs for goods and services they purchase from various upstream suppliers

5) Hotels raise prices for rooms, parking and other services, boosting their revenue enough to offset the higher cost of wages, while keeping all other costs the same

This section explores these five scenarios separately to estimate the effects on hotels with workers in *Groups A and B* (non-union hotels with 100 or more rooms, as per report section 3b).

*Note on Estimated Hotel Revenue*

The scenarios in this report section increase and decrease different operating expenses within the constraints of hotels' overall *reported* revenue, which is an estimated $745,630,009 annually for the affected hotels with workers in *Groups A and B*. This estimate is based upon the total current compensation for *all* workers in those hotels ($230,709,081 per year, as calculated above), which represents 30.9 percent of hotel industry revenue, according to the IMPLAN input-output model of the City of Los Angeles.[27] The *real* revenue of these non-union, large hotels is not known, although hotel revenue for Los Angeles County is estimated to be $3.5 billion annually.[28] Reasons for uncertainty about hotel revenue data may include inaccurate reporting to private data vendors, differing accounting systems used by large, corporate hotel chains, concerns about stock prices, shareholders and tax liabilities, and the desire to shield cost data from competitors. Given these disclaimers about hotel revenue data, the following scenarios discussing the effects of the proposed minimum wage ordinance can be scaled using the percentages shown in each scenario.

Exhibit 4 Page 93

<u>Scenario #1: Paying for Added Labor Costs from Existing Hotel Revenue by Reducing Owners'
Income</u>

If affected hotels' revenue stays the same, employee compensation would increase from
30.9 percent to 36.4 percent of revenue, and hotel owners' income share of revenue would need
to shrink to 12.4 percent:

| | Current Aggregate Annual Revenue and Expenses | | Potential Aggregate Annual Revenue and Expenses | |
|---|---|---|---|---|
| | Amount | Percent | Amount | Percent |
| Hotel Revenue | $745,630,009 | 100.0% | $745,630,009 | 100.0% |
| Purchase of Intermediate Inputs [29] | $310,281,467 | 41.6% | $310,281,467 | 41.6% |
| Value Added: | $435,348,541 | 58.4% | $435,348,541 | 58.4% |
| • Employee Compensation [30] | $230,237,992 | 30.9% | $271,194,251 | 36.4% |
| • Owners' Share of Revenue [31] | $133,499,773 | 17.9% | $92,543,514 | 12.4% |
| • Tax on Production and Imports [32] | $71,610,777 | 9.6% | $71,610,777 | 9.6% |

In this and other scenarios, hotel outlays from revenue consist of costs for *Purchases of
Intermediate Inputs* such as electricity, materials, and purchased services (41.6 percent) as well
as costs for hotels' own *Value Added* expenses for providing clean rooms, preparing foods and
other guest services (58.4 percent).  These two types of outlays pay for producing hotel services
for overnight guests and other customers.  Hotels' value added consists of three subcomponents:

Figure 3.2: Current (left) and Potential (right) Composition of Hotel Outlays under Scenario #1



■ Purchase of Intermediate Inputs              ■ Employee Compensation

■ Hotel Owners' Income                          ■ Tax on Production and Imports

Source:  Economic Roundtable analysis; California Employment Development Department, Labor Market Information Division,
*Industry-Occupation Matrix 2011/2012 for Los Angeles County* (developed in cooperation with the Bureau of Labor Statistics);
Olson, Doug and Scott Lindall. 2010.  *IMPLAN Version 3.0 User's Guide*. MIG, Inc., 1725 Tower Drive west, Suite 140, Stillwater,
MN 55082, www.implan.com.  Aside from "Purchase of Intermediate Outputs," all categories are subcomponents of "Value Added".

Exhibit 4 Page 94

- *Employee Compensation* (employee wages, salary, benefits and payroll taxes),
- *Owners' Share of Revenue* (corporate profit, capital consumption allowance, payments for rent, dividends, royalties and interest income; for self-employed and unincorporated hotel owners), and
- *Tax on Production and Imports* (sales and excise taxes, customs duties and property taxes).

Assuming that hotels' revenue is fixed and their costs for *Purchasing of Intermediate Inputs* and *Tax on Production and Imports* stay the same, *Employee Compensation* can increase enough to cover the added $41 million cost of the proposed wage increase only if hotel *Owners' Share of Revenue* decreases. In this scenario, hotel *Owners' Share of Revenue* declines from 17.9 to 12.4 percent, allowing *Employee Compensation* to rise to 36.4 percent, as shown in Figure 3.2.

Scenario #2: Paying for Added Labor Costs through Reduced Staffing

If the revenue of affected hotels stays the same, they could cover the added cost of the proposed wage increase by reducing staffing and relying upon fewer workers to operate the same level of hotel services.

| | |
|---|---|
| Total Wage Increase Cost for Affected Hotels | $40,956,259 |
| Average Annual Wages for Hotel Workers ($2013) | $29,856 |
| Number of Workers Reduced to Cover Wage Increase | 1,372 |
| Total Employment at Affected Hotels | 6,548 |
| Percent of Total Staffing Reduced | 21% |

The number of staff would need to be reduced 21 percent, or by 1,372 of affected hotels current workforce. This assumes that all staff reductions would involve workers paid the average annual wages for the industry in Los Angeles of $29,856 per year.

Scenario #3: Paying for Added Labor Costs through Reduced Employee Benefits

Instead of reducing staffing, the 64 affected hotels could reduce the cost of benefits offered to their employees by $41 million annually. Benefits attached to the proposed ordinance, such hotel employees being able to earn 5 days of paid leave per year, could not be cut back. But the following employee benefits[33] might be reduced if they are currently provided:

- Health insurance premiums
- Traditional pension plans
- Incentive bonus plans
- Retiree health care coverage
- Long-term care insurance
- Professional development opportunities
- Life insurance for dependents

- Legal assistance
- Sports team sponsorship
- Executive club memberships
- Relocation and home purchasing assistance
- Travel perks and company picnics
- Company-purchased event tickets

Exhibit 4 Page 95

If revenue stays the same, a reduction of $41 million from hotels' employee benefits offered beyond wages and salaries would amount to $6,255 per worker at affected hotels:

| | |
|---|---|
| Total Wage Increase Cost for Affected Hotels | $40,956,259 |
| Total Employment at Affected Hotels | 6,548 |
| Reduced Benefits per Worker at Affected Hotels | $6,255 |

If this amount of other employee benefits is reduced, it would represent a shift within affected hotels' Employee Compensation budgets, from one form of compensation (benefits) to another (wage and salary income). The volume of this shift would be spread across 64 affected hotel properties (*Groups A and B* in report section 3b).

<u>Scenario #4: Paying for Added Labor Costs by Cutting Costs Paid for Purchased Goods and Services</u>

A different scenario for affected hotels to increase wages without the benefit of added revenue would be to reduce expenditures on *Intermediate Inputs*, the goods and services that hotels buy and use in their operations. Achieving such reductions in costs would entail reducing capital outlays and equipment purchases, and substituting lower-cost items in the place of their current supplies, such as restaurant supplies, bathroom and cleaning supplies, outside cleaning services, contracted building maintenance, advertisings services and insurance policies.

If affected hotels' revenue stays the same, *Employee Compensation* would again change from 30.9 percent to 36.4 percent of revenue, while the share of hotel's revenue used for the *Purchase of Intermediate Inputs* would drop from 41.6 to 36.1 percent:

| | Current Aggregate Annual Revenue and Expenses | | Potential Aggregate Annual Revenue and Expenses | |
|---|---|---|---|---|
| | Amount | Percent | Amount | Percent |
| Hotel Revenue | $745,630,009 | 100.0% | $745,630,009 | 100.0% |
| Purchase of Intermediate Inputs | $310,281,467 | 41.6% | $269,325,209 | 36.1% |
| Value Added: | $435,348,541 | 58.4% | $476,304,800 | 63.9% |
| • Employee Compensation | $230,237,992 | 30.9% | $271,194,251 | 36.4% |
| • Owners' Share of Revenue | $133,499,773 | 17.9% | $133,499,773 | 17.9% |
| • Tax on Production and Imports | $71,610,777 | 9.6% | $71,610,777 | 9.6% |

This reduction of $41 million from hotels' *Purchases of Intermediate Inputs* represents 13 percent of their current expenditures ($310 million), and would be spread out over 64 affected hotel properties (*Groups A and B* in report section 3b).

<u>Scenario #5: Raising Hotel Revenue to an Amount Equal to Increased Labor Costs</u>

The total cost of employee compensation for the 64 affected hotels is currently $230,237,992 per year, and would increase to $271,194,251 if the proposed ordinance went into effect. Employee compensation currently comprises 30.9 percent of total sales revenue for all hotels in the City of Los Angeles,[34] so based on that ratio the total annual revenue for the 64 affected hotels is currently estimated to be $745.6 million, and this revenue would need to increase to $786.6 million in order to cover the additional $41 million needed to comply with the

Exhibit 4 Page 96

proposed minimum wage ordinance.[35]  These jobs, wages and sales revenues for the affected hotels are summarized below:

| Hotel Jobs | Number of Jobs | Current Annual Compensation | → | Proposed Annual Compensation |
|---|---|---|---|---|
| Jobs Paying <$15.37 per Hour | 5,293 | $157,832,498 | → | $198,788,757 |
| Jobs Paying >$15.37 per Hour | 1,255 | $72,876,583 | → | $72,876,583 |
| Jobs/Compensation Subtotal: | 6,548 | $230,709,081 | → | $271,665,340 |

| | Current | | Proposed |
|---|---|---|---|
| Total Hotel Sales Revenue | $745,630,009 | → | $786,586,267 |

How would the 64 hotels be affected?  The average hotel in this group would need to generate $639,942 more revenue per year, or $1,753 more revenue per day.[36]  Measured per room, the affected hotels would collectively need to increase their revenue $2,513 per room per year, or $6.89 per room per day for all of their 16,295 combined rooms.[37]  Taking into account the recent 75 percent occupancy rate in Los Angeles (see report section 1c), the affected hotels would collectively need to increase their revenue $3,351.23 per *occupied* room per year, or $9.18 per room per day.[38]  The increased cost would not have to come from raised room rates exclusively; other hotel operations (restaurants, shops, spas and other guest services) would contribute through small price increases as well, since some of the jobs with wage rates raised by the proposed ordinance are found in hotels' retail and food service operations.

*Combination of Scenarios is Most Likely Response*

If the proposed minimum wage ordinance for hotels with 100 or more rooms is enacted, the 64 affected hotels would likely combine several of these five scenarios.  And the effects would likely be passed on *both* to large hotel owners, in the form of lower profit share (Scenario #1), reduced staffing (Scenario #2), and reduced employee benefits (Scenario #3), as well as to hotel customers, in the form of lower cost goods and services in the hotels (Scenario #4) and higher room rates (Scenario #5), but in lesser amounts than described in each independent scenario.  The proportion that comes from increased room rates could likely be higher when the visitor market is strong and the occupancy rate rises.  By balancing the increased labor costs associated with the proposed ordinance with a combination of these five scenarios, and taking into account the potential under-estimate of hotels revenue in this report as well as the growing demand for hotel rooms and services in the coming years (see report section 1c), hotel owners will likely be able to afford this wage increase without compromising the viability of their businesses or the ability of their guests to afford rooms.  The experience of the 13 hotels covered by the 2008 Airport Hospitality Enhancement Zone ordinance supports this assessment.

Exhibit 4 Page 97

### 4. Paid Sick Leave for Hotel Workers

*4a. Effect of requiring hotels with 100 or more rooms in the City of Los Angeles to provide their employees with 5 paid sick days*

Additional costs for large hotel employers providing five paid sick days annually to workers would be equal to two percent of total compensation costs (5 paid sick days / 261 annual work days = 2 percent).[39]  National survey data for workers across all industries suggests that, for those who currently received five paid sick days off per year, the number of sick days actually taken ranges from 1.5 to 3.0 days.[40]  It is unknown how many paid sick days that hotel workers in the City of Los Angeles would utilize per year, but the following estimates of the cost of paid sick days for employers can be pro-rated as 0.4 percent of annual wages per sick day utilized.

Assuming that hotel workers in *all occupations* currently lack and would be given five paid sick days per year, and *all employees* in the large hotels covered by the proposed minimum wage ordinance would use *all five* paid sick leave days each year, the total cost of this proposed benefit needs to be calculated separately for two groups of hotel workers:

1. Workers employed in hotel jobs currently earning *below* $15.37 per hour, for whom the cost of five paid sick days would be based upon their proposed new compensation when paid $15.37 per hour.  There are 5,293 of these workers employed at affected hotels, and the total cost of their compensation is $198,788,757.  (This covers hotel workers in *Groups A and B* from the previous report section 3b, and their compensation is calculated in report section 3c.)

2. Workers employed in hotel jobs already earning *more than* $15.37 per hour, for whom the cost of five paid sick days would be based upon their existing, higher compensation and wage rates.  There are 1,255 of these workers employed at affected hotels, and the total cost of their compensation is $72,876,583. (This covers hotel workers in *Group E*, using their total compensation calculated in report section 3c.)

Workers employed at the City of Los Angeles' large, unionized hotels (*Group D* from report section 3b) are not included in our calculation of cost of a adding 5-day paid sick leave benefit, since we assume that union contracts already include this benefit.  Those employed at smaller hotels in the City of Los Angeles with less than 100 rooms (*Group C*) are also excluded from analysis in this chapter, since they are outside of the jurisdiction of the proposed ordinance.  This leaves 64 hotels large, non-union hotels included in our analysis.

Adding together the cost of workers' total compensation from *Groups A, B and E* provides the revenue basis for estimating the employer's further cost for providing a paid sick leave benefit of five days:

| Jobs at Affected Hotels | Number of Jobs | Annual Compensation Under Proposed Ordinance |
|---|---|---|
| Jobs Paying <$15.37 per Hour | 5,293 | $198,788,757 |
| Jobs Paying >$15.37 per Hour | 1,255 | $72,876,583 |
| Jobs/Compensation Subtotal: | 6,548 | $271,665,340 |

*Note: Figures above are compiled in report sections 3b and 3c.*

Exhibit 4 Page 98

The cost to hotels for offering this first group of employees five days of paid sick time per year is estimated to be $5,204,317, which is two percent of their combined $271,665,340 total compensation after all are raised to wages of at least $15.37 per hour.

*4b. Alternative measure of employers' cost to provide their employees with 5 paid sick days*

Measured another way, five days of paid sick time per year would cost hotels 0.6 percent their annual revenue:

| | |
|---|---|
| Hotel Revenue | 100.0% |
| Employee Compensation | 30.9% |
| 5 Days Paid Time Off (2% of Employee Compensation) | 0.6% |

The annual revenue of the 64 hotels that would add the paid sick leave benefit is $745 million. (See report section 3c for information on hotel revenue calculations.)  The impact of this additional cost on affected hotels could be approximately $4.6 million per year.  If workers use only three of the five paid sick days offered per year – as has been found to be the case for workers with paid sick days leave nationwide – the likely cost would be approximately $2.8 million per year.[41]

*4c. Variations in the cost of implementing paid sick leave benefit*

If this benefit policy is implemented, the cost of providing five days of paid sick leave to employees of the City of Los Angeles' large hotels with 100 or more rooms may vary from the projections in the chapter if:

- Hotel workers employed in non-unionized hotels already earning *more than* $15.37 per hour (Group E) include some who already receive five days of paid sick leave, or the equivalent.  This might be the case especially for hotels' management-level employees, as well as for some professionalized occupations.

- Hotel workers employed in unionized hotels do not currently receive five days of paid sick leave.  This might be the case for employees in job positions who are not covered by the labor contract negotiated between hotels and the hotel workers' union(s), but whom also are not in the higher echelon management- and professional-level job positions.

- Hotel workers' hours worked varied significantly from the citywide average (1,824 per year) where the benefit is applied.  If more workers receiving the proposed paid sick leave benefit worked below 1,824 hours per year than in our analysis, this could decrease (slightly) the cost employers incur for offering the benefit.  The cost of providing hotel workers five paid sick days per year would vary by occupation based upon the actual hours worked, albeit still pegged at 2 percent of their wages.

Exhibit 4 Page 99

## 5. Impacts of Tourism on Hotels and other Los Angeles Businesses

*5a. Share of hotel revenue imported from other regions, i.e., is spent by visitors who do not live in Los Angeles*

Three quarters (74 percent) of the revenue of Los Angeles' large hotels is estimated to come from tourism, that is, spent by visitors who do not live in the Los Angeles region.[42]  This share has remained relatively constant over the past decade (Figure 5.1).  The balance of Los Angeles hotels' revenue, which also includes business from their restaurants, meeting and banquet rooms, bars, shops and other guest services, come from local customers.

Figure 5.1: Share of Los Angeles Hotel Revenue Supported by Tourism, 1998-2011



Source: Economic Roundtable analysis; Bureau of Economic Analysis. 2013. *U.S. Travel and Tourism Satellite Accounts: Annual Estimates, 1998-2011.*

Tourism supports a large number of jobs in hotels, over 12,500 of the City of Los Angeles' 17,235 jobs in this industry (Table 5.1).  In addition, several other local industries attribute most or some of their employment to tourism, including *Air Transportation Services* (76 percent), *Interurban Bus / Charter Bus Transportation* (95 percent), *Scenic and Sightseeing Transportation* (99 percent), and *Travel Arrangement and Reservation Services* (96 percent).

Exhibit 4 Page 100

Table 5.1: Share of Employment Supported by Tourism, City of Los Angeles 2011

| Industry Sectors Affected by Tourism | Tourism industry ratio | Employment, Tourism Share | Employment, Total | Total Number of Establishments |
|---|---|---|---|---|
| Traveler accommodations | 0.74 | 12,754 | 17,235 | 1,002 |
| Food services and drinking places | 0.18 | 20,480 | 113,776 | 18,106 |
| Air transportation services | 0.76 | 19,985 | 26,296 | 428 |
| Rail transportation services | 0.03 | 5 | 168 | 5 |
| Water transportation services | 0.18 | 358 | 1,989 | 94 |
| Interurban bus transportation | 0.97 | 368 | 379 | 11 |
| Interurban charter bus transportation | 0.93 | 195 | 209 | 39 |
| Urban transit systems and other transportation | 0.12 | 1,043 | 8,695 | 741 |
| Taxi service | 0.29 | 61 | 209 | 44 |
| Scenic and sightseeing transportation | 0.99 | 286 | 289 | 66 |
| Automotive equipment rental and leasing | 0.66 | 1,678 | 2,542 | 456 |
| Automotive repair services | 0.05 | 509 | 10,170 | 5,168 |
| Parking | 0.17 | 1,282 | 7,542 | 2,368 |
| Toll highways (n.a.) | 0.06 | . | . | 0 |
| Travel arrangement and reservation services | 0.96 | 3,152 | 3,284 | 1,647 |
| Motion pictures and performing arts | 0.11 | 1,222 | 11,111 | 10,611 |
| Spectator sports | 0.22 | 1,116 | 5,072 | 1,459 |
| Participant sports | 0.19 | 1,323 | 6,965 | 703 |
| Gambling | 0.49 | 34 | 69 | 8 |
| All other recreation and entertainment | 0.23 | 3,591 | 15,612 | 728 |
| Petroleum refineries | 0.09 | 119 | 1,321 | 52 |
| Nondurable PCE commodities, excl. petrol | 0.02 | 2,631 | 131,540 | 31,907 |
| Wholesale trade and transportation services | 0.02 | 1,611 | 80,558 | 24,116 |
| Gasoline service stations | 0.11 | 430 | 3,909 | 1,421 |
| Retail trade services, excl. gas service stations | 0.02 | 2,669 | 133,460 | 27,806 |
| Residential tenant occupied real estate | 0.05 | 225 | 4,491 | 3,031 |
| All other industries, N.E.C. | 0.00 | 0 | 962,722 | 244,644 |
| **Totals** | | 77,126 | 1,549,612 | 376,661 |

Note: Toll highways are not a separate industry in economic data, and thus employment in this sector cannot be determined.
Source: Economic Roundtable analysis; Bureau of Economic Analysis. 2013. *U.S. Travel and Tourism Satellite Accounts: Annual Estimates, 1998-2011*; California Employment Development Department, 2011. *Quarterly Census of Employment and Wages, City of Los Angeles.*

The amount of employment attributable to tourism varies by industry. The local industry with the largest number of jobs supported by tourism is *Food Services and Drinking Places* (20,480 jobs), despite this representing only 18 percent of that industry's total employment citywide. The *Air Transportation Services* industry is the City of Los Angeles' next largest, with 19,985 jobs supported by tourism, followed by *Traveler Accommodations* (hotels) with 12,754 tourism-supported jobs.

Exhibit 4 Page 101

*5b. Share of Jobs in Other Industries Supported By the Tourism Business at Hotels in the City of Los Angeles*

The preceding section 5a of this report detailed how tourism supports 74 percent of business for hotels in the City of Los Angeles. Tourism thus represents approximately $965.3 million of these hotels' $1,304.5 million total annual sales. When received, this annual hotels revenue supports not only the estimated 12,754 local jobs in this industry (Table 5.1, "Traveler accommodations"), but also supports additional jobs in other industries through hotels' purchasing of good and services from various "upstream" suppliers, and through the household spending of workers employed in hotels as well as in their suppliers' businesses. These are hotels' *indirect* and *induced* economic impacts, and the method for estimating these impacts is discussed below.

As hotels in the City of Los Angeles host tourists and other guests each year in their rooms, restaurants, pools, gyms, spas and gift shops, the multiplier effects from those operations ripple through the local economy, increasing total demand for goods and services in the local economy. This translates into added sales and jobs for local providers of goods and services. It also adds to the spending power of their employees' households, supporting still more sales and jobs where those households spend their money, as well as more tax revenue for local, state and federal government.

Figure 5.2: Estimating the Local Economic and Job Impacts of Hotels Using Input-Output Analysis



Source: Economic Roundtable illustration based on the IMPLAN input-output model. Minnesota IMPLAN Group, Inc., *IMPLAN System 2011 data and 2013 software.*

Exhibit 4 Page 102