1  Michael Starr (*Pro Hac Vice*)
   Katherine H. Marques (*Pro Hac Vice*)
2  HOLLAND & KNIGHT LLP
   31 West 52nd Street
3  New York, NY 10019
   Telephone: 212.513.3200
4  Facsimile: 212.385.9100
   E-mail: michael.starr@hklaw.com,
5  katherine.marques@hklaw.com

6  Kristina S. Azlin (SBN 235238)
   John A. Canale (SBN 287287)
7  HOLLAND & KNIGHT LLP
   400 South Hope Street, 8th Floor
8  Los Angeles, California  90071
   Telephone 213.896.2400
9  Facsimile  213.896.2450
   E-mail:  kristina.azlin@hklaw.com,
10 john.canale@hklaw.com

11 Attorneys for Plaintiffs
   American Hotel & Lodging Association and
12 Asian American Hotel Owners Association

13                UNITED STATES DISTRICT COURT

14     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

15

16
   **AMERICAN HOTEL & LODGING**          ) Case No. 2:14-cv-09603-AB-SS
17 **ASSOCIATION and ASIAN**             ) Assigned to Hon. Andre Birotte Jr.
   **AMERICAN HOTEL OWNERS**             )
18 **ASSOCIATION,**                      ) **AMENDED COMPLAINT FOR**
                                         ) **DECLARATORY AND**
19                 Plaintiffs,           ) **INJUNCTIVE RELIEF**
                                         )
20        vs.                            )
                                         )
21 **CITY OF LOS ANGELES, and**          )
   **UNITE HERE Local 11,**              )
22                                       )
                  Defendants.            )
23 _____      )

24            **AMENDED COMPLAINT FOR**

25     **DECLARATORY AND INJUNCTIVE RELIEF**

26        Plaintiffs the American Hotel & Lodging Association and the Asian American

27 Hotel Owners Association (collectively, "Plaintiffs" or the "Associations"), by and

28 through their counsel, Holland & Knight LLP, allege as follows:

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

## NATURE OF ACTION

1.     By this action, the Plaintiffs seek to enjoin the Defendant City of Los Angeles from interfering with labor relations, collective bargaining and union organizing at every single one of the larger hotels within its jurisdiction.  Under the guise of an ordinance purporting to require that a "fair wage" be paid to hotel workers, the City has constructed, whether by design or consequence, an insidious mechanism that improperly aids the Hotel Workers' Union (as hereinafter defined) in its efforts to organize employees at all of the City's hotels that have until now resisted unionization.  Because Congress, in adopting federal labor law, intended to have zones of unregulated activity between labor and management, to leave the resolution of labor-management disputes to the free play of economic forces, and to prevent either labor or management from using its political influence to induce municipalities to disrupt the balance struck by Congress between labor and management, the City's purported hotel workers minimum wage ordinance is preempted by federal law and, consequently, void and unenforceable.

## JURISDICTION & VENUE

2.     This Court has jurisdiction over the subject matter of this suit pursuant to 28 U.S.C. Section 1332, as the Plaintiffs' claims arise under federal laws; namely, the National Labor Relations Act, 29 U.S.C. Section 141 *et seq.* (the "*NLRA*") and Article VI of the U.S. Constitution, which designates the Constitution and Laws of the United States as the supreme law of the land.

3.     Venue is proper in this Court pursuant to 28 U.S.C. Section 1391(b), as this Court is sited in the federal judicial district where the events giving rise to the Plaintiffs' claims have occurred, are now occurring, and will occur in the future if not prevented through actions of this Court.  Members of the Plaintiff Associations are situated in this district and are and will continue to be adversely affected by the

irreparable harms sought to be remedied and prevented by this Court's action upon this Complaint.

**PARTIES**

4.      Plaintiff American Hotel & Lodging Association ("*AH&LA*") is an incorporated association formed under the laws of the State of Delaware with its headquarters at 1201 New York Avenue, N.W., Suite 600, Washington, D.C. AH&LA represents the United States lodging industry by providing advocacy, communications support, and educational resources for its members, which include hotel owners, real estate investment trusts, hotel chains, franchisees, management companies, and independent properties.  The mission of AH&LA is to be the voice of the lodging industry.  AH&LA serves the industry by providing representation at the national level and in government affairs, education, research, and communications.  It also represents the interests of its members in litigating issues of widespread concern to the lodging industry.

5.      Plaintiff the Asian American Hotel Owners Association ("*AAHOA*") is an incorporated nonprofit association formed under the laws of the State of Georgia with its headquarters at 100 Abernathy Road, Suite 1100, Atlanta, Georgia 30328. AAHOA members own over 20,000 hotels nationwide, including properties within the City of Los Angeles, California that have more than 150 rooms.  AAHOA is dedicated to promoting and protecting the interests of its members by inspiring excellence through programs and initiatives in advocacy, industry leadership, professional development, and community involvement.

6.      Defendant The City of Los Angeles (sometimes, the "*City*") is and at all relevant times has been a public entity duly organized and existing under and by virtue of the laws of the State of California as a charter municipality.

7.      Intervening-Defendant UNITE HERE, Local 11 ("*Local 11*"), is an unincorporated association and a "labor organization" within the meaning of Section

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

- 3 -
AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

2(5) of the NLRA.  Local 11 has its offices located at 464 South Lucas Avenue, Los Angeles, CA 90017.  Local 11 is a union affiliated with UNITE HERE International Union, AFL-CIO ("*UNITE HERE*"), with its regional offices located at 243 Golden Gate Avenue, San Francisco, CA  94102.  UNITE HERE is also an unincorporated association and a "labor organization" within the meaning of Section 2(5) of the NLRA, 29 U.S.C. Section 152(5). (UNITE HERE and Local 11 shall hereinafter be referred to collectively as the "*Hotel Workers' Union*" or the "*Union*").

## RELEVANT FACTS

### The Associations and Members

8.     Some members of AH&LA are business entities that own, either directly or indirectly through affiliated and/or subsidiary entities, hotel properties located in the City of Los Angeles (hereinafter, the "*owner-members*").  Such owner-members include:  Ashford Hospitality Trust; Host Hotels & Resorts, Inc.; Omni Hotels & Resorts; Today's Hotel, Inc.; Sunstone Hotel Investors, Inc.; and Pebblebrook Hotel Trust.

9.     Some members of AH&LA are business entities that manage or operate hotel properties in the City of Los Angeles either that they own or, more commonly, that are owned by others, including owner-members (hereinafter the "*operator-members*" of AH&LA).  Such operator-members include:  Loews Hotels, Inc.; Hilton Worldwide; Hyatt Hotels Corporation; Intercontinental Hotel Group; Marriott International, Inc.; Interstate Hotels and Resorts Worldwide; Davidson Hotels & Resorts; Kimpton Hotel & Restaurant Group, LLC; and Starwood Hotels & Resorts Worldwide, Inc.

10.     Some of the aforementioned operator-members manage hotels in the City of Los Angeles whose employees are represented by UNITE HERE, Local 11 (hereinafter referred to as the "*unionized hotels*").  The wages, hours and the terms and conditions of employment of such employees are governed by a collective

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

bargaining agreement ("*CBA*") entered between that union and the operator-member (or one of its affiliated companies).  Some operator-members of the Associations are, as of the date of this Complaint, negotiating a CBA for employees employed at their hotels.

11.     Some of the aforementioned operator-members manage hotels in the City of Los Angeles whose employees are not represented by UNITE HERE, Local 11 (hereinafter referred to as the "*nonunion hotels*").  The employers at such hotels have not entered into a CBA or any other agreement with that union with respect to employees employed at that hotel.

12.     Unionized hotels in the City that are owned and/or operated by members of AH&LA or AAHOA include the following:  Westin Los Angeles Airport; Westin Bonaventure Hotel & Suites; and W Hotel Los Angeles.

13.     Non-union hotels in the City that are owned and/or operated by members of AH&LA or AAHOA include the following:  Omni Los Angeles Hotel; Renaissance Los Angeles Airport Hotel; Courtyard Los Angeles Airport; Holiday Inn Torrance; Beverly Hills Crowne Plaza; Hotel Palomar Los Angeles; and Hilton Los Angeles Airport.

14.     Members of the Associations, including the aforementioned owner-members and the aforementioned operator-members, have suffered or will suffer economic and non-economic harm and injury as a result of the enactment of the ordinance being challenged in this action and its foreseeable and ineluctable consequences on union organizing, collective bargaining and labor relations for both unionized and non-union hotels in the City of Los Angeles.

15.     If, in order to comply with the Act's requirements, hotel managers need to reduce costs, then hotel employees are likely to suffer job loss or reduced hours as consequence of the Act, a result that is contrary to the public interest.

AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

**The Union and Its Methods**

      a.  **The Union's Institutional Goals**

16.    The local unions affiliated with UNITE HERE, including Local 11, have as one of their primary institutional objectives becoming the legally authorized exclusive representative for purposes of collective bargaining within the meaning of Section 9(a) of the NLRA (the "*exclusive bargaining representative*") for employees employed in units appropriate for collective bargaining within the meaning of Section 9(a) of the NLRA ("*unit employees*" or a "*bargaining unit*") – a process commonly referred to as "organizing" the business that employs prospective unit employees, such as, *e.g.*, organizing the "XYZ Hotel."

17.    The Hotel Workers' Union is permitted to organize bargaining units consisting of any employees employed at hotels, except for supervisors, as defined by Section 2(11) of the NLRA, or for "managerial employees" or "confidential employees," as those terms have been defined by courts and administrative agencies in interpreting the NLRA.  Accordingly, the Union is lawfully permitted to organize all – ***but only*** – employees who are not supervisory, managerial or confidential employees.

18.    In organizing hotels throughout the United States and, in particular, in and around the City of Los Angeles, UNITE HERE is seeking to increase the concentration or proportion of union-organized hotels in cities and municipalities in which its affiliated locals operate because its leadership believes that the greater the concentration of union hotels in any particular city, the more wages and benefits go up for union-represented employees.  Consequently, it is a paramount objective of the Hotel Workers' Union to organize all of the non-union hotels and, in particular, all of the larger non-union hotels, located in the City of Los Angeles.

19.    To achieve its objective, the Union continually approaches non-union hotels and seeks to identify ways to induce non-union hotels to accept unionization.

AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### b. **The Process of Union Organizing**

20.     One means to organize employees at a workplace is to petition the National Labor Relations Board ("*NLRB*" or the "*Board*") to conduct a secret-ballot election to be held subject to Board oversight and procedures that are designed to assure that the voting represents the free and uncoerced choice of unit employees.  If a union named on such a ballot receives a majority of the votes of employees in the Board-approved bargaining unit, such union is certified by the Board to be the exclusive bargaining representative for all of the employees in that bargaining unit, which is commonly referred to as being the "certified" union for such unit employees.

21.     Certification of a union by the Board following a secret-ballot election conducted under the Board's auspices and procedures that are designed to assure that the voting represents the free and uncoerced choice of unit employees is the method preferred by federal labor policy since 1947 for determining whether a union should be authorized to serve as the exclusive bargaining representative for all employees in the bargaining unit.

22.     An alternative method for a union to be lawfully selected as the exclusive bargaining representative of an employee bargaining unit is to be recognized as such by the employer upon a showing that a majority of unit employees support its being the exclusive bargaining representative of all unit employees (commonly referred to as "*majority support*").

23.     Unions typically attempt to establish majority support by soliciting from individual unit employees their authorization to serve as the unit's exclusive collective bargaining representative – which is usually achieved by a document signed by such employee that is customarily referred to as an "authorization card."  If a union presents to an employer authorization cards signed by a majority of unit employees, such employer may, but is not legally required to, recognize that union as

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

the exclusive bargaining representative for that bargaining unit.  This process is customarily referred to as "recognition."

24.     An employer is not legally required to recognize a union that purports to have authorization cards signed by a majority of unit employees, but is permitted to insist that the union establish its majority status by means of a secret-ballot election designed to assure that the voting represents the free and uncoerced choice of unit employees, which is the method that federal labor policy prefers.

### c.  **The Union's Tactics for Hotel Employers**

25.     The Hotel Workers' Union has long expressed its dissatisfaction with the traditional method of organizing and, in particular, with government-supervised, secret-ballot elections conducted under NLRB oversight and procedures that are designed to assure that the voting represents the free and uncoerced choice of intended unit employees.

26.     The Hotel Workers' Union's preferred method of organizing hotel workers is to obtain recognition as the authorized exclusive bargaining representation of a unit of employees by means of an authorization-card majority.  Its practice is to avoid attempts to obtain recognition by presenting authorization cards to any hotel employer because of its concern that such employer will insist on a government-supervised secret-ballot election of unit employees, which the Union eschews.

27.     At all times relevant to this action and for at least the last several years, the Hotel Workers' Union has been organizing hotels in the City of Los Angeles almost exclusively by inducing the employers at non-organized hotels to enter into what are commonly called "card check" or "card count" agreements, whereby an employer agrees to recognize the Union if a purportedly neutral third-party (such as a labor arbitrator) checks the validity of authorization cards submitted to it by the Union against a list of unit employees provided by such employer and, in counting

AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

the number of valid cards, determines that a majority of unit employees employed by such employer supports the Union as their exclusive bargaining representative.

28.    At all times relevant to this action and for at least the last several years, UNITE HERE and Local 11 have expanded their representation of hotel workers almost entirely by means of card-check recognition agreements.  Such agreements always demand purported "neutrality," which runs counter to federal labor law's specific protection to employees of both the right to refrain from organizing or to choose to organize, the concomitant right to receive information both for and against unionization, and the policy favoring the promotion of robust debate concerning labor relations.

29.    At all times relevant to this action and with increasing frequency in recent years, the Hotel Workers' Union has used its political influence to induce city and municipal governments to adopt ordinances that, directly or indirectly, require hotels subject to such ordinances to enter into card-check recognition agreements that, but for the ordinance, they would not have agreed to.

30.    Such ordinances, directly or indirectly, regulate union organizing in ways contrary to the policies embedded in federal labor law, which policies intend that employer consent to card-check recognition agreements be left to the free-play of economic forces and not regulated or influenced, directly or indirectly, by the legislative enactments of any state or local government.

### d.  <u>The Union's Assault on Ancillary Businesses</u>

31.    At all times relevant to this action and at least for the last several years, the Hotel Workers' Union has also worked to organize non-hotel businesses that are located on the premises of or perform services at hotels operating within the City of Los Angeles, such as restaurants, valet parking services, night cleaning services and the like (hereinafter "*Ancillary Businesses*").

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

32.     At all times relevant to this action and at least for the last several years, the Hotel Workers' Union has been unable to organize Ancillary Businesses by means of traditional secret-ballot elections conducted under Board oversight and procedures and, further, has been unable to induce such businesses to enter into card-check recognition agreements.

33.     At all times relevant to this action and at least for the last several years, the Hotel Workers' Union has been frustrated in its efforts to force unionized hotels in the City to compel Ancillary Businesses operated at the premises of such hotels to contractually require such Ancillary Businesses to enter into card-check recognition agreements with the Union because any such contractual requirements are illegal, unenforceable, and void under the labor and antitrust laws of the United States and, in particular, because any effort to induce hotel employers to impose such contractual requirements on Ancillary Businesses would be an unfair labor practice under Sections 8(b)(4)(B) and 8(e) of the NLRA.

34.     At all times relevant to this action and with increasing frequency in recent years, the Hotel Workers' Union has used its political influence to induce city and municipal governments to adopt ordinances that, directly or indirectly, economically pressure Ancillary Businesses located at hotels subject to such ordinances to enter into card-check recognition agreements that, but for the ordinance, they would not have agreed to.  Such ordinances, directly or indirectly, regulate or influence union organizing in ways contrary to the policies embedded in federal labor law, which policies intend that employer consent to card-check recognition agreements be left to the free-play of economic forces and not regulated, directly or indirectly, by any state or local government.

AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**Labor Economics of Hotels**

35.     Hotels are service-oriented, labor-intensive businesses.  Wage rates paid to non-managerial employees and the structure of the compensation of non-managerial employees are critical to the economics of hotel administration.

**a.  Restaurants and Banquets**

36.     Full-service hotels, and especially larger or luxury full-service hotels, are expected by customers to provide restaurants for guests and other food and beverage ("*F & B*") outlets.

37.     Providing on-site restaurants is critical for full-service hotels, and especially for larger or luxury full-service hotels, as their customers expect that such services will be available.  Due to its being critical to guest satisfaction, hotels often operate such facilities at little or no profit and, in many instances, sustain losses in certain F & B operations, as the costs associated with operating those operations, including, in particular, labor costs, often exceed the revenue generated from such operations.  Consequently, constraining labor costs of F & B functions of any full-service hotel is critical to such hotel's economic success.

38.     Full-service hotels, and especially larger or luxury full-service hotels, often provide banquet facilities for guests and operate such facilities as a separate department with its own associated revenues and costs.

39.     For many full-service hotels, and especially for larger or luxury full-service hotels, a successful banquet department generates work for others in the hotel because it draws groups to the hotel who require additional hotel services.  A robust banquet department may enable the hotels to pay higher wage rates to unrelated job classifications, such as room attendants, front desk agents, cooks and kitchen stewards.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### b. **Tipped Employees**

40.     In full-service hotels, and especially for larger or luxury full-service hotels, a distinction is maintained between those job classifications for which cash compensation includes both wages and also "tips," gratuities or service charges paid directly by customers in addition to the other charges made by the hotels for the services they provide.  These job classifications are commonly referred to as "tipped employees."  Tipped-employee job classifications include banquet servers, restaurant servers, in-room dining servers, bartenders and bell persons.

41.     Other job classifications whose cash compensation is based entirely on hourly wages are customarily referred to as "non-tipped" employees.  Non-tipped employees include room attendants, front desk agents, cooks and kitchen stewards, among others.

42.     Because they are compensated in part – often in substantial part – by tips and gratuities, tipped employees are typically paid a lower wage rate than non-tipped employees working at the same hotel.  For both unionized and non-union hotels, tipped employees are paid at or slightly above the state and/or locally mandated minimum hourly wage, while non-tipped employees have significantly higher hourly wage rates.

43.     Tipped-employees in the F & B operations of a full-service hotel, and especially at larger or luxury full-service hotels, typically receive more cash compensation from their tips and proportion of service charges than from their cash wages.  Because of this, restaurant servers and bartenders, virtually all of whom are tipped employees, frequently receive substantially higher cash compensation than do non-tipped employees, such as room attendants or front desk agents, even though their hourly wage rates are lower.

44.     Banquet servers typically earn annual cash compensation that vastly exceeds the annual cash compensation of non-tipped employees, such as room

- 12 -
AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

attendants, front-desk agents, cooks and kitchen stewards.  In fact, full-time banquet servers employed at larger, luxury full-service hotels in the City of Los Angeles often earn up to $100,000 each year and can earn each year two or three times the annual compensation of room attendants or kitchen stewards working at the same hotel.

45.   The Hotel Workers' Union accepts and acquiesces in the aforementioned compensation pattern, which is typical for all hotels throughout the United States, whether or not the hotel is organized by a union.

46.   Every CBA for full service hotels in the City of Los Angeles provides for the aforementioned differentiation between tipped and non-tipped employees, whereby banquet and restaurant servers and other tipped employees of such hotels are paid wages ranging from 40% to 50% *below* the hourly wage rates for the lowest paid non-tipped employee, yet earn a total cash compensation *far above* the cash compensation received by such non-tipped employees on account of the tips, gratuities and service-charge income that only tipped employees receive.

**c.  <u>Service Charges</u>**

47.   At full-service hotels, and especially at larger or luxury full-service hotels, the F & B operations add service charges to guest bills for banquet events, in-room dining and, in some circumstances, restaurant meals.  The use of service charges in such circumstances is the widely-accepted custom and practice in the hospitality industry throughout the United States.

48.   At both unionized and non-union hotels in the City of Los Angeles, a significant portion – but not all – of such service charges are paid directly to tipped employees who provide the F & B service, namely, the banquet servers, restaurant servers, in-room dining servers, bartenders, bar-backs and bussers.

49.   At both unionized and non-union hotels in the City of Los Angeles, some portion of the aforementioned service charges are distributed to supervisors, managers, banquet event sales personnel (all of whom are not tipped employees), or

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

are retained by such hotels to cover general non-itemized expenses associated with the banquet or other service provided.

50.     The aforementioned distribution of service-charge revenue is widely – indeed, universally – used by full-service hotels, and especially larger or luxury full-service hotels, in the City of Los Angeles and is perfectly lawful under the statutes and regulations of the State of California.

51.     Notwithstanding that tipped employees employed in the F & B operations of unionized and non-union hotels in the City of Los Angeles – notably, banquet servers, restaurant servers, in-room dining servers and bartenders – receive less than all of service charges listed on guest bills, they still receive substantial annual compensation as compared with other hourly or "blue collar" workers employed in the City of Los Angeles in other industries and, further, receive annual compensation that is substantially higher than that received by many non-tipped hourly employees employed at the same hotel – notably, room attendants, front desk agents, cooks and kitchen stewards.

52.     The Hotel Workers' Union accepts and acquiesces in the aforementioned practices relating to service charges.  In some instances, the applicable CBAs explicitly state that the portion of the service charge not given to unit employees is the property of the hotel.

**The Hotel Workers Act**

53.     In October 2014, Los Angeles City Ordinance No. 183241 entitled "Citywide Hotel Worker Minimum Wage Ordinance" was codified, adding Article 6 to Chapter XVIII of the Los Angeles Municipal Code (hereinafter the "*Hotel Workers Act*" or the "*Act*").  Said Act requires, *inter alia*, that hotels located in the City that have more than 150 guest rooms or suites pay the employees employed at such hotels a wage rate of at least $15.37 an hour.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

- 14 -
AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

54.     The Hotel Workers Act has as its purpose and/or as its foreseeable and ineluctable effect substantial interference with labor relations, collective bargaining, and union organizing within the hotel industry of the City of Los Angeles.

### a.  Provisions Inconsistent With the Act's Professed Purposes

55.     While the Act purports to set a minimum labor standard, its provisions are inconsistent with its stated purposes.

56.     Unlike other minimum-labor-standard ordinances enacted by the City, the Hotel Workers Act sets an hourly pay rate far above the market rate and even significantly above the rate set by the citywide minimum wage ordinance, signed into law in June 2015, which will increase the citywide minimum wage to $10.50 beginning in 2016, with incremental increases that will not reach a $15 an hour wage-rate until 2020. In July 2017, the purported "minimum" wage rate for hotel workers under the Act is likely to be not less than $16.00 per hour, which is more than $3 an hour over the new Citywide minimum wage.

57.     Unlike other minimum-labor-standard ordinances previously adopted by the City, the wage rate under the Hotel Workers Act is not based on the City Council's understanding of the minimal wage rate – namely, the least possible wage rate required for hotel workers to maintain an adequate standard of living – but rather is based on the City Council's perception of what "larger hotels" in the City are capable of paying based on the Council's assessment of their financial circumstances.

58.     Unlike other minimum-wage ordinances enacted by the City, the Act fails to provide employers the option of offsetting against the mandated hourly wage the cash value of employer-paid fringe benefits.

59.     Significantly, in 2013 (which is the year that a campaign for the introduction of the Act began), the "living wage" rate for airport employees also required a minimum of $15.37 per hour – but employers subject to that ordinance were afforded the option of satisfying their legal obligation by a cash wage of $15.37,

- 15 -

or by a combination of cash wage of $10.70 an hour and employer-paid fringe benefits having a value of $4.67 an hour.  Stated otherwise, only $10.70 had to be paid in cash, while the balance could be provided in the form of employee fringe benefits.  Consequently, since most larger or luxury hotels provide fringe benefits valued at more than $4.67 an hour, the City has now mandated a purported "fair wage" for hotel workers that is 44% higher than the purported "living wage" required for airport workers only one year earlier.

60.    The Act prohibits hotel employers from offsetting any portion of the required wage rate of $15.37 an hour by tips or gratuities received by tipped employees and, thereby, fails and refuses to recognize the fundamental difference between tipped and non-tipped employees in the hotel industry.  Such failure and refusal has as its foreseeable and ineluctable consequence that hotels subject to the Act will have to pay in excess of $10,000 a year more in additional cash compensation to full-time tipped employees – such as banquet servers, restaurant servers and bartenders – who already receive annual cash compensation far in excess of – indeed, in some cases, multiples of – the annual compensation required under the Act, which for a full-time employee working a typical amount of overtime each week, is approximately $33,000 per year.

61.    The Act excludes from its coverage, without reason or explanation, all hotel workers who are categorized as supervisory, managerial, or confidential employees, notwithstanding that some individuals employed in such job categories receive lower annual compensation than they would receive if the Act's wage rates were extended to them and lower than are currently received by some employees, such as full-time tipped employees, who are given additional compensation.  The exclusion of supervisory, managerial and confidential employees from the Act's requirements is unconnected to pay differences or any other markers linked to the purported purpose of improving income inequality.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

- 16 -
AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

62.     The Act exempts from its requirements and offers no economic benefit whatsoever – not even what the City Council regards as a "living wage" – to employees employed at smaller hotels in the City of Los Angeles, notwithstanding that all members of the City Council knew, based on economic analyses the Council itself had commissioned, that such employees are typically paid at lower levels than those at larger hotels, to which the Act applies.

63.     The Act allows for a one year exemption from complying with the Act's requirements for a hotel that can demonstrate to the City Controller with "compelling evidence" that compliance with the Act would require the hotel to cut its workforce by more than 20 percent or reduce its Hotel Workers' (defined as employees exclusive of managerial, supervisory or confidential employees) overall hours by more than 30 percent in order to avoid bankruptcy or a shutdown of the hotel (the "*Hardship Exemption*").

64.     The inclusion of the Hardship Exemption allowing employers to avoid the obligations imposed by the Act undermines the proffered public purpose of the Act, *i.e.*, the intention to use the wages in the hotel industry to bolster the entire City economy.

65.     The aforementioned economic consequences of the Act were fully known to all members of the City Council who voted in favor of the Act.

**b.   Provisions Targeting Hotel Labor-Management Relations**

66.     The Act contains numerous provisions that by purpose and effect improperly intrude upon and substantially interfere with union organizing, collective bargaining and labor relations in the City's hotel industry.

67.     By excluding all managerial, supervisory or confidential employees from the definition of "Hotel Worker," the Act is purposefully structured so that the ***only*** individuals benefiting from its provisions are hotel employees that the Hotel Workers' Union is lawfully entitled to organize.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

- 17 -
AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

68.     Like every other City ordinance targeting hotel labor-management relations (but unlike other minimum-labor-standard ordinances adopted by the City for other industries), the Hotel Workers Act contains a waiver provision, whereby any covered hotel is permitted to obtain an exemption from any or all of the Act's requirements, but only if such hotel is party to a bona fide CBA and only if such dispensation is explicitly granted to it by the Hotel Workers' Union by means of a clear and unambiguous waiver written into the parties' CBA (hereinafter the "*Union Waiver Provision*").  This waiver provision is unusual and irreconcilable with the structure and purposes of the NLRA.

69.     Like every other City ordinance targeting hotel labor-management relations (but unlike other minimum-labor-standard ordinances adopted by the City for other industries), the Hotel Workers Act forbids unionized hotels from unilaterally continuing a previously granted Union waiver after expiration of a CBA (the "*Ban on Unilateral Action*").  This provision's foreseeable and ineluctable effect is that the hotel employer must immediately put into effect each and every requirement of the Hotel Workers Act for which it had been granted a waiver, notwithstanding that such a "snap back" provision, in effect, imposes an immediate cash penalty on hotel employers who do not accept the Union's contract demands prior to the expiration date of the applicable CBA.

70.     The Ban on Unilateral Action further interferes with federal labor law, which requires employers to continue in effect all economic terms and conditions of an expired contract during negotiations of a successor agreement (which is commonly referred to as the "*Katz* doctrine"), and to neither lower nor to raise hourly wage rates without the consent of the affected employees' collective-bargaining representative.

71.     The seemingly neutral Ban on Unilateral Action further interferes with collective bargaining because, under federal labor laws, employers have the substantive right to change or to continue any of the terms and conditions of

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

employment as existed under an expired CBA if, after good-faith bargaining, they have reached an impasse with the employees' exclusive bargaining representation. The Hotel Workers Act purports to render illegal what is an employer's substantive right under the NLRA, which is to continue, if it chooses, any term or condition of employment existing under the expired CBA, even terms or conditions of employment that are inconsistent with the Act's requirements but for which a waiver had been obtained pursuant to the Union Waiver Provision.  Consequently, the Hotel Workers Act denies hotel employers an economic weapon that Congress intended them to have.

72.    Like every other City ordinance targeting hotel labor-management relations (but unlike other minimum-labor-standard ordinances adopted by the City for other industries), the Hotel Workers Act defines a "Hotel" as including not only a hotel building of the requisite number of rooms, but also "any contracted, leased or sublet premises connected to or operated in conjunction with the building's purpose, or providing services at the building" (hereinafter the *"Ancillary Business Provision"*).

73.    Like every other City ordinance targeting hotel labor-relations (but unlike other minimum-labor-standard ordinances adopted by the City for other industries), the Act requires that all Service Charges be "paid in their entirety" to the Hotel Worker(s) purportedly performing the service for the customer and not used in any part to compensate supervisory or managerial employees (hereinafter the *"Service Charge Provision"*), notwithstanding that the newly prohibited practice is common and universally acceptable under the CBAs for every unionized hotel located in the City of Los Angeles.

**Interference with Collective Bargaining and Labor Relations**

74.    The foreseeable and ineluctable consequence of the Union Waiver Provision of the Hotel Workers' Act is that the operator of a unionized hotel will be

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

- 19 -

required to petition the Hotel Workers' Union to grant such a waiver in order merely to maintain the economic terms of its existing CBA, especially with respect to the hourly wage-rate paid to tipped employees and the allocation of service charges as between employees protected by the Act and such hotel.

75. The foreseeable and ineluctable consequence of a hotel operator's having to seek such a dispensation from the Union merely to allow it to continue to operate as had been mutually agreed to in the parties' CBA, will be that the Union will use the economic leverage afforded it by the Act to exact concessions that such hotel operator would not otherwise have agreed to.

76. Because federal labor law affords both management and labor the absolute right to refuse to bargain for mid-term modifications to an unexpired collective agreement, the foreseeable and ineluctable consequence of the Union Waiver Provision is that the Union will demand concessions merely to consider a hotel's request for a dispensation from the Act's requirements, as needed merely to preserve the economic arrangements agreed to in the existing CBA.

77. As a consequence of the foregoing, the Act affords the Hotel Workers' Union unanticipated and unwarranted opportunities to apply economic pressure to unionized hotels in the City of Los Angeles that it would not have had but for the Act and thereby upsets the balance of economic power between labor and management as expressed in national labor policies.

78. Since the passage of the Act, Union officials have, in fact, already attempted to exact concessions with respect to union organizing and collective bargaining in response to requests from Hotel employers for waiver provisions. Immediately following enactment, the Union even attempted to condition the execution of a waiver provision on a Hotel employer's agreement to conditions that were unlawful under federal labor law or irreconcilable with labor policy under the NLRA.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

- 20 -
AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

79.     The Act further interferes with hotel-industry labor-management relations in allowing a Union dispensation of its requirements only as part of an existing "bona fide collective bargaining agreement."  As a foreseeable and ineluctable consequence of that provision, hotels that either have recently recognized the Union and are bargaining for their first labor contract or are in the midst of collective bargaining over the terms of a new contract to replace an expired CBA are both subject to Union economic power that it would not have had but for the Act, because such hotels cannot lawfully under the Act continue pre-existing practices previously accepted by the Hotel Workers' Union – such as allowing the hotel to retain a portion of service charges for its own operating expenses or paying tipped employees a substantially lower wage rate than that paid to non-tipped employees – unless they obtain the Union's dispensation from provisions of the Act that interfere with such practices.

80.     Because federal labor law affords employers the substantive right and prerogative to unilaterally continue existing terms of employment or implement new ones at the expiration of a labor agreement if the employer has bargained in good faith, the parties have reached an impasse in bargaining, and the terms implemented are consistent with the employer's prior bargaining proposals, the Act's Ban on Unilateral Action has the foreseeable and ineluctable effect of impairing substantive rights that hotel operators have under the NLRA and interfering with economic weapons that hotel operators have and are allowed to use under the NLRA.  This creates an impermissible and substantial potential for friction with the machinery of the NLRA.

81.     Since the purported "minimum" wage rate under the Act of $15.37 per hour took effect on July 1, 2015, the provisions thereof have already caused severe and distorting effects, and will substantially intrude on, the collective-bargaining

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

process as it would otherwise have occurred but for the labor-relations consequences that foreseeably and ineluctably flow from the operation of the Act.

82.   Such impairment and interference exist even if the parties to an expiring or expired CBA do not actually reach impasse because their respective bargaining positions would be unavoidably altered by this change in the balance of economic power that either may be able to exert if agreement is not reached.

83.   For any unionized hotel whose CBA does not require that the full amount of all service charges be paid to unit employees, the Service Charge Provision has the foreseeable and ineluctable consequence of requiring such hotel to renegotiate with the Union on a subject over which it had already bargained.

84.   Because allocation of service charges to employees is a mandatory subject of bargaining and because an employer has, under federal labor law, the substantive right to refuse to negotiate over such subjects of bargaining during the term of a CBA if the matter is addressed in the CBA, the Hotel Workers Act interferes with the substantive federal rights of all unionized hotels that have in place a CBA with an expiration date later than November 10, 2014, which is the effective date of the relevant provision of the Act, because it requires them to bargain with the Union over items previously bargained for merely so that they can continue to enjoy the economic benefits afforded to them under the existing CBA.

## Interference with Union Organizing

85.   As a foreseeable and ineluctable consequence of all of the foregoing, the Act alters the current balance of economic forces between non-union hotels and the Hotel Workers' Union with respect to union organizing and, in particular, the array of economic incentives and disincentives relating to the decision of such hotels as to whether to assent to or reject entering into card-check recognition agreements demanded by the Union.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

86.     Non-union hotels have the same general wage practices as unionized hotels with respect to the wage-rate differential between tipped and non-tipped employees and, further, with respect to the allocation of a portion of F & B service charges, but not all of such charges, to F & B tipped employees.  Consequently, each non-union hotel subject to the Act will operate at a severe competitive disadvantage as compared to unionized hotels who successfully petition the Hotel Workers' Union for a waiver.

87.     The Act's requirement that a minimum hourly wage of $15.37 be paid to all employees and the requirement that the entire service charge be paid only to hotel employee workers will have a disproportionate impact on non-union hotels.  The requirements will necessarily cause costs to increase while decreasing revenue by significant amounts.  As a consequence, the Act vitiates non-union hotels' competitive advantage as compared to unionized hotels, disrupts the economic balance that existed before the Act's enactment, intensifies economic pressure on the non-union hotels to enter into card check agreements to a level substantially greater than it otherwise would have been, and effectively penalizes all non-union hotels that, despite such pressure, refuse to execute a card-check recognition agreement with the Hotel Workers Union.

88.     Since it is likely that the Union will grant a waiver to a unionized hotel to allow it to revert to pre-existing wages and wage-payment practice (for a price) and since a Union dispensation from the Act's requirements is only available as part of a CBA, the Hotel Workers Act not only takes away key economic advantages that currently exist for non-union hotels, but actually creates a substantial economic disadvantage with respect to unionized hotels that would not have existed but for the Act granting the Hotel Workers' Union the power to grant dispensations from any and all of its provisions.

AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

89.     The Act, by both design and consequence, will have as its foreseeable and ineluctable consequence pressuring non-union hotels, especially larger or luxury full-service hotels with robust F & B business, to accept demands for assent to a card-check recognition agreement to establish a collective bargaining relationship with a Union that can be formalized quickly so as to allow for the negotiation of a waiver.

90.     Consequently, given that the Union will not enter a bargaining relationship unless a Hotel agreed to a card-check agreement, the Act will have as an effect that non-union hotels will be economically pressured to forfeit their rights to insist on a secret-ballot election conducted under Board oversight and procedures that are designed to assure that the voting represents the free and uncoerced choice of unit employees as proof of a Union's majority support, thereby frustrating the implementation of the NLRA's processes.

91.     The Act's effect of encouraging the establishment of collective-bargaining relationships impinges on the rights of employees, secured under the NLRA, to free choice as to whether to elect or reject a union as an exclusive representative for bargaining purposes.

92.     Since the Act has taken effect, the Union has, in fact, attempted to use it to induce nonunion Hotel employers to sign so-called "neutrality" agreements that commit employers to accept card-check recognition of the Union as the exclusive bargaining representative of Hotel Workers, which effectively waives and forgoes the Hotel Employer's rights and prerogatives under the NLRA, including to express its opinions concerning unionization and to insist on an NLRB-supervised, secret-ballot election to determine the existence or not of a Union majority.

93.     Since the Act has taken effect, the Union has, in fact, used the enhanced economic pressure afforded it by operation of the Act  to attempt to induce hotel employers to intervene in the Union's efforts to organize the workforces of Ancillary

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Businesses, including restaurants and shops located within or adjacent to an affected hotel.

94.     By virtue of all of the foregoing, and in other ways as well, the Act operates to significantly interfere with labor-management relationships in ways that frustrate the effective implementation of the NLRA's goals and to effect a significant alteration of the balance of economic power between labor and management designed by Congress.

**Irreparable Harm to the Associations' Members**

95.     Unless the Court declares the Act invalid and unenforceable, and enjoins its enforcement, the Associations' members will suffer irreparable harm based on the Act's powerful effect on the economic incentives and disincentives with respect to zones of activity that, under federal labor law, must remain unregulated and not interfered with by state and local governments.

96.     For hotels that have been unable or unwilling to consent to Union imposed card-check recognition agreements in order to secure a waiver of the provisions of the Act, and are, as a consequence thereof, required to comply with with every and all of the provisions of the Act, the cost of such compliance after the Act is fully operational will be as high as $500,000 to $1.7 million annually.

97.     Any disruption to the balance of economic power between labor and management or that affects the use of economic weapons by the Hotel Workers Union irreparably injures the affected hotels with respect to their ability to obtain their labor relations objectives.

98.     Any CBA entered into or modified in response to the new economic pressures created by the Act will alter the legal relations between the affected hotel and the union, making it nearly impossible to return to the former labor relations relationship, even if the provisions of the Act that induced the employer at the hotel

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

to enter into such CBA or modification is later declared by this Court to be void and enforceable.

99.     New CBAs or side letters modifying CBAs to provide for the waiver language required for an exemption under the Act may entail the assumption of a variety of obligations for the affected employers that are legally binding under federal labor law and that may thereafter not be avoidable, even if the provisions of the Act that induced the affected hotel to enter into such CBA or side letter are later declared by this Court to be void and unenforceable.

100.     Any employer at a non-union hotel that, under the economic pressures created by the Act, enters into a card-check recognition agreement with Local 11 will have assumed binding, legally enforceable obligations under federal labor law that may thereafter not be avoidable, including, among others, the waiver of such hotel's right to demand an NLRB-supervised secret-ballot election to determine majority status and the obligation to engage in good-faith bargaining with Local 11 if a card-check majority is established, even if the provisions of the Act that induced the employer at such hotel to enter into such agreement are later declared by this Court to be void and unenforceable.

101.     Any employer at a non-union hotel that recognizes a union under a card check/neutrality agreement entered into in response to the economic pressures created by the Act will incur certain binding and legally enforceable obligations by operation of federal labor law that may thereafter not be avoidable, including among others the obligation to bargain with the workers' designated bargaining representative, even if the provisions of the Act that induced such employer to recognize the union without an election are later declared by this Court to be void and unenforceable.

102.     Any employer at a unionized hotel that, in exchange for the required waiver, enters into an agreement with the union modifying any then-existing term or condition of employment for such hotel's employees will then be subject to binding

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

and legally enforceable obligations by operation of federal law to continue to provide the same terms and conditions of employment for the term of the then-existing labor agreement and, in fact (under the *Katz* doctrine), beyond the expiration of said agreement until impasse is reached in subsequent good faith negotiations, even if the provisions of the Act that induced the hotel employer to grant such modification as a condition for obtaining such waiver are later declared by this Court to be void and unenforceable.

103.   Any hotel employer that, in response to the requirements of the Act, changes its methods of operation or lays off employees will suffer economic loss and/or harm to its reputation and goodwill that cannot thereafter be rectified, even if the provisions of the Act that necessitated such actions are later declared by this Court to be void and unenforceable.

## FIRST CAUSE OF ACTION

### (For Declaratory Relief and Injunction
### Based on Supremacy Clause / Labor Preemption)

104.   Plaintiffs incorporate herein by this reference the allegations contained in Paragraphs 1 through 103, inclusive.

105.   The National Labor Relations Act, as amended, 29 U.S.C. § 151, *et seq.*, creates a uniform federal body of law governing union organizing, collective bargaining, and labor-management relations applicable to employers engaged in interstate commerce.

106.   Such body of federal labor law preempts any and all state and local enactments that by design or consequence regulate or interfere with the then-existing balance of economic power between labor and management with respect to zones of activity that, under federal labor law, are intended to be left to the free play of economic forces, including laws that interfere with or attempt to regulate the economic tools available to labor or management during the course of collective

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

bargaining or that otherwise interfere with the collective bargaining process, such as altering the parties' rights and economic alternatives during collective bargaining, or the processes and procedures utilized for union organizing, including among other things, by altering the economic consequences of choices made by labor or management concerning the manner by which a union's majority status will have to be shown.

107.   Application of the Hotel Workers Act to the activities of Plaintiffs' members within the City of Los Angeles significantly interferes with and intrudes upon zones of activity in the areas of labor relations, union organizing, and collective bargaining that is reserved under federal labor law and policy to the free play of economic forces by, among other things, establishing purported minimum labor standards that, by design or consequence, empower the Hotel Workers' Union to exact concessions they could not otherwise have obtained from the employer at unionized or non-union hotels, thereby undermining the collective bargaining process and disrupting the process of union organizing favored under federal labor law whereby a union's majority status is determined by a NLRB supervised secret-ballot election.  The Act further constitutes regulation impinging on the regulatory jurisdiction of the National Labor Relations Board.

108.   By virtue of the foregoing, the Act is preempted under federal labor law because it purports to regulate zones of activity that Congress intentionally left to be controlled by the free play of economic forces and/or that falls within the primary jurisdiction of the NLRB.

109.   The City's application and enforcement of the Act will cause Plaintiffs' members to suffer irreparable harm for which they have no adequate remedy at law, even if the Act is later declared by this Court to be void and unenforceable.

110.   Plaintiffs are entitled to judgment declaring the Act to be void and unenforceable under the Supremacy Clause of the U.S. Constitution and equitable

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

and injunctive relief to prevent the City of Los Angeles and/or Local 11 from attempting to enforce or give effect to said Act.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1.     A judgment declaring that the requirements, procedures, conditions, actions and/or denials of the City under the Hotel Workers Act are preempted by federal labor law, and are therefore void and unenforceable;

2.     A judgment entering a permanent injunction enjoining the Defendants, or either of them, from enforcing or taking any action under or in furtherance the Act;

3.     A judgment entering a permanent injunction enjoining the Defendants, or either of them, from asserting any rights or prerogatives under the Act either for itself or on behalf of Hotel Workers; and

4.     For an award of attorneys' fees and costs of suit herein pursuant to, *inter alia*, 42 U.S.C. § 1988(b).

5.     For such other and further relief as the Court may deem just and proper.

Dated:  August 11, 2015                    Respectfully submitted,


                                           HOLLAND & KNIGHT LLP

                                           _____

                                           By: _____
                                           Michael Starr (*Pro Hac Vice*)
                                           Kristina Azlin (SBN 235238)

                                           Attorneys for Plaintiffs
                                           American Hotel & Lodging Association and
                                           Asian American Hotel Owners Association

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

- 29 -
AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1

## **PROOF OF SERVICE**

2    I am employed in the County of Los Angeles, State of California.  I am over

3  the age of 18 and not a party to the within action.  My business address is 400 South

4  Hope St., 8th Floor, Los Angeles, California 90071.

5    On August 11, 2015, I served the document described as **AMENDED**

6  **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** on the

7  interested parties in this action as follows:

8

9    [X] (**BY Electronic Transfer to the CM/ECF System**) In
    accordance with Federal Rules of Civil Procedure 5(d)(3) and Local

10    Rule 5-4, I uploaded via electronic transfer a true and correct copy
    scanned into an electronic file in Adobe "pdf" format of the above-

11    listed document(s) to the U.S. District Court Central District of
    California's Electronic Case Filing (CM/ECF) system on this date.

12

13  I declare under penalty of perjury under the laws of the United States of America that

14  the above is true and correct.

15

16  Executed on August 11, 2015, Los Angeles, California.

17

18

19                                         //s// Kristina S. Azlin

20

21

22

23

24

25

26

27

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF